# Exhibit A

# *CONSTITUTION*

### OF THE

## NATIONAL HOCKEY LEAGUE
### (An Unincorporated Association Not For Profit)

### ARTICLE I

### NAME

*1.1.* The name of this association shall be "National Hockey League," hereinafter called the "League."

### ARTICLE II

### PURPOSES AND OBJECTS

*2.1.* The purposes and objects for which the League is organized are:

    *(a)*    To perpetuate hockey as one of the national games of the United States and Canada.

    *(b)*    The promotion of the common interests of the members of the League, each member being an owner of a professional hockey club located in the United States or Canada.

    *(c)*    The promulgation of rules governing the conduct of play of hockey games between the Member Clubs in the League, the relationships between players and Member Clubs, between Member Clubs and the League and between the Member Clubs and other hockey clubs, to the end that the public may be assured of a high standard of skill and fair play, integrity and good sportsmanship.

    *(d)*    The arbitration and settlement of disputes between the Member Clubs and between Member Clubs and players.

    *(e)*    The education of the public, through advertising, radio and other media, to the end that professional hockey, as played according to the standards of the League, may gain popular support and acceptance as a wholesome entertainment.

    *(f)*    The development of youth in mind and body and the teaching of fair play and good sportsmanship through the media of hockey.

*2.2.* The League shall be operated not for profit.

1

# *CONSTITUTION*

## ARTICLE III

## MEMBERSHIP

*3.1. Membership.* Membership in the League shall be limited to members herein designated, and such new members as may be hereafter duly elected. The Member Clubs of the League are:

1. Mighty Ducks Hockey Club, Inc.
2. Atlanta Hockey Club, Inc.
3. Boston Professional Hockey Association, Inc.
4. Niagara Frontier Hockey, L.P.
5. Calgary Flames Limited Partnership
6. Hurricanes Hockey Limited Partnership
7. Chicago Blackhawk Hockey Team, Inc.
8. Colorado Avalanche LLC
9. COLHOC Limited Partnership
10. Dallas Stars, L.P.
11. Detroit Red Wings, Inc.
12. Edmonton Investors Group Limited Partnership
13. Florida Panthers Hockey Club, Ltd.
14. The Los Angeles Kings Hockey Club, L.P.
15. Minnesota Wild Hockey Club, LP
16. Club de Hockey Canadien, Inc.
17. New Jersey Devils LLC
18. Nashville Hockey Club Limited Partnership
19. New York Islanders Hockey Club, L.P.
20. Madison Square Garden, L.P.
21. Ottawa Senators Hockey Club Corporation
22. Comcast Spectacor, L.P.
23. Coyotes Hockey, LLC
24. Lemieux Group L.P.
25. St. Louis Blues Hockey Club, L.P.
26. San Jose Sharks, L.P.
27. Center Ice, L.L.C.
28. Maple Leaf Sports & Entertainment, Ltd.
29. Orca Bay Hockey Limited Partnership
30. Lincoln Hockey LLC

each holding a franchise from the League for the operation of a hockey club respectively in the cities and bearing the designations hereinafter noted.

| | | |
|---|---|---|
| 1. | "Atlanta Thrashers" | Atlanta, Georgia |
| 2. | "Boston Bruins" | Boston, Massachusetts |
| 3. | "Buffalo Sabres" | Buffalo, New York |

2

# *CONSTITUTION*

| 4. | "Calgary Flames" | Calgary, Canada |
| 5. | "Carolina Hurricanes" | Raleigh-Durham, North Carolina |
| 6. | "Chicago Blackhawks" | Chicago, Illinois |
| 7. | "Colorado Avalanche" | Denver, Colorado |
| 8. | "Columbus Blue Jackets" | Columbus, Ohio |
| 9. | "Dallas Stars" | Dallas, Texas |
| 10. | "Detroit Red Wings" | Detroit, Michigan |
| 11. | "Edmonton Oilers" | Edmonton, Canada |
| 12. | "Florida Panthers" | Broward County, Florida |
| 13. | "Los Angeles Kings" | Los Angeles, California |
| 14. | "Mighty Ducks of Anaheim" | Anaheim, California |
| 15. | "Minnesota Wild" | St. Paul, Minnesota |
| 16. | "Montreal Canadiens" | Montreal, Canada |
| 17. | "Nashville Predators" | Nashville, Tennessee |
| 18. | "New Jersey Devils" | East Rutherford, New Jersey |
| 19. | "New York Islanders" | Long Island, New York |
| 20. | "New York Rangers" | New York, New York |
| 21. | "Ottawa Senators" | Ottawa, Canada |
| 22. | "Philadelphia Flyers" | Philadelphia, Pennsylvania |
| 23. | "Phoenix Coyotes" | Phoenix, Arizona |
| 24. | "Pittsburgh Penguins" | Pittsburgh, Pennsylvania |
| 25. | "St. Louis Blues" | St. Louis, Missouri |
| 26. | "San Jose Sharks" | San Jose, California |
| 27. | "Tampa Bay Lightning" | Tampa, Florida |
| 28. | "Toronto Maple Leafs" | Toronto, Canada |
| 29. | "Vancouver Canucks" | Vancouver, Canada |
| 30. | "Washington Capitals" | Washington, D.C. |

The Member Clubs agree that each will maintain and operate a hockey team of the highest possible playing caliber for the purpose of engaging annually in a regular schedule of championship and playoff games with teams of the other Member Clubs. Such annual regular schedule of games shall produce for each Member Club a minimum of forty games in the home rinks of the other Member Clubs.

   *3.2. Eligibility.* Any person, firm, association or corporation that meets the criteria for membership set from time to time by the Board of Governors may be eligible for membership.

   *3.3. Admission of New Members.* Each applicant for membership shall make a written application to the League on the official Application Form approved by the Board of Governors. Such form shall designate the information and documents required to be submitted and the payments required to be made by the applicant. The form shall also include a statement that, upon and in consideration of election to membership, the applicant will subscribe to and agree to be bound by the Constitution and all amendments thereof, and all By-Laws, Resolutions, Agreements and Rules of the League. Upon receipt of any application for membership, the Commissioner shall conduct such investigation as he deems appropriate. Upon completion of the investigation, the Commissioner shall submit the application to the members for approval, together with his recommendations thereon and all such information that the Commissioner deems pertinent. A favorable vote of three-fourths of the members of the League

# CONSTITUTION

shall be required for election to membership. The Board of Governors by majority vote shall determine from time to time the amount that shall be paid for a membership in the National Hockey League, but no application for membership shall be considered unless the application be in writing on the official Application Form, and be accompanied by a deposit check payable to the League in such amount as determined by the Board of Governors, and such proof as the Governors may require as to the organization, financing, playing facilities, and personnel of the applicant. In addition to the amount fixed by the Board of Governors of the League as the price to be paid for a new franchise in the League, such new member shall pay, on demand, such further sum as may be determined by the Board of Governors as represented by each member's interest in the assets, surplus, if any, and reserve accounts of the League.

