UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MADISON SQUARE GARDEN, L.P.,                )
                                            )
           Plaintiff,                       )   No. 07 CIV. 8455 (LAP)
                                            )
     v.                                     )
                                            )
NATIONAL HOCKEY LEAGUE, NATIONAL            )
HOCKEY LEAGUE ENTERPRISES, L.P.,            )
NATIONAL HOCKEY LEAGUE INTERACTIVE          )
CYBERENTERPRISES, L.L.C., NHL               )
ENTERPRISES CANADA, L.P., and NHL           )
ENTERPRISES, B.V.,                          )
                                            )
           Defendants.                      )
------------------------------------------------------------------ X

### REPLY DECLARATION OF SCOTT RICHMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, SCOTT RICHMAN, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Senior Vice President and General Manager for MSG Interactive, a division of Madison Square Garden, L.P. ("MSG"). As such, I am responsible for the business and operations of all of MSG Interactive's web-based and wireless initiatives for all the teams, venues and network owned and operated by MSG, including the team website for the New York Rangers hockey team (the "Rangers"). I submit this reply affidavit in further support of MSG's motion for a preliminary injunction in the above-captioned action, and I have personal knowledge of the facts stated below. In this regard, I have reviewed the declarations submitted by Keith Ritter, John Collins and Robert Hawkins in this litigation, and I provide this declaration to address a few of the specific issues discussed in their submissions. This declaration is not intended as a detailed refutation of all the inaccuracies in their submissions.

2. Mr. Ritter suggests in his declaration that MSG has not been cooperative in its dealings with the NHL with respect to the creation of the League website. This is not accurate. As I described in my original declaration, we met with League representatives whose task it was to launch the new NHL site, including Mr. Ritter, and engaged in detailed discussions about how to accomplish the League's goals in this regard. We spent considerable time in those meetings and tried, in good faith, to work out a way in which all our respective objectives as to team websites could be met. We were unable to come to an agreement with the NHL on many issues, mainly because we had very different positions on the question of whether the teams or the League should control the teams' websites. At various points we expressed our willingness to the NHL posting its own separate Rangers site or having appropriate links from the NHL's site to our team site. The NHL would not agree to this proposal.

3. The issue has never been MSG's supposed lack of cooperation, but rather the League's insistence that it, and not MSG, control the Rangers website and URL, to the point of insisting that the Rangers site be published through the League's Content Management System, that the team's home page reside on the League's servers, and that MSG's domain name newyorkrangers.com URL (and all derivations of that URL) point to the League's servers rather than to MSG's servers. MSG personnel refused to consent to this confiscation. The fact is that MSG cooperated with the NHL in trying to implement the NHL's New Media plans up to the point where the NHL tried to force MSG into surrendering control over these key properties.

4. Keeping the Rangers website on MSG's servers and retaining control over the team's URL address is crucial to MSG's ability to run its various businesses, to communicate with its customers, to maximize its profits, and to compete with other teams. Indeed, the Rangers website is one of the most important ways that MSG promotes and increases

the value of the Rangers brand. By insisting that MSG turn over the Rangers website, including the site's customer traffic, the NHL effectively asked us to stop using our website to compete and instead to turn over the fate of our Rangers brand to the League.

5.  Keeping the Rangers site on our servers allows MSG to have far greater flexibility and responsiveness to our customers' needs across all of our brands. In particular, doing so allows MSG far greater options in terms of customizing the Rangers site to the needs of our fans, advertisers, and sponsors. For example, if MSG wants to sell a package of advertising, sponsorships, promotions and other services that covers some or all of MSG's properties (like the Knicks, Liberty, Rangers, MSG Network, thegarden.com, Radio City Music Hall, Beacon Theater, etc.), we will be severely hamstrung in our ability to do so if we are forced to go through the NHL server and the NHL's Content Management System. Indeed, in many instances we would not be able to offer this product to important sponsors. And since this type of cross-promotion has become very important to many of our major sponsors, we simply cannot agree to forego control over our ability to offer these types of packages.

6.  As for our ability to use the Rangers website to communicate with our fans, the NHL's suggestion that we will not be harmed by our loss of control over our own site is incorrect. An individual team's website is one of the most important means for the team to communicate directly with its fans, and it likely will continue to grow in importance in this regard. As I previously indicated, the Rangers website is one of the most important ways that MSG promotes its hockey product in competition with other NHL clubs, creates and preserves brand loyalty, and receives feedback from Rangers fans and customers. To the extent the League interrupts or otherwise alters this communication with fans, our reaction time and flexibility in responding to the desires of Rangers fans could be slowed, the Rangers message could become

Case 1:07-cv-08455-LAP    Document 39-5    Filed 10/18/2007    Page 4 of 4

10/17/2007 16:17 FAX 415 633 3710     FOUR SEASONS S.F.                                    ☒002/003
17 Oct 07 17:23  212-755-7306          1-415-633-3001  Jones Day                            Pg 002

~~diluted, and our business and our relations with our customers might be harmed — and that harm~~ and those adverse effects would be difficult if not impossible to repair. In effect, the NHL is trying to insert a filter between the Rangers and their fans and to substitute the NHL's voice for ours in communicating with those fans. This is not only more costly and inefficient, it would fundamentally change the message that the team delivers to our customers.

7. Finally, the declarations submitted by the NHL appear to suggest that because MSG has allowed its Knicks website to reside on the NBA's servers MSG has no grounds to complain now about the NHL's attempt to control the Rangers site. This is a false comparison. The amount of control asserted by the NBA is minimal compared with the NHL's announced scheme. Contrary to the suggestion in the NHL's submission, the NBA has been far more accommodating in allowing the teams to customize their own sites (thereby avoiding the cookie cutter nature of the NHL's plan). Moreover, the NBA does not take ad space from the team's home pages and does not confiscate revenue generated by individual team sites. Nor does the NBA effectively require team employees to work for the League in supplying content and other support. Thus, the NBA allows teams to earn income on the investment they make in their own sites. So the more an individual team decided to invest, the more it stands to earn from its own site.

Dated: New York, New York
       October 17, 2007

                                                    _____
                                                           SCOTT RICHMAN

NYI-4033016v1                           -4-