UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
MADISON SQUARE GARDEN, L.P.,             )     No. 07 Civ. 8455 (LAP)
                                         )
             Plaintiff,                  )
                                         )
         -against-                       )
                                         )
NATIONAL HOCKEY LEAGUE,                   )
NATIONAL HOCKEY LEAGUE                    )
ENTERPRISES, L.P., NATIONAL               )
HOCKEY LEAGUE INTERACTIVE                 )
CYBERENTERPRISES, L.L.C., NHL             )
ENTERPRISES CANADA, L.P., and NHL         )
ENTERPRISES, B.V.,                        )
                                         )
             Defendants.                 )
-------------------------------------------------- x
```

**DECLARATION OF JERRY A. HAUSMAN**

JERRY A. HAUSMAN declares under penalty of perjury pursuant to 28 USC Section 1746 as follows:

**I.    Qualifications**

1.  I am the MacDonald Professor of Economics at the Massachusetts Institute of Technology ("MIT") in Cambridge, Massachusetts.  I graduated from Brown University in 1968.  I received a D.Phil. (Ph.D) in economics from Oxford University in 1973 where I was a Marshall Scholar.  I have been at MIT since completing my D.Phil.  My academic specialties are econometrics, the application of statistical methods to economic data, and applied microeconomics, the study of behavior by firms and by consumers.  I teach a graduate course in applied industrial organization, which is the study of how markets operate.

2.  I have been an associate editor of *Econometrica*, the leading economics journal, and the *Rand (Bell) Journal of Economics*, the leading journal of applied microeconomics.  In December 1985, I received the John Bates Clark Award of the American Economic Association, awarded every other year for the most "significant contributions to economics" by an economist under the age of 40.  In 1980, I was awarded the Frisch Medal of the Econometric Society.  I have been a member of numerous government advisory committees for both the US government and the Commonwealth of Massachusetts.  I have published over 150 academic research papers in leading economic journals including the *American Economic Review*, *Econometrica*, and the *Rand (Bell) Journal of Economics.*  My curriculum vitae is attached as Exhibit A.

3.  I have extensive experience analyzing antitrust and industrial organization issues.  I have published a number of papers in this area.  I have extensive experience in antitrust litigation matters.  I have testified as an expert witness in a number of antitrust proceedings in the US, Canada, New Zealand, Australia, and the European Union.  I have testified in three previous cases involving sports and antitrust: *Chicago Professional Sports Limited Partnership v. National Basketball Association, Adidas America,*

*Inc. v. NCAA*, and *Worldwide Basketball and Sport Tours, Inc. v. NCAA*. I
have been an Advisory Editor of the *Journal of Sports Economics* since
1999. I have published peer reviewed articles on professional sports, e.g., J.
Hausman and G. Leonard, "Superstars in the National Basketball
Association: Economic Value and Policy," *Journal of Labor Economics*,
15(4), 586-624, 1997. I have previous experience in doing economic
analysis and consulting for professional hockey. I served as the economic
advisor to the NHL Players Union in 1994 during their contract negotiations
with the NHL.

4. I have reviewed the Complaint, the declarations submitted by both parties,
including the declaration submitted by Professor Frank Fisher, and the
Memorandums of Law of both parties.

## II.    Assignment and Summary of Conclusions

5. Counsel for Madison Square Garden ("Rangers") has asked me to provide
an economic analysis of certain sections of Professor Frank Fisher's
declaration on behalf of the NHL. ("Fisher Decl."). I have not responded to
all of the matters addressed by Professor Fisher, but I have limited my
analysis to the following areas in his declaration and have come to the
following conclusions:

> a. Significant competition exists among NHL teams
>    for fans. In the New York metropolitan area the
>    New York Rangers, New York Islanders, and New
>    Jersey Devils all compete for fans among
>    themselves and with other NHL teams.