*3.4. Certificate of Membership.* Each member in good standing shall be entitled to a Certificate of Membership signed by the Commissioner and Secretary of the League, certifying that the member is a member of the League and holds a franchise from the League to operate a professional hockey club in the designated city. Such Certificate of Membership shall be non-assignable and non-transferable, except as provided in section *3.5.*

*3.5. Transfer of Membership or Ownership Interest in a Member Club.* No membership or ownership interest in a Member Club may be sold, assigned or otherwise transferred except (a) with the consent of three-fourths of the members of the League, and (b) upon the condition that the transferee will at all times be bound by and comply with the terms, provisions and conditions of this Constitution, and (c) upon the further condition that the transferee shall assume or guarantee all debts, liabilities and obligations of the transferor member existing at the date of transfer. Application for the sale, transfer or assignment of a membership or ownership interest must be made in writing to the Commissioner. Upon receipt of such application, the Commissioner shall conduct such investigation as he deems appropriate. Upon completion of the investigation, the Commissioner shall submit the application to the members for approval, together with his recommendations thereon and all such information that the Commissioner deems pertinent. Transfer of membership or ownership interest in a Member Club shall not release the transferor from any debt, liability or obligation to the League existing at the date of transfer. Upon transfer of membership or ownership interest in a Member Club any and all interest of the transferor in and to any and all funds, property, rights and interests in the League shall cease.

"Ownership interest" in a Member Club as used above shall include any stock, partnership (general or limited) or other proprietary holding in any corporation, company, association, partnership, or other organization which holds, directly or indirectly, the franchise of Member Club. The approval required for transfer of an ownership interest in a Member Club (as distinguished from transfer of membership) shall be waived for all publicly held companies owning such interest prior to June 24, 1981. Such approval requirement shall also be waived for any transfer of a non-controlling ownership interest of any member whose stock is listed on the American, New York, Toronto or other public stock exchange. If the proposed sale, assignment or transfer involves an interest of five percent (5%) or less, the Commissioner shall have the authority to approve the transaction without submitting it to the Board of Governors. If the proposed sale, assignment or transfer involves an interest of between five percent (5%) and ten percent (10%), it may be approved by the Executive Committee without submitting it to the full Board of Governors.

All legal fees and costs incurred by the League in effecting a transfer of member or ownership interest shall be assessed against the Member Club whose membership or ownership interest is being transferred, and, unless agreed to the contrary by the parties, shall be the obligation of the transferee.

# CONSTITUTION

*3.6. Vote on Admission or Transfer.* **The** vote for election of new members or for transfer of a membership may be taken at any annual or special meeting of the Board of Governors, provided ten days previous written notice thereof has been given to each member of the League, or by a mail ballot of the members delivered to the Commissioner.

*3.7. Voluntary Withdrawal.*

(a)     Any member of the League may withdraw from membership either

> (i)     by assigning its membership upon the terms and conditions of Section *3.5*, or

> (ii)     by, no earlier than July 1 and no later than November 1, tendering its written resignation with the resignation to be effective on the following June 30, or such earlier date as the League may at any time elect in writing, to the Commissioner and on the effective date of the resignation surrendering its Certificate of Membership, making full payment of any and all dues or other debts owing to the League, or to any other member and, at the option of the League, assigning to the League or its nominee all player contracts of the resigning member and/or the lease of its playing arena, if, and to the extent, the lease is assignable, and waiving in writing any claim to any and all funds, property, rights and interests of the League.

(b)     Upon tender of a resignation from the League in accordance with Section *3.7(a)(ii)*, the League may at any time prior to June 1 exercise the option provided by Section *3.7(a)(ii)*, and thereupon the League is authorized and empowered

> (i)     to sell, to a purchaser acceptable to the League as a member for the territory of the withdrawing member, the lease of the playing arena and/or the Club, including the contracts of all players then under League or minor league contract, together with all other hockey personal properties for the operation of the Club and any minor league club; or

> (ii)     to purchase for its own account the assets described in subdivision *(i)* above; or

> (iii)     in the event that no such sale pursuant to subdivision *(i)* is feasible and the League concludes not to purchase for its own account pursuant to subdivision *(ii)*, to liquidate by sale the separate assets of the Club.

Such sale, purchase, or liquidation shall be conducted in such manner and for such reasonable amount as may be decided by the League. Any liquidation of player contracts shall be conducted by a dispersal draft under such procedures as the League may adopt by a three-quarter vote. Each member who is now or hereafter admitted to membership hereby expressly agrees that if it withdraws from the League in accordance with Section *3.7(a)(ii)*, it will assist in carrying out these provisions and will execute and deliver any and all instruments of conveyance, transfer, lease, bill of sale, assignment and other

5

# CONSTITUTION

documents necessary or convenient therefor. In the event of any failure, refusal or inability of any member to do so, any court of competent jurisdiction may, in any appropriate proceeding, enter any orders, judgments or decrees necessary to enforce and carry out the provisions hereof. Upon consummation of such purchase, sale, or liquidation, the League, through its Commissioner, shall deduct from the proceeds thereof (a) all expenses incurred in connection with said purchase, sale or liquidation, and (b) any debts owed by the withdrawing member to any other member or to the League.

The balance of said proceeds shall be paid to the member whose assets have thus been purchased, sold, or liquidated, upon the execution and delivery by such member to the Commissioner of the League, the League, and each of the other members of the League, of a full receipt and release of any and all claims or liabilities. In the event the League grants a new membership for the same city in connection with the sale permitted by Section 3.7(b)(i), the "proceeds" shall include the amount received by the League for the new franchise. In the event the League does not exercise its option by June 1 as provided under this Section, the resigning member may dispose of its assets, which would not include the resigned franchise, as it sees fit.

   3.8. *Capital Contribution of Transferee.* A new member acquiring its membership by transfer from another member shall succeed to the interest of the transferor in and to the funds, property, rights and interests of the League.

   3.9. *Involuntary Termination.*

   (a)    The membership of a member shall terminate automatically upon the occurrence of any of the following events:

   (i)    The making of an assignment for the benefit of its creditors, or the filing of a voluntary petition in bankruptcy, or if a receiver or trustee in bankruptcy is appointed for the properties and assets of the member, or if reorganization or arrangement proceedings in bankruptcy are instituted by the member.

   (ii)    Disbandment of its team during the League season.

   (b)    The membership of a member may be suspended or terminated, or other corrective action taken, by three-fourths of the members of the League, as defined in Section 3.10, upon any one of the following grounds:

   (i)    Violation of this Constitution or the By-Laws or Rules of the League unless shown to the satisfaction of the League to be inadvertent.

   (ii)    Failure to pay any dues or other indebtedness owing to the League within fifteen (15) days following the sending of written notice by the Treasurer of default in such payment.

# CONSTITUTION

(iii)   Failure or refusal to fulfill its contractual obligations, in such a way as to affect adversely the League, including, but not by way of limitation upon the generality of the foregoing, the payment of player salaries when due.

(iv)    The wagering or countenancing of wagering by its officers or employees on any hockey game and/or games.

(v)     The permitting of open betting or pool setting upon any premises owned, leased or otherwise controlled by the member on any hockey game and/or games.

(vi)    Offering, agreeing, conspiring or attempting to lose or manipulate the score of any game participated in by the team of the member, or failure to suspend immediately any officer or any player or other employee of the member who shall be proved guilty of offering, agreeing, conspiring or attempting to lose or manipulate the score of any such game or of being interested in any pool or wager on any hockey game or games, or failure to report to the Commissioner any information pertaining to a possible violation of this subsection.

(vii)   Failure to remain a member of the League as at present or from time to time constituted, except in the case of an approved transfer of its membership as provided in Section 3.5 hereof, or through voluntary withdrawal as provided in Section 3.7 hereof.

(viii)  Failure to present its team at the time or place provided by the schedule to play any League game, playoff game or championship game, unless caused by strikes, unavoidable accident in travel or by some other cause for which such member is not responsible, including, but not limited to, acts of God.