>
> b. The NHL's actions challenged in this lawsuit would
>    homogenize team websites and decrease
>    competition for fans, including competition in the
>    NY metropolitan area.
>
> c. The NHL's actions would also take part of the value
>    of the Rangers' competitive efforts and transfer that

3

value to other NHL teams. Doing so would decrease incentives for future investment by the Rangers and decrease competition.

    d.  Professor Fisher misinterprets allowable cooperation by teams in a professional sports league. Under his interpretation anti-competitive cooperation among NHL teams would likely decrease competition and decrease hockey fans' consumer welfare.

## III.   Economic Analysis

6. Professor Fisher and the other NHL declarants describe the intense loyalty of NHL fans. Professor Fisher states: "Survey data indicate that ice hockey fans are more "tribal" than fans of other major sports. They tend to be fans of their local or favorite team more so than fans of the sport." (¶ 61)[1] I agree with this observation, which is consistent with my prior experience and economic analysis of the NHL. I believe the intense team loyalty is especially prevalent in the northeastern US cities and in Montreal and Toronto although it exists elsewhere as well.

7. Fans, however, are not born into their respective "tribes." Instead NHL teams, such as the Rangers, must attract fans to their teams. As I previously mentioned, in the New York metropolitan areas the Rangers compete with two other teams, the New York Islanders ("Islanders") and the New Jersey Devils ("Devils"), as well as other teams. For example, a local fan who lives on Long Island (or in New Jersey) and commutes to work in Manhattan has a choice to root for the Islanders (or Devils) or attend games at Madison Square Garden and root for the Rangers.[2] Thus, the three NY metropolitan

---

[1] See also Declaration of John Collins, ¶ 3, ¶ 5. A NHL business review cited by Professor Fisher states, "This tribal, purely team-centric passion is not translating into national scale." Fisher Ex. 5, "Building League Scale to Drive Incremental Revenue," September 18, 2007, p. 15.

[2] This outcome directly contradicts the claim of William Daly, the Deputy Commissioner of the NHL, who states, "In producing and marketing their joint product, the League and the NHL Member Clubs are not business competitors, but instead are co-producers and co-sellers operating as a single integrated

teams compete for the intense following of hockey fans, who according to Professor Fisher and the NHL will tend to follow one team, with significantly less interest in other teams' performances.

8. This competition for fans has direct economic consequences. First, it affects ticket sales. An increase in loyal fans leads to more ticket sales and greater revenues and profits. Next, loyal fans also tend to buy their team's hockey merchandise. Also, hockey games are typically televised on cable (or satellite) TV. More loyal fans translate into more TV viewers and higher rights fees since both cable companies and advertisers pay increased amounts when viewership increases.

9. Use of a team website, such as newyorkrangers.com, is an important marketing and communications channel to reach and attract new loyal fans to the Rangers and retain existing loyal fans. The Rangers have invested significant amounts of money and time into their website, and have determined that control of their website is in the Rangers' best economic interests. Contrary to Professor Fisher's allusion to the "Tragedy of the Commons" (¶ 83) and his claim that the Rangers want to free-ride on the efforts of other members, the Rangers want to control their website so they compete better with the Islanders and Devils (and other teams) to attract and retain the intensely loyal "tribal" hockey fans. Professor Fisher seems to interpret any type of competition among teams as an example of "free riding" off the value of "NHL Hockey" (¶ 31). If the Rangers are restrained in using their website to compete, leading to a decrease in competition, consumer welfare will decrease as well.

10. The NHL claims it is in the economic interest of all teams not to compete through separate websites, but to be part of a common league-wide website. However, this type of common website would not take full "advantage of the specific knowledge of local conditions that locally-based teams possess," which Professor Fisher recognizes is an important economic

---

enterprise." (Daly Decl., ¶ 18) If the Rangers attract more "tribal" fans, the Islanders will likely attract fewer of these fans. Thus, the Rangers and Islanders are direct business competitors.