(ix)    Failure to comply with any proper order or instruction of the Board of Governors.

(x)     Attempting to transfer its club and franchise in contravention of Section 4.2.

3.10. Termination Procedure. The membership of a member may be suspended or terminated, or other corrective action taken, for any of the grounds set forth in Section 3.9(b) by the following procedure:

(a)     Any member of the League or the Commissioner may prefer charges that a member has violated a provision or provisions of Section 3.9(b). Said charges shall be made in writing in reasonable detail and shall be filed with the Commissioner who shall cause a copy thereof to be served by mail or teletype or telegram upon the member against whom such charges have been made. The Commissioner shall also cause a copy thereof to be served upon all other members by mail or teletype or telegram and fix a reasonable time, depending on the gravity of the charge and the urgency of the need for decision, and place for a hearing thereon before a special meeting of the League called for such a purpose. The member charged shall be promptly notified of the time and place of

7

# *CONSTITUTION*

hearing. Said hearing may be continued from time to time at such place or places as the members may determine.

(b)   At such hearing, the Chairman of the Board of Governors shall preside, unless he shall be an officer of the complaining member or of the member charged, in which event the presiding officer shall be elected by the members attending the meeting. In case of a tie in the vote for presiding officer, the Commissioner shall cast the deciding vote.

(c)   At such hearing, the member charged shall have the full right to appear in person and by counsel. Full opportunity shall be given to the League, the member preferring charges and the member charged for the presentation of evidence bearing thereon. Strict rules of evidence as practiced in the courts shall not apply.

(d)   After duly considering all the evidence, the meeting shall vote upon each charge separately as to whether it has been sustained. The affirmative vote of three-fourths of the members of the League present and voting shall be required to sustain any charge.

(e)   If upon such vote any charge is sustained, the meeting shall vote with respect to each sustained charge as to what corrective action shall be taken with respect to the member charged, bearing in mind the gravity of the charge, any extenuating circumstances, and the best interest of hockey and the League. The action may include:

(i)   suspension or termination of the membership of such member,

(ii)   the imposition of an award, which may be made payable in whole or in part to the League and/or to any other member or members as compensation for damages sustained by reason of any violation found to have been committed by the member charged, and

(iii)   any other direction, order or relief which may be appropriate in the circumstances. The affirmative vote of three-fourths of the members present and voting shall be required for the imposition of any corrective action, including termination.

(f)   In accordance with Section *5.11*, calculation of three-fourths of the members for the purposes of this Section shall be based on the membership present and voting, including the member charged.

(g)   The decision of the League, made in accordance with the foregoing procedure, shall be final and binding upon all members.

(h)   Pending commencement or completion of hearing and decision in any proceeding pursuant to Section *3.10*, in situations of utmost gravity affecting the operation of the League, the Commissioner, upon a preliminary conclusion on his part on the facts available to him from any and all sources, including the member charged, that the

8

# *CONSTITUTION*

charges filed are in whole or part meritorious and are likely to be sustained, and upon approval by a three-fourths vote of the members present and voting at a special meeting of the League called for such purpose, may appoint a committee to oversee or operate the Club of the member charged until completion of the proceedings provided herein. In the event that a violation of Section *3.9(b)(viii)* or *3.9(b)(x)* is charged, the Commissioner may so act without approval of the membership. The member charged shall cooperate in this interim arrangement and shall be responsible for any expenses incurred by the League during this interim period. The member charged may request the Commissioner to expedite the hearing to resolve the charges against it in view of the interim arrangement authorized by the Commissioner and the League.

*(i)*    For the purposes of this Section and of Sections *3.9, 3.11* and *3.12*, if any League officer authorized or directed to take any action shall be unavailable or incapacitated, then such action may or shall be taken by the League officer who is available, not incapacitated, and not an officer or employee of a Member Club which has preferred charges or had charges preferred against it under Section *3.10(a)*, in the following order of priority: the Chairman, Vice Chairman, Vice Presidents in order of seniority, and Secretary.

*3.11.- Effect of Termination.* Upon any termination of membership under Section *3.9*, the member affected shall thereupon at once surrender all its rights and privileges as a member of the League, and, at the option of the League exercised no later than ten days after the date of termination, deliver to the Commissioner of the League, for the League, the possession and control of the lease of its playing arena, if and to the extent the lease is assignable. At the option of the League exercised no later than ten days after the date of termination, the terminated member shall surrender possession and control of its club, including the contracts of all of its players then under League or minor league contract, together with all of its other hockey personal properties for operation of the Club and any minor league club. Upon exercise of the latter option, the Commissioner of the League shall on behalf of the League appoint a committee to operate such properties and club for so long as the Board of Governors determines it advisable to do so, and for that period continue the playing of games, collection of all income and receipts and pay therefrom all expenses in connection therewith, and if such income and receipts do not prove sufficient, pay the balance of such expenses out of the funds of the League. The terminated club shall keep intact its assets, including but not limited to any lease and player contracts, for the ten-day period during which any option under this Section may be exercised, so as not to defeat in whole or in part the option rights accorded the League. Any option exercised by the League under this Section shall be by a three-fourths vote of the members present and voting.

*3.12. Disposition Following Termination of Membership.* Upon any termination of membership under Section *3.9*, the League is hereby authorized and empowered (a) to sell, to a purchaser acceptable to the League as a member for the territory of the terminated member, the lease of the playing arena and/or the Club, including the contracts of all players then under League or minor league contract, together with all other hockey personal properties for operation of the Club and any minor league club; or (b) to purchase for its own account the assets described in subsection (a); or (c) in the event that no such sale, pursuant to subsection (a) is feasible, and the League concludes not to purchase for its own account pursuant to subsection (b), to liquidate by sale the separate assets of the Club. Such sale, purchase, or liquidation shall be conducted in such manner and for such reasonable amount as may be decided by the League. Any liquidation of player contracts shall be conducted by a dispersal draft under such procedures as the League may adopt by a three-quarter vote. Each member who is now or hereafter admitted to membership hereby expressly agrees that if its membership should be terminated in accordance with

9

# *CONSTITUTION*

Section *3.9*, it will assist in carrying out these provisions and will execute and deliver any and all instruments of conveyance, transfer, lease, bill of sale, assignment and other documents necessary or convenient therefor. In the event of any failure, refusal or inability of any member to do so, any court of competent jurisdiction may, in any appropriate proceeding, enter any orders, judgments or decrees necessary to enforce and carry out the provisions hereof. Upon consummation of such purchase, sale, or liquidation, the League, through its Commissioner, shall deduct from the proceeds thereof:

    *(a)*    any and all moneys which may have been expended by the League in the overseeing and operation of such properties pursuant to Section *3.10(h)* and *3.11* in excess of any income derived by the League from such operation,

    *(b)*    all expenses incurred in connection with said purchase, sale, or liquidation, and

    *(c)*    any debts owed by the retiring member to any other member or to the League.

The balance of said proceeds, together with the money on hand, if any, derived from such income and receipts, shall be paid to the member whose assets have thus been purchased, sold, or liquidated, upon the execution and delivery by such member to the Commissioner of the League, the League, and each of the other members of the League, of a full receipt and release of any and all claims or liabilities. In the event the League grants a new membership for the same city in connection with the sale permitted by Section *3.12(a)*, the "proceeds" shall include the amount received by the League for the new franchise. In the event the League does not exercise its option under Section *3.11*, the terminated member may dispose of its assets, which would not include the terminated franchise, as it sees fit.