consideration. (Fisher Decl. ¶ 12). In particular, the Rangers have the expertise to grow their "tribal" fan base using their knowledge of local conditions in a much more effective manner than the NHL would be able to do. The Rangers today are one of the more economically successful NHL teams. The league now seeks to take the value of much of the Rangers' investment in building up a loyal fan base and successful team website and direct this fan base to a common league website. While some other NHL teams will likely benefit from this policy and would be expected to vote in its favor, the Rangers have determined the policy not to be in their best economic interests. A common league website would reduce the Rangers' economic incentive to make investments in the league website since a portion of the potential economic gain will be captured by the league and the other 29 teams.

11. This reduced investment will lead to reduced competition among the Rangers and other NHL clubs, including in the NY metropolitan area. This reduced competition will lead to decreased consumer welfare because the Rangers will not be able to use their "specific knowledge of local conditions" (to quote Professor Fisher), which allows them to better understand and respond to fans than would a common, league-wide approach. That decrease in competition to attract loyal fans cannot be disregarded under the NHL's and Professor Fisher's claims that the NHL can achieve benefits elsewhere.

12. I now consider Professor Fisher's claim that from an economic viewpoint the NHL is a "single economic enterprise." (Fisher Decl. p. 6)[3] Professor Fisher makes the standard observation, with which I agree, that a league such as the NHL is necessary to produce NHL Hockey. (¶ 9) However, I disagree with Professor Fisher's claim that "Regardless of its actual legal structure, from an economic point of view, the NHL necessarily operates as

---

[3] The NHL in its Memorandum of Law and the NHL declarants, e.g. Mr. Daly, make similar claims. However, I only respond to Professor Fisher here.

if it were a single enterprise." (¶ 15)[4]  If this claim were true, the Rangers,
Islanders, and Devils could come to a common agreement (antitrust
conspiracy) to increase their ticket prices without violating the law, since I
understand that under settled antitrust law (Copperweld) a single economic
enterprise cannot conspire with itself.  This outcome would lead to hockey
fans paying higher prices for their tickets and would lead to decreased
consumer welfare.

13. The economic essence of the NHL is that teams need to cooperate on certain
issues such as rules on competition and scheduling, while still competing on
many other economic factors.  This competition leads to lower prices and a
higher quality product, both of which benefit consumers.

14. Professor Fisher misunderstands this combination of cooperation and
competition.  He claims: "To the extent that a particular team becomes or
remains popular, its popularity arises from its membership in the NHL,
including in particular its on-ice success in the context of the NHL format
and the significant marketing efforts of the League." (¶ 20) While I agree
that it is necessary for the Rangers to be a member of the NHL to become
popular, the popularity of the Rangers derives in large part from their on-ice
success in attracting players who will win games and in their ability to
attract loyal "tribal" fans.  Professor Fisher ignores individual teams'
competitive efforts and investments and instead gives total credit to the
NHL.  My experience with sports leagues, including the NHL, is that the
NHL has probably been the least successful of the major sports leagues in
terms of its marketing efforts.  The NHL cable TV package and national TV
viewership are distinctly inferior to other leagues such as the NBA and
Major League Baseball.  Thus, I find no reason to believe, contrary to
Professor Fisher who has done no economic analysis to demonstrate his
claim, that the NHL will do a better job than each of the member clubs,
including the Rangers, in marketing professional ice hockey and increasing

---

[4] Professor Fisher's position is inconsistent with other declarations filed by the NHL, e.g. the Declaration of
John Collins who describes the "fierce local loyalties and club rivalries." (¶ 6)

competition, especially to attract the intensely loyal fans which are
important to the economic success of NHL teams such as the Rangers.


Dated:  October 18, 2007


_____
Jerry A. Hausman

Jerry
Hausman

Digitally signed by Jerry Hausman
DN: CN = Jerry Hausman, C = US
Date: 2007.10.18 10:06:17 -04'00'