    *3.13. Agreement of Terminated Member Not To Oppose.* Each member of the League, whether now a member or hereafter becoming a member, agrees with each and every other member of the League that it will not resist or attempt to prevent by court proceedings of any kind or character, or otherwise, its termination of membership in the League in accordance with the provisions of Sections *3.9, 3.10, 3.11* and *3.12*.

    *3.14. Dissolution.* The League may be dissolved at any time by the unanimous consent of all members of the League. Upon dissolution the assets of the League shall be distributed to a successor league as designated by the members, or, failing that, to a charity which shall include, but not be limited to, an exempt organization as described in Section 501(c)(3) of the United States Internal Revenue Code or any similar provision of the Canadian Income Tax Act.

# CONSTITUTION

## ARTICLE IV

## TERRITORIAL RIGHTS

*4.1. Definitions.* For the purposes of this Article:

    *(a)*    "Home club" means the member at whose arena a game is played.

    *(b)*    "Visiting club" means a member whose team is playing at the arena of another member.

    *(c)*    "Home territory," with respect to any member, means: Each Member Club shall have exclusive territorial rights in the city in which it is located and within fifty miles of that city's corporate limits.

    *(d)*    "News" includes reports, descriptions and accounts of hockey games.

    *(e)*    "Broadcasts" and "broadcasting" mean and include publication or dissemination by radio, telegraph, telephone or television.

*4.2. Territorial Rights of League.* The League shall have exclusive control of the playing of hockey games by Member Clubs in the home territory of each member, subject to the rights hereinafter granted to members. The members shall have the right to and agree to operate professional hockey clubs and play the League schedule in their respective cities or boroughs as indicated opposite their signatures hereto. No member shall transfer its club and franchise to a different city or borough. No additional cities or boroughs shall be added to the League circuit without the consent of three-fourths of all the members of the League. Any admission of new members with franchises to operate in any additional cities or boroughs shall be subject to the provisions of Section *4.3.*

*4.3. Territorial Rights of Members.* Each member shall have exclusive control of the playing of hockey games within its home territory including, but not being limited to, the playing in such home territory of hockey games by any teams owned or controlled by such member or by other members of the League. Subject only to the exclusive rights of other members with respect to their respective home territories as hereinabove set forth, nothing herein contained shall be construed to limit the right of any Member Club to acquire any interest in any hockey team, whether professional or amateur in any league which recognizes and honors the territorial rights, contracts and reserve lists of the National Hockey League, except as limited by Section *8.1(a)* of this Constitution.  No other member of the League shall be permitted to play games (except regularly scheduled League games with the home club) in the home territory of a member without the latter member's consent. No franchise shall be granted for a home territory within the home territory of a member, without the written consent of such member.

*4.4. Property Rights of Home Club.* Each member hereby irrevocably conveys, grants and assigns forever all the right, title and interest which it has or may have in and to each hockey game played by its team as a visiting club and in the news of said game (including without limitation of the foregoing, the right to collect, disseminate and sell and to license others to collect, disseminate and sell the news of said game, whether by radio, telephone, television, telegraph or other means), to the member in whose home territory said game is played.

11

# CONSTITUTION

*[NOTE: See APPENDIX (APP-12) for PRESIDENT'S RULING RE BROADCAST RIGHTS OF MEMBER CLUBS.]*

# *CONSTITUTION*

## ARTICLE V

## GOVERNORS AND LEAGUE MEETINGS

*5.1.* The National Hockey League shall be governed by a Board of Governors which shall establish the policies of the League, and uphold the Constitution and By-Laws as provided herein.

*5.2.* Each Member Club shall appoint an individual as a Governor of the League, and a First Alternate Governor, and a Second Alternate Governor. Such appointment shall be by resolution of the Directors of the Member Club and a certified copy thereof in a form prepared by the Commissioner of the NHL shall be filed with the Commissioner at any time and shall be effective upon filing.

*5.3.* At all meetings of the League, representation of each Member Club shall be by its Governor or Alternate Governor, as the case may be, who shall, by reason of his appointment, be vested with the full power and authority to represent his club and to bind it by his vote.

*5.4.* The Annual Meeting of the League shall be held during June at a date and place to be fixed by the Commissioner.

*5.5.* The Semi-Annual Meeting of the League shall be held during December at a date and place to be fixed by the Commissioner.

*5.6.* Special meetings of the League may be called by the Commissioner or Chairman of the Board of Governors at any time or shall be called by either of them whenever requested by three Member Clubs.

*5.7.* In the case of special meetings, the notice shall state the purpose thereof. In the case of an Annual Meeting, the notice shall set forth any proposed amendment to this Constitution to be presented to the Annual Meeting, or any proposal to consider application for membership.

*5.8.* Notice of meetings shall be given to each Member Club by mail at least ten (10) days before a meeting, or by telegram or teletype at least seven (7) days before a meeting.

*5.9.* A representation of a majority of Member Clubs shall constitute a quorum for the opening of any meeting of the League. When such a meeting is validly opened by the attendance of a quorum, business may be transacted thereat by the representation of any number of Member Clubs (including less than a quorum) until said meeting is officially adjourned.

*5.10.* The Commissioner shall formulate the agendas and notices of and preside at all meetings of the League. In the absence of the Commissioner, the President, and in his absence, the Chairman of the Governors (or in his absence the Vice Chairman of the Governors) shall preside at such meetings. In the absence of all of the Commissioner, the President, the Chairman of the Governors and the Vice Chairman of the Governors at any such meeting, the Governors present shall appoint from among themselves a Chairman to preside.

*5.11.* Once a matter has been placed on the agenda the vote required by any provision of this Constitution shall be applied to the vote of those present and voting only. Any club which does not vote shall not be counted in

13

# CONSTITUTION

determining the requisite number required to carry any proposition properly brought before the Board. Such vote shall be binding upon all Member Clubs, whether represented by the vote or not.

*5.12.* Any action or resolution which may be taken or adopted in a regular meeting may be taken or adopted by instrument in writing signed by all members of the League.

*5.13.* Except for amendments to the Constitution or matters requiring a unanimous vote, any emergency act or resolution which may be taken or adopted in a meeting convened under this Article may be taken or adopted in a telephone meeting of the Board at which all Member Clubs' Governors or Alternate Governors shall be connected simultaneously by a telephone conference circuit, which may be held upon the call of the Commissioner or Chairman of the Board. Such call shall be cancelled if, at least four (4) hours before the time fixed for the meeting, a majority of the members notify the Commissioner or Chairman of the Board that they object to holding the meeting.

*5.14. No Internal Proxies.* No member shall name another member, or the representative of another member or any official of the League to represent it as Governor or Alternate Governor, or act by its proxy at a meeting.

*5.15. Executive Session.* Upon a majority vote of the members there present or if announced by the Commissioner in the notice, the meeting shall be convened in executive session. At any such executive session, only the Governors or their Alternates and the Commissioner and such other League officers as are designated by the Commissioner, together with such other persons as the Chairman of the Board of Governors or the Commissioner may invite, shall be present. *[See "Extraordinary Executive Session," Resolutions, page 2]*

*5.16. Manner of Acting*

    (a)    *Formal Action by Members.* Except where a greater vote is required herein, the action of the majority of the members present and voting at a meeting, at which a quorum was present when it was convened, shall constitute the action of the members.

    (b)    *Informal Action by Members.* No action of the members shall be valid unless taken at a meeting at which a quorum is present when convened, except that any action of the members may be taken without a meeting by telex, facsimile, electronic mail, or other appropriate means selected at the Commissioner's discretion, on three (3) business days' notice (excluding the date of transmission), and that any action taken in such fashion shall require the affirmative vote of three-fourths of the Member Clubs except where the action would require the consent of three-fourths or more of the Member Clubs were it taken at a formal meeting, in which case unanimous consent of the Member Clubs shall be required.

*5.17. Rules of Order.* The parliamentary procedure at meetings shall be governed by Robert's Rules of Order, except as otherwise provided in this Constitution.

# *CONSTITUTION*

## ARTICLE VI

## COMMISSIONER

*6.1. Office of Commissioner, Election and Term of Office.* The League shall employ a Commissioner selected by the Board of Governors. The Commissioner shall serve as the Chief Executive Officer of the League and shall be charged with protecting the integrity of the game of professional hockey and preserving public confidence in the League. The Board of Governors shall determine the term of office and compensation of the Commissioner. The Commissioner shall be elected by a majority of the Governors present and voting at a League meeting at which a quorum was present when it was convened.

*6.2. Qualifications.* The Commissioner shall be a person of unquestioned integrity and shall have no financial interest, direct or indirect, in any professional sport. The Governors shall determine the other qualifications for the office of Commissioner.

*6.3. Power and Duties.*

(a) *General.* Subject to the authority of the Board of Governors provided for in the Constitution and By-Laws and other governing documents of the League, the Commissioner shall have the responsibility for the general supervision and direction of all business and affairs of the League and shall have all such other powers as may be necessary or appropriate to fulfill his responsibilities. The Commissioner shall be responsible for the coordination and general supervision of policy matters that relate to property rights of the Member Clubs or that are other than in the normal course of operations of the League. The Commissioner's powers and duties shall include, but shall not be limited to, the powers specified in the Constitution and By-Laws and other governing documents, the powers exercised by, and duties assigned to, the League President prior to 1993, and all such other powers and duties as may be granted or assigned to the Commissioner by the Board of Governors. The Commissioner shall serve as the principal public spokesman for the League.

(b) *Dispute Resolution.* The Commissioner shall have full and exclusive jurisdiction and authority to arbitrate and resolve:

(1) any dispute that involves two or more Member Clubs of the League or two or more holders of an ownership interest in a Member Club of the League;

(2) any dispute between or among players, coaches, or other employees of any Member Club or Clubs of the League (unless such dispute is unrelated to and outside the course and scope of the employment of the disputants);

(3) any dispute between any player or other employee designated by the Member Club and any Member Club or Clubs;

(4) any dispute between a player and any official of the League; and

15

# CONSTITUTION

(5)     any dispute involving a Member Club or Clubs, or any players or employees of the League or any Member Club or Clubs, or any combination thereof, that in the opinion of the Commissioner is detrimental to the best interests of the League or professional hockey or involves or affects League policy.

In any case involving the deprivation of a Member Club's material property rights (other than rights to or interest in a player or other employee), an aggrieved Member Club may appeal the Commissioner's determination to the Board of Governors. The decision of the Commissioner shall be upheld unless three-fourths of the Governors shall vote to reverse it.

Except in such circumstances, the authority of the Commissioner to arbitrate disputes pursuant to this provision shall be binding to the same extent as if the parties had entered into a formal arbitration agreement and the decision of the Commissioner shall be final and binding on all parties and shall not be subject to any review. The Commissioner may elect not to arbitrate a dispute in any circumstances that he determines appropriate.

(c)     *Committees.* The Commissioner from time to time may establish committees with such powers and duties as the Commissioner determines. The Commissioner shall appoint the members of each such committee and fix their terms of office. The Commissioner shall serve as an *ex officio* member of all League committees and may serve as chairman of any committee in his discretion. The Commissioner may at any time dissolve any committee.

Notwithstanding the preceding paragraph, the Commissioner shall name an Executive Committee, consisting of between eight and twelve members of the Board of Governors, including the Chairman of the Governors. The Executive Committee shall confer, either formally or informally, in advance of each meeting of the Board of Governors and at such other times as the Commissioner may designate. In addition, the Commissioner shall name up to six members of the Executive Committee to serve as a Finance/Audit Committee.

Nothing in this section is intended to abrogate the powers of the Board of Governors.

(d)     *Interpretation of League Rules.* The Commissioner shall have the authority to interpret, and from time to time establish policies and procedures regarding, the provisions of the Constitution, the By-Laws, and League rules and resolutions, and their application and enforcement. Any determination made by the Commissioner with respect to any such matter shall be final and binding and shall not be subject to any review.

(e)     *Appointment of Staff.* The Commissioner may, subject to the previously-approved budget, appoint such other officers or assistants as he, in his sole discretion, determines necessary or appropriate, and shall determine the duties, compensation, and term of office of such officers or assistants. He may recommend to the Board of Governors persons to fill the positions of President, Treasurer, and Secretary. In connection with

16

# *CONSTITUTION*

their services to the League, officers and other employees of the League shall be entitled to indemnification to the same extent as if the League were a corporation incorporated in the state of New York.

(f)    *Financial Matters.*  The Commissioner may, subject to the previously-approved budget, incur on behalf of the League any expense that he determines, in his sole discretion, necessary or appropriate to conduct the business and affairs of the League, including, but not limited to, the leasing of office space and the hiring of employees, legal counsel and other professional assistance.  The Commissioner may also establish and maintain bank accounts and credit facilities on behalf of the League and approve the payment of all proper charges.  The Commissioner may withhold revenues due to a Member Club (including revenues collected by the League as agent for that Member Club) that has failed to discharge its financial obligations to the League or to another Member Club.

(g)    *Contracting Authority.*  The Commissioner may arrange for and negotiate on behalf of the League contracts with other persons, firms, leagues, or associations; provided, however, that unless otherwise specifically authorized herein or in the By-Laws or by resolution, no contract involving a material commitment, including but not limited to collective bargaining agreements, television contracts and expenditures not in the budget which are individually in excess of $100,000 or in the aggregate in excess of $500,000 per year, unless such expenditures are approved by the Finance Committee, by the League or its Members shall be binding unless approved by the Board of Governors.  No employment contract of a League office employee with a duration of more than two years will be effective without approval of the Board of Governors.

(h)    *Scheduling.*  In each year, the Commissioner shall prepare and forward to the Member Clubs a proposed schedule of games for the upcoming season.  Governors may forward comments on the proposed schedule to the Commissioner within ten days of its receipt. The Commissioner shall consider such comments and shall then issue the final schedule. Such schedule shall constitute the official League schedule and shall not require any consent or approval by the Member Clubs.  In preparing the schedule, the Commissioner may require Member Clubs to furnish any information necessary to the preparation of the schedule.  In addition, he shall solicit advice from the Clubs concerning special circumstances and shall take such circumstances into account to the extent he deems appropriate and in the best interests of the League.  The Commissioner may change the date, time or playing site of any scheduled games if he determines that such a change would be in the best interest of the League or the teams involved.

(i)    *Officials.*  The Commissioner shall be responsible for selecting and approving all game officials for all League games.

(j)    *Disciplinary Powers.*

      (1)    Whenever the Commissioner shall determine, based upon such information and reports as he may deem sufficient, that any person connected with the League or

# CONSTITUTION

a Member Club has either violated the Constitution, the By-Laws, or any other governing rule or regulation of the League, or has been or is guilty of conduct (whether during or outside the playing season) detrimental to the League or the game of hockey, he shall have full and complete authority to discipline such person in any or all of the following respects:

    *(a)*    by expelling or suspending the person for a definite or indefinite period;

    *(b)*    by cancelling any contract or agreement that the person has with the League or with any Member Club;

    *(c)*    by imposing a fine on the person not exceeding One Million dollars ($1,000,000) or such greater amount as may be prescribed by any League rule or By-Law; or

    *(d)*    if the conduct in question affects the competitive aspects of the game, by awarding or transferring players and/or draft choices and/or depriving the offending Member Club of draft choices.

    *(2)*    For purposes of this Section *(j)*, the word "person" shall include a Member Club and any officer, stockholder or partner of a Member Club, or anyone else holding an interest in any Member Club, and any player, coach, or other employee, officer, or director of the League or of any Member Club.

    *(3)*    In all cases involving player discipline and/or the integrity of the game of hockey and public confidence in the League, the Commissioner's determinations under this Section *(j)*, shall be final and not subject to any review.  In all other cases, the Commissioner's determinations under this Section *(j)*, shall similarly be final, except that where the infraction would result in (a) expulsion from the League or a suspension of more than two years, or (b) imposition of a penalty provided for in subsection *1(d)*, of this Section *(j)*, an aggrieved party may appeal the Commissioner's determination to the full Board of Governors.  The procedures set forth in Section 32.2 of the By-Laws shall govern any such appeal, but the Commissioner's determination may only be reversed by a vote of three-fourths of the Governors.

    *6.4. Indemnification.*  The Commissioner shall not be liable or accountable in damages or otherwise to the League or any Member Club for any loss or damage incurred by reason of any act or omission performed or omitted by the Commissioner in good faith either on behalf of the League or in furtherance of its interests, provided the Commissioner was not guilty of fraud or bad faith with respect to such act or omission.

    If, as a result of or in connection with service to the League, the Commissioner becomes involved in any manner, or is threatened with involvement in any manner, in any threatened, pending or completed claim, action, suit or proceeding (collectively, a "Proceeding"), whether civil, criminal or investigative, the League shall

# *CONSTITUTION*

indemnify and hold harmless the Commissioner against all expenses (including reasonable attorneys fees) incurred by him, and all judgments, fines and settlement amounts payable by him, in connection with the Proceeding. The right to indemnification shall include the right to receive payment, prior to final disposition of the Proceeding, of any attorneys fees and other expenses incurred in connection with the Proceeding. The Commissioner shall not be entitled to indemnification, however, with respect to (a) any Proceeding arising from his own wilful acts or omissions that are fraudulent or in bad faith, as determined by a final and nonappealable judgment, decision or order of a court of competent jurisdiction, or (b) the amount of any settlement entered into without the approval of the Board of Governors.

# CONSTITUTION

## ARTICLE VII

## OFFICERS

*7.1.* The officers of the League shall be a Chairman of the Governors, a Vice Chairman of the Governors, a Commissioner, a President, a Treasurer, a Secretary and such other officers as may from time to time be appointed by the Governors or the Commissioner in accordance with Article *VI*. The Chairman of the Governors and Vice Chairman of the Governors shall be appointed from among the Governors (except that the President may also be appointed Chairman of the Governors even though not a Governor) for two-year terms at the Annual Meeting of the League in 1966 and each second year thereafter, provided that no Governor shall be eligible for any such office unless (a) he was a Governor or Alternate Governor on June 14, 1966, or (b) he shall have been a Governor or Alternate Governor for at least the five years preceding his appointment. The President and Treasurer shall be appointed annually at the Annual Meeting of the League, provided that at the Annual Meeting in 1977 or any subsequent year the President may be appointed for a term of not to exceed five years. The officers of Chairman of the Governors and President may be held by the same person. If the President is not the Chairman of the Governors, he may also be Treasurer.

*7.2.*  (a)  The officers shall receive such salaries as the Governors or the Commissioner in accordance with Article *VI* may determine and shall be reimbursed for all proper expenses actually incurred by them in the service of the League. The League may exact from the officers satisfactory guarantees for the faithful performance of their duties.

    (b)  In the event of the absence or incapacity of the Chairman of the Governors, the Vice Chairman of the Governors shall perform the duties of the Chairman.

*7.3.* The Secretary shall keep accurate minutes of all meetings of the League.

*7.4.* The Treasurer shall have the care and custody of the financial records and papers of the League. He shall prepare and furnish such reports as may be called for by the Governors and, generally, shall do and perform all duties imposed upon him by the Governors.

He shall be the Treasurer of the League and the Custodian of all League funds, receive all monies and other valuable effects and deposit them in the name and to the credit of the League in such depositories as may be designated by the Governors.

He shall present to the governors whenever required an account of all his transactions and of the financial condition of the League.

He shall collect from all members of the League such amounts as may be determined from time to time by the Board of Governors as the members' contributions to the League to defray the expenses and liabilities incurred by the League.

At the expiration of his term of office he shall account for and return to the League all moneys, books, papers and property received by him by virtue of his office.

20

# *CONSTITUTION*

*7.5.*  Any officer of the League may be removed from office at any time by a two-thirds majority of the Member Clubs present and voting at a meeting of the League, provided that the notice calling such meeting shall include mention of the intention to take such action.

# CONSTITUTION

## ARTICLE VIII

### CONCERNING CONFLICTING INTERESTS
### AND TRANSFERS OF INTEREST

*8.1. Conflicting Interests and Loans.*

(a)    No member shall exercise control, directly or indirectly, over the hockey franchise issued to any other member of the League.

(b)    No member shall, directly or indirectly, loan money to or become surety or guarantor for a player of any other member of the League.

(c)    No member, player, coach or manager shall, directly or indirectly, loan money to or become surety or guarantor for any umpire, referee, linesman or similar official employed by the League.

(d)    No employee, umpire, referee, linesman, president, secretary or treasurer of the League shall, directly or indirectly, own stock or have a financial interest in any member or loan money to or become surety or guarantor for any such member, nor shall any such member or stockholder or officer or director thereof, loan money to or become surety or guarantor for any such person, unless all facts of the transaction shall first be fully disclosed to the other members of the League and be approved by them.

22

# *CONSTITUTION*

## ARTICLE IX

### DUES AND ASSESSMENTS

*9.1.*  The Board of Governors at each Annual Meeting shall determine and fix an amount that each member shall pay as annual dues to the League and determine the amount of any assessments that may be necessary for each member to pay in order to defray the expenses and liabilities of the League.  However, all dues and assessments shall be uniform in amount or percentage and each member shall at all times retain all income received from its "home games" and no assessment shall be made against any member for the purpose of fostering, promoting or aiding another member without the unanimous approval of all members of the League present and voting.

## ARTICLE X

### BY-LAWS

*10.1.*  The Member Clubs agree to conform to and be bound by the By-Laws which shall be adopted to conform to the provisions of this Constitution by a two-thirds majority of the Member Clubs present and voting and as said By-Laws may from time to time be added to, amended, repealed or replaced.

*10.2.*  Any of the said By-Laws may be added to, amended, repealed or replaced by a two-thirds majority of the Member Clubs present and voting at a meeting of the League, but no change, except when adopted by unanimous vote of all Member Clubs shall be valid unless the notice calling the meeting contains mention of the general nature of the proposed change.

23

# CONSTITUTION

## ARTICLE XI

### MISCELLANEOUS

*11.1. League Rules.* The League shall adopt a set of rules and regulations to be known as the "League Rules," relating to the determination of the League championship, the conduct and scheduling of hockey games, player contracts, the reservation, recruiting and drafting of players, the selling, assigning and trading of player contracts, and like matters. League Rules shall be adopted by the affirmative vote of a two-thirds majority of the members of the League provided always that no such "League Rule" or amendment thereto shall have the effect of depriving any Member Club of any vested property right in the services of players or in its home territory except by unanimous consent of all members of the League, except that any League Rule or other resolution, dealing with expansion of the League only, may have the effect of depriving any Member Club of any vested property right in the services of players if approved by the affirmative vote of three-fourths of the members of the League present and voting. The Commissioner shall be authorized to propose for adoption by the League such Rules as he may deem advisable.

*11.2. Notices.* Any notices required by this Constitution shall be deemed duly given when mailed or telegraphed in the usual manner, postage or telegraph charges prepaid, addressed to the person for whom such notice is intended, at his last address as shown on the League records, or when a notice in writing is delivered in person.

*11.3. Waiver of Notice.* Any notice herein provided for may be waived by the party entitled to such notice and such waiver may be made either before, at or after the meeting or event in question.

*11.4. Receipts.* No part of the receipts of the League shall inure to the benefit of any private member or individual.

*11.5.* In the event of any conflict between any provision of this Constitution and any provision of the By-Laws or Rules adopted as hereinabove provided, the provisions of this Constitution shall in all cases control.

24

# CONSTITUTION

## ARTICLE XII

## AMENDMENTS

12.1. *Unanimous Consent.* Any provision of this Constitution may be amended at any meeting by unanimous consent of all members of the League present and voting. Article III, Article IV, Article IX and this Article XII shall not be amended or altered except by unanimous consent of all members of the League present and voting. Any amendment of Article III, Article IV, Article IX or this Article XII shall be evidenced by an instrument in writing signed by all members of the League.

12.2. *Three-fourths Consent.* Any provision of this Constitution, except Articles III, IV, IX and this Article XII, may be amended by a vote of three-fourths of all the members of the League present and voting at any special meeting held for the purpose of such amendment or at any Annual Meeting, provided notice of the proposed amendment has been given to each member at least ten (10) days prior to such Annual Meeting or other special meeting.

Each of the undersigned members of the National Hockey League, in consideration of the promises and agreements similarly made by each of the other members, hereby (on behalf of the undersigned and its assigns) accepts and agrees to abide by the foregoing Constitution and each and every alteration, amendment and repeal thereof duly made so long as the undersigned or its assigns are members of the League.

The foregoing Constitution is adopted in complete substitution for any constitution previously adopted for the National Hockey League and all amendments thereof and any such previous constitution is hereby cancelled and annulled together with all By-Laws and Rules adopted pursuant thereto.

# CONSTITUTION

## ARTICLE XIII

## CONFLICTS OF INTEREST - OWNERSHIP

*13.1. Purposes.* This Article 13 prohibits the acquisition (or holding) of certain direct or indirect ownership interests in, or management rights with respect to, Member Clubs, by Persons having ownership interests in, or management rights with respect to, one or more other Member Clubs. The League and the Commissioner, as the case may be, shall continue to have all of the rights and powers, and all current and prospective Member Clubs and Owners shall have all of the obligations, set forth in the other provisions of the Constitution, By-Laws, rules, resolutions and agreements of the League. Without limiting the generality of the preceding sentence, the League shall continue to have the right to disapprove any proposed transfer of a direct or indirect ownership interest in a Member Club, even if the proposed transaction would otherwise comply with the provisions of this Article 13.

*13.2. Definitions.* For purposes of this Article 13 the following capitalized terms shall have the following meanings:

"Attributed Persons" shall mean any Person (i) having or controlling a direct or indirect ownership interest in another specified Person of 10% or more (other than a Person who acquired such interest through the purchase of publicly traded shares without the consent, assistance or approval of the issuer thereof), (ii) any Director of a specified Person or any of its Related Parties (including, in the case of a Controlling Owner, its Club), or (iii) the parents, spouse, children or other lineal descendants of any individual described in clauses (i) or (ii).

"Controlling Owner" means, with respect to any Member Club or its franchise, any Person (whether or not an Owner) that:

(i)     has actual or effective control of the Member Club or its franchise, whether by contract, operation of law or otherwise;

(ii)    has any management or operational rights with respect to the Member Club or its franchise, excluding, for this purpose, any management or operational rights that such Person may have solely with respect to any Diversified Owner of that Member Club that do not provide such Person with material management or operational rights with respect to the Member Club or its franchise; or

(iii)   has an aggregate direct or indirect Ownership Interest of 30% or more in a Member Club or its franchise, even if such Person has no management or voting rights of any kind with respect to the Member Club or its franchise.

"*Director*" shall mean any individual having the rights or powers customarily associated with (i) a director of a corporation, a manager of a limited liability company, the general partner (or governing body) of a general or limited partnership, the trustee of a trust, or the governing body of any other entity included in the definition of Person, or (ii) an executive officer of any of the foregoing.

"*Diversified Owner*" shall mean any Owner of a Member Club that has direct or indirect ownership interests in businesses or assets other than the Member Club such that the book value of the assets of the

26

# *CONSTITUTION*

Member Club (or, if applicable, such Owner's Ownership Interest in the Member Club) and gross revenues of the Member Club (if and to the extent reflected in whole or in part in such Owner's financial statements), represent 5% or less of the book value of the assets and gross revenues, respectively, of the Owner in its most recent fiscal year.

"*Member Club*" shall mean a Club which is a member of the National Hockey League.

"*Multiple Owner*" shall mean any Person having a Non-Controlling Ownership Interest in two or more Member Clubs, other than pursuant to the Public Company Exception.

"*Non-Controlling Owner*" shall mean any Owner that is not a Controlling Owner.

"*Non-Controlling Ownership Interest*" shall mean an Ownership Interest that would not cause the record or beneficial holder thereof to be a Controlling Owner.

"*Owner*" shall mean each Person (including both the trustees and any beneficiaries of any trust) that directly or indirectly (including through one or more intermediate Persons) owns of record or beneficially an Ownership Interest in, or has effective control over, a Member Club or its franchise.

"*Ownership Interest*" shall have the meaning set forth in Section 3.5 of the Constitution for the term "Ownership interest".

"*Person*" shall mean any individual, corporation, association, partnership (general or limited), joint venture, trust, estate, limited liability company or other legal entity or organization.

"*Public Company Exception*" shall mean the record or beneficial ownership by an Owner of an Ownership Interest of less than 5% in a Member Club of which it is not otherwise a Controlling Owner or Non-Controlling Owner through ownership by such Owner of an interest in any Person that has a class of securities traded on any generally recognized securities exchange in the United States or Canada.

"*Related Party*" shall mean any Person over which a specified Person has or can exercise effective control, or that controls or is under common control with the specified Person.

### 13.3. *Restrictions on Controlling Owner*

(a)     Subject to Article 13.6 below, a Controlling Owner may not at any time:

(i)     acquire or hold an Ownership Interest in another Member Club or its franchise, other than pursuant to the Public Company Exception;

(ii)     serve, or permit any of its Attributed Persons to serve, as a Director of any other Member Club or any other Controlling Owner unless, in the case of a Controlling Owner that is a Diversified Owner, the Commissioner has given his prior written approval; or

27

# CONSTITUTION

(iii)     enter into any business transaction with any Member Club (other than the Member Club of which it is the Controlling Owner) without the prior written approval of the Commissioner.

(b)     If the Commissioner disapproves any proposed transaction submitted pursuant to Article 13.3(a)(iii), the applicable Controlling Owner may appeal such disapproval to the Board of Governors, which may approve the proposed transaction by three-fourths vote.

### 13.4. *Restrictions on Non-Controlling Owners*

(a)     A Non-Controlling Owner may have Non-Controlling Ownership Interests in up to three Member Clubs or franchises, provided that only one of such Non-Controlling Ownership Interests may equal or exceed 10%. Ownership Interests acquired pursuant to the Public Company Exception shall not be considered for purposes of determining compliance with the preceding sentence.

(b)     A Non-Controlling Owner may not have or attempt to exercise any voting or management rights with respect to a Member Club or its franchise, other than the right to vote on a sale of all or substantially all of the Member Club's assets, a merger, consolidation or liquidation of the Member Club, or any other matter determined to be extraordinary by the Commissioner.

(c)     A Non-Controlling Owner shall not serve, and shall not permit any of its Attributed Persons to serve, as a Director of any Member Club or any Controlling Owner (except, with the Commissioner's prior written approval, as a Director of any Diversified Owner that is not itself a Member Club).

### 13.5. *Grandfathering.* The provisions of Sections 13.3 and 13.4 shall not disallow any arrangements approved in accordance with the Constitution, By-Laws, rules and agreements of the League prior to adoption of this Article 13, but such arrangements shall be taken into account in determining whether any other transactions comply with this Article 13.

### 13.6. *Divestiture upon occurrence of a Subsequent Event.* Subject to Article 13.5, if at any time an Owner is in violation of this Article 13 because of an event or other occurrence that it could not prevent, the Owner must (i) promptly notify the Commissioner, (ii) come into compliance with the provisions of this Article 13 within a reasonable period established by the Commissioner (not to exceed 180 days, subject to such extensions as may be necessary to comply with regulatory requirements), and (iii) enter into such interim arrangements for holding and/or voting the Ownership Interest or other right causing the violation as the Commissioner shall determine.

### 13.7. *Conduct Regulations*

The following provisions shall apply to any Multiple Owner:

(a)     No Multiple Owner whose Ownership Interests have previously been approved by the League shall enter into negotiations to increase any of its existing Ownership Interests or,

28

# *CONSTITUTION*

subject to the Public Company Exception, acquire any Ownership Interest in another Member Club, without giving a prior written notice of its intentions to the Commissioner.

(b)    In addition to complying with the loan prohibitions set forth in Article 8.1 of the Constitution, a Multiple Owner shall not make direct or indirect loans (whether secured or unsecured) to any of the Member Clubs in which it owns a Non-Controlling Interest (or any players on those clubs), except for loans to other Owners of such Member Clubs that relate exclusively to non-hockey businesses, are disclosed in a prior written notice to the Commissioner and are determined by the Commissioner prior to consummation of the loan not to provide any party to the transaction with increased control or influence over the hockey operations of any Member Club or the ownership interest in a Member Club of any Owner. A Multiple Owner may, however, seek the Commissioner's permission to make loans to a Member Club in which it is an Owner if such loans are, for tax or other reasons, being made pro rata by all Owners of that Club in lieu of further equity contributions. For purposes of this Article 13.7(b), all guaranty, suretyship and similar transactions shall be treated as loans.

(c)    A Member Club having a Non-Controlling Owner that is a Multiple Owner may not communicate with that Non-Controlling Owner on player-related or League-related matters, other than periodic reports of overall profit and loss performance and business strategy.

(d)    A Multiple Owner must give prior written notice to the Commissioner of any transaction with any Member Club (including a Member Club in which it has a Non-Controlling Ownership Interest) that provides (or could reasonably be determined to provide) the Multiple Owner with material rights with respect to the Member Club, including, but not limited to, the right to receive payments based, directly or indirectly, in whole or in part, on the financial or competitive performance of such Member Club or that would provide the Multiple Owner with the direct or indirect ability to affect or influence the management or operations of the Member Club. Such transactions will be subject to League approval by three-fourths vote if the Commissioner determines that approval is appropriate.

29

# *CONSTITUTION*

### 13.8. *Related Parties*

Each Owner and Member Club shall cause each of its Related Parties to comply with the provisions of this Article 13 and any act or omission of any such Related Party shall be considered to have been taken by such Owner or Member Club, as the case may be.

### 13.9. *Other Interpretive Guidelines*

(a) *Puts/Calls/Options.* For purposes of this Article 13, all contingent, convertible or similar rights, such as puts, calls, options and convertible debt instruments, shall be deemed to have been exercised at the time granted. Both the grant and the exercise of such rights shall continue to require the prior approval of the League under Article 3.5 of the Constitution.

(b) *Discretion.* For purposes of this Article 13, the Commissioner shall have the final, binding and non-appealable authority to determine the nature, percentage interest and/or book value of an ownership interest, and the significance of any management or operational right.

(c) *5%/10% Transfer.* To the extent League approval is sought for any proposed transfer of an Ownership Interest that can be approved by the Commissioner (because it is less than 5%) or the Executive Committee (because it is less than 10%) under Article 3.5 of the Constitution, the Commissioner or the Executive Committee also shall have the authority to approve any potential conflict of interest arising from the proposed transfer, provided the proposed transaction otherwise satisfies the requirements of this Article 13.

(d) *Public Company Interests of 5% or More.* Any public company interest of 5% or more is subject to being (but will not necessarily be) classified as "controlling" by the Commissioner.

### 13.10. *Penalties*

Any party that violates this Article 13 will be subject to any and all penalties that may be assessed by the League or the Commissioner for breach of the Constitution, By-Laws or rules of the League, including the penalties set forth in Sections 3.9(b) and 6.3(j) of the NHL Constitution.

# CONSTITUTION

The undersigned have duly executed this Constitution, signifying their acceptance and ratification thereof:

Mighty Ducks Hockey Club, Inc. (Anaheim)
Atlanta Hockey Club, Inc. (Atlanta)
Boston Professional Hockey Association, Inc. (Boston)
Florida Panthers Hockey Club, Ltd. (Broward County)
Niagara Frontier Hockey, L.P. (Buffalo)
Calgary Flames Limited Partnership (Calgary)
Chicago Blackhawk Hockey Team, Inc. (Chicago)
COLHOC Limited Partnership (Columbus)
Dallas Stars, L.P. (Dallas)
Colorado Avalanche LLC (Denver)
Detroit Red Wings, Inc. (Detroit)
Edmonton Investors Group Limited Partnership (Edmonton)
The Los Angeles Kings Hockey Club, L.P. (Los Angeles)
Minnesota Wild Hockey Club, LP (Minnesota)
Club de Hockey Canadien, Inc. (Montreal)
Nashville Predators (Nashville)
New Jersey Devils LLC (New Jersey)
New York Islanders Hockey Club, L.P. (New York "Islanders")
Madison Square Garden, L.P. (New York "Rangers")
Ottawa Senators Hockey Club Corporation (Ottawa)
Comcast Spectacor, L.P. (Philadelphia)
Coyotes Hockey, LLC (Phoenix)
Lemieux Group L.P. (Pittsburgh)
Hurricanes Hockey Limited Partnership (Raleigh-Durham)
St. Louis Blues Hockey Club, L.P. (St. Louis)
San Jose Sharks, L.P. (San Jose)
Center Ice, L.L.C. (Tampa)
Maple Leaf Sports & Entertainment, Ltd. (Toronto)
Orca Bay Hockey Limited Partnership (Vancouver)
Lincoln Hockey LLC (Washington)