UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MADISON SQUARE GARDEN, L.P.,                      :

             Plaintiff,                                  :

   - against -                                                  :     No. 07 CIV. 8455 (LAP)

                                              :

NATIONAL HOCKEY LEAGUE, NA-
TIONAL HOCKEY LEAGUE ENTER-
PRISES, L.P., NHL INTERACTIVE CYBER-       :    ELECTRONICALLY FILED
ENTERPRISES, LLC, NHL ENTERPRISES
CANADA, L.P., and NHL ENTERPRISES,          :
B.V.,
                                              :

            Defendants.                                 :

                                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANSWER OF DEFENDANTS NATIONAL HOCKEY LEAGUE, NHL ENTERPRISES, L.P., NHL INTERACTIVE CYBERENTERPRISES, L.L.C., NHL ENTERPRISES CANADA, L.P., AND NHL ENTERPRISES, B.V.**

        Defendants National Hockey League (the "NHL"), NHL Enterprises, L.P. (incorrectly identified in the Complaint as National Hockey League Enterprises, L.P.) ("NHLE"), NHL Interactive CyberEnterprises, L.L.C. ("NHL ICE"), NHL Enterprises Canada, L.P. ("NHLE Canada"), and NHL Enterprises, B.V. ("NHLE International") (collectively "defendants"), by and through their attorneys, file this answer to the Complaint For Injunctive Relief ("Complaint") of plaintiff Madison Square Garden, L.P. ("MSG").

        1.     Defendants deny the allegations in paragraph 1 of the Complaint, except admit that MSG presently owns the New York Rangers (the "Rangers"), which is known as one of the "original six" Member Clubs of the NHL.

1

2.      Defendants deny the allegations in paragraph 2 of the Complaint, except admit that the NHL is a joint venture consisting of the thirty Member Clubs of the NHL, including the Rangers, and deny knowledge or information sufficient to form a belief as to the truth of the allegation that the Rangers is proud to be among the oldest members of the NHL.

3.      Defendants deny the allegations in paragraph 3 of the Complaint, except admit that fans who visited newyorkrangers.com before the migration of the website to the common NHL technology platform were able to read the latest news about the Rangers and its players, watch video clips of game highlights and historical Rangers footage at MSG's "Rangers on Demand" offering, purchase Rangers' merchandise, apparel and game tickets, and interact with the site by posting Rangers-themed personal photos, and affirmatively state that MSG has the ability to offer fans who visit the migrated Rangers' website these same features.

4.      Defendants deny the allegations in paragraph 4 of the Complaint, except admit that, in the spring of 2007, the Rangers installed its own "Internet store" to sell team merchandise on the Internet, inserted "virtual advertising and signage" into the broadcast of certain Rangers' games, and streamed live broadcasts of its games to Internet subscribers within its local broadcast territory, all in violation of League rules, admit that the League fined MSG $100,000 per day for the days MSG engaged in any one of these violations after the League delivered notice of the violations, and admit that the League collected the fine by withholding $200,000 from intra-League payments that would otherwise have been payable to MSG.

5.      Defendants deny the allegations in paragraph 5 of the Complaint.

6.      Defendants deny the allegations in paragraph 6 of the Complaint, except admit that the NHL is a professional sports league and a legitimate joint venture of its Member Clubs, and affirmatively state that the NHL produces and markets a product – "NHL Hockey" –

through such activities as the licensing of intellectual property rights, the sale of broadcast and cablecast rights and the sale of merchandise, none of which activities would currently exist but for the participation of the Member Clubs in the NHL joint venture.

7. Defendants deny the allegations in paragraph 7 of the Complaint, except admit that the NHL is a joint venture of its Member Clubs, and deny knowledge or information sufficient to form a belief as to what MSG seeks to establish through this Complaint.

8. Defendants deny the allegations in paragraph 8 of the Complaint, except admit that the NHL is a joint venture of thirty professional ice hockey Clubs operating throughout the United States and Canada that was created to produce a product – "NHL Hockey" – that no one Club could produce alone, and admit that, as a legitimate joint venture, the NHL is engaged in a variety of legitimate activities, including, among other things, negotiating labor agreements with the players, negotiating national television broadcasting arrangements, promulgating and enforcing agreed rules of play, and scheduling ice hockey contests, including playoff and championship competitions.

9. Defendants deny the allegations in paragraph 9 of the Complaint, except admit that each Member Club is independently owned and operated, and affirmatively state that such ownership and operation is subject to the Constitution and By-Laws of the NHL, as well as the Resolutions of the Board of Governors and the interpretation thereof by the Commissioner of the NHL.

10. Defendants deny the allegations in paragraph 10 of the Complaint.

11. Defendants admit the allegations in paragraph 11 of the Complaint.

12. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint, except admit that MSG has spent

significant sums to attract and pay players like Jaromir Jagr, Brendan Shanahan, Scott Gomez and Chris Drury.

13. Defendants deny the allegations in paragraph 13 of the Complaint, except admit that the individual Member Clubs comprising the NHL, including the Rangers, have registered various copyrights, trademarks, trade dress and trade names in logos and designs relating to their teams, admit that the individual Member Clubs, including the Rangers, have undertaken substantial efforts over the years to develop and enhance the value of their marks and the image of their teams, and affirmatively state that, while reserving certain specified rights, the individual Member Clubs, including the Rangers, have agreed to license or assign their ownership rights in their marks to the League for purposes of best utilizing those rights for the benefit of the Member Clubs and the League as a whole.

14. Defendants deny the allegations in paragraph 14 of the Complaint, and affirmatively state that the value of the brands and marks of each of the Member Clubs, including the Rangers, is derived from each Club's membership in the NHL and the collective activities of the Member Clubs as determined by the Board of Governors pursuant to the NHL Constitution and By-Laws and other governing rules, and that such value is not derived solely from the efforts of any single Member Club acting alone.

15. Defendants deny the allegations in paragraph 15 of the Complaint.

16. Defendants deny the allegations in paragraph 16 of the Complaint, including each of its subparts, except admit that the NHL Board of Governors adopted the recommendations of a subcommittee of the Board concerning certain "new media" initiatives at a June 2006 meeting of the Board following a vote by the thirty NHL Member Clubs from which MSG and two other Member Clubs dissented, and affirmatively state that, pursuant to the NHL Consti-

tution and By-Laws and Resolutions of the Board of Governors of the NHL: (i) the NHL has the right to limit the sale of apparel, merchandise, and memorabilia both within and beyond each Member Club's local area, as well as through online team stores; (ii) the NHL has the right to restrict the use of virtual signage that can be electronically inserted during telecasts of a Member Club's games; (iii) the NHL has certain rights to control broadcasting and other distribution rights (including international rights) inside and outside each Member Club's local area; and (iv) one of the many core activities of a professional sports league is to develop and negotiate national television arrangements.

17. Defendants deny the allegations in paragraph 17 of the Complaint, and affirmatively state that: (i) in June 2006, twenty-nine of the thirty Member Clubs agreed (over MSG's objection) to extend for another ten years various license agreements held by defendant NHLE; (ii) at the June 2006 meeting of the Board of Governors, the Member Clubs voted by a margin of 25 yes, 3 no, 1 abstention and 1 team absent to adopt the recommendations of the Board subcommittee concerning various new media initiatives; and (iii) pursuant to the Constitution and By-Laws, as well as Consent Agreements signed by MSG's parent and MSG in 1994, these votes authorized the NHL to continue to control the rights of even dissenting Clubs, including the Rangers.

18. Defendants deny the allegations in paragraph 18 of the Complaint, except admit that a letter dated September 20, 2007 was sent by the Deputy Commissioner to MSG, and affirmatively state that a series of meetings was held in February, July and August 2007 regarding a number of issues relating to League rules and initiatives.

19. Defendants deny the allegations in paragraph 19 of the Complaint, except admit that MSG is subject to the NHL's Constitution and By-Laws, admit that the League rules

require MSG to comply with the joint decisions of the Member Clubs and with the decisions of the Commissioner, admit that the Constitution and By-Laws confer upon the Commissioner the power to fine Member Clubs for non-compliance with the Constitution, By-Laws, Resolutions of the Board of Governors and other rules promulgated thereunder, admit that the NHL Constitution permits the involuntary termination of a Member Club (or its ownership entity) that violates League rules and that such a termination could prevent a terminated Member Club from continuing to provide NHL Hockey, admit that the Deputy Commissioner sent a letter to MSG on April 18, 2007, fining MSG $100,000 per day for MSG's "clear and blatant" violation of the NHL's rules, and admit that the Deputy Commissioner sent MSG a letter dated September 20, 2007, notifying MSG that it would be fined for its non-compliance with League rules relating to the migration of the Rangers' website to the NHL's common technology platform.

20. Defendants deny the allegations in paragraph 20 of the Complaint, except admit that MSG seeks no money damages.

21. Defendants deny the allegations in paragraph 21 of the Complaint, except admit that MSG purports to bring this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. §1, and New York General Business Law § 340, and that MSG purports to base this Court's jurisdiction over the claims on 28 U.S.C. §§ 1331, 1337 and 1367 and the doctrine of pendent jurisdiction.

22. Defendants deny the allegations in paragraph 22 of the Complaint, except admit that the NHL, NHLE, and NHL ICE transact business, maintain their principal offices and are found in this district, and admit that MSG purports to base venue in this district on 28 U.S.C. § 1391 and 15 U.S.C. § 22.

23. Defendants deny the allegations in paragraph 23 of the Complaint.

24.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint, except admit that MSG owns the New York Rangers NHL Hockey Franchise and that the Rangers is a Member Club of the NHL.

25.     Defendants deny the allegations in paragraph 25 of the Complaint, except admit that the NHL transacts business in the Southern District of New York, and affirmatively state that the NHL recently moved its headquarters to 1185 Avenue of the Americas, New York, New York 10036.

26.     Defendants deny the allegations in paragraph 26 of the Complaint, except admit that each of the Member Clubs is separately and independently owned, that the Member Clubs of the NHL coordinate, among other things, to schedule and produce NHL ice hockey games and facilitate competition among the Member Clubs on the ice, admit that the Member Clubs do not collectively set the price of tickets for attending games in person and admit that each Member Club sets the price of tickets for attending its games in person.

27.     Defendants deny the allegations in paragraph 27 of the Complaint, except admit that NHLE is a Delaware limited partnership, the beneficial owners of which are the thirty Member Clubs or entities under their control, and transacts business in the Southern District of New York, and affirmatively state that NHLE recently moved its principal place of business to 1185 Avenue of the Americas, New York, New York 10036.

28.     Defendants deny the allegations in paragraph 28 of the Complaint, except admit that NHL ICE is a Delaware limited liability company, is a subsidiary of NHLE, and transacts business in the Southern District of New York, and affirmatively state that NHL ICE recently moved its principal place of business to 1185 Avenue of the Americas, New York, New York 10036.

29. Defendants deny the allegations in paragraph 29 of the Complaint, except admit that NHLE Canada is owned equally, directly or indirectly, by the owners of the thirty Member Clubs that constitute the NHL, admit that NHLE Canada primarily conducts trade or commerce in Canada relating to the business of its owners, and affirmatively state that NHLE Canada is an Ontario limited partnership with its principal place of business in Ontario, Canada.

30. Defendants deny the allegations in paragraph 30 of the Complaint, except admit that NHLE International is a Netherlands private limited liability company with its principal place of business in The Netherlands, admit that NHLE International primarily conducts trade or commerce outside North America, and affirmatively state that NHLE International is a subsidiary of NHLE.

31. Defendants deny the allegations in paragraph 31 of the Complaint.

32. Defendants deny the allegations in paragraph 32 of the Complaint, including each of its subparts.

33. Defendants deny the allegations in paragraph 33 of the Complaint.

34. Defendants deny the allegations in paragraph 34 of the Complaint.

35. Defendants deny the allegations in paragraph 35 of the Complaint.

36. Defendants deny the allegations in paragraph 36 of the Complaint.

37. Defendants deny the allegations in paragraph 37 of the Complaint, except admit that, fully consistent with the antitrust laws, the Rangers and other NHL Member Clubs must cooperate, among other things, to schedule, produce, market and promote "NHL Hockey" and its related products.

38.   Defendants deny the allegations set forth in the first sentence of paragraph 38 of the Complaint and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38.

39.   Defendants deny the allegations in paragraph 39 of the Complaint.

40.   Defendants deny the allegations in paragraph 40 of the Complaint, and affirmatively state that, pursuant to a series of agreements among the Member Clubs of the NHL, including the Rangers, beginning in the 1980s or earlier and renewed several times since then, defendants have obtained various rights to use for commercial and promotional purposes the individual Member Clubs' marks, primarily for national, as distinct from local, and international licensing opportunities.

41.   Defendants deny the allegations in paragraph 41 of the Complaint, except admit that, in June 2006, and over the objection of MSG, the Member Clubs renewed and extended until 2016 the license agreements that grant to the NHL various rights to use the individual Member Clubs' marks.

42.   Defendants deny the allegations in paragraph 42 of the Complaint, including each of its subparts, and affirmatively state that, pursuant to the Internet Regulations, which are promulgated by the NHL under authority from the Board of Governors, (i) some restrictions are placed on the format of Member Clubs' websites and (ii) the League sells certain limited advertising inventory on the Member Clubs' websites. Defendants further affirmatively state that, pursuant to the NHL Constitution and certain decisions of the Board of Governors, defendants (i) possess the exclusive worldwide right to license Member Club marks for use on team jerseys, authentic team practice wear, and outerwear, (ii) possess the right to license team apparel and merchandise for sale outside of team stores located within a team's local territory, (iii) possess

certain rights to control the broadcasting, rebroadcasting and other distribution of games, game highlights, and game footage in media such as cable and satellite television, radio, video-on-demand, the internet, and handheld technologies, and (iv) possess the exclusive right to market for commercial purposes highlights and footage of NHL games, while, for example, allowing Member Clubs to use game highlights and rebroadcasting of games on their websites, with certain limitations, (v) have generally prohibited Member Clubs from broadcasting or otherwise distributing live telecasts of NHL games through other outlets while the NHL's broadcasters are providing national coverage of an NHL game, (vi) have regulated the size and space of advertising on dasherboards and in the ice during games, (vii) have prohibited Member Clubs from using virtual advertising signage that can be electronically inserted during telecasts of an NHL game, (viii) have required Member Clubs to ensure that 65% of the products offered through a Member Club's catalog must be produced by NHL-licensed national licensees, and (ix) have required Member Clubs to comply with certain restrictions with respect to the sale of team merchandise online.  Finally, defendants affirmatively state that the NHL is seeking to offer to each Member Club a package of League-sponsored same-day, out-of-town highlights of other NHL games for display in their respective home arenas if the Member Club wishes to do so.

43. Defendants deny the allegations in paragraph 43 of the Complaint, except admit that the Commissioner of the NHL has the authority to sanction Member Clubs for engaging in activities in violation of League rules, and admit that, pursuant to the NHL Constitution and By-Laws, MSG could be subject to sanctions up to and including expulsion from the NHL for violation of League rules.

44. Defendants deny the allegations in paragraph 44 of the Complaint.

45. Defendants deny the allegations in paragraph 45 of the Complaint, including each of its subparts.

46. Defendants deny the allegations in paragraph 46 of the Complaint.

47. Defendants deny the allegations in paragraph 47 of the Complaint.

48. Defendants deny the allegations in paragraph 48 of the Complaint.

49. Defendants deny the allegations in paragraph 49 of the Complaint, including each of its subparts.

50. Defendants incorporate their answers to paragraphs 1 through 49, above.

51. Defendants deny the allegations in paragraph 51 of the Complaint.

52. Defendants deny the allegations in paragraph 52 of the Complaint.

53. Defendants deny the allegations in paragraph 53 of the Complaint.

54. Defendants incorporate their answers to paragraphs 1 through 53, above.

55. Defendants deny the allegations in paragraph 55 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

The defendants, including specifically the NHL and its Member Clubs, are not capable of contracting, conspiring, or combining with one another within the meaning of the antitrust laws because they are a single economic entity, at least with respect to the conduct challenged in the Complaint.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim for relief under the doctrine established by the United States Supreme Court's decision in *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006). Specifically, the conduct alleged constitutes decisions made regarding the core activities of a legitimate joint venture which are not restraints of trade in the antitrust sense.

11

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### FOURTH AFFIRMATIVE DEFENSE

The restraints challenged by the complaint are reasonable ancillary restraints to a legitimate joint venture.

### FIFTH AFFIRMATIVE DEFENSE

MSG's claims are barred as a matter of law because MSG's allegations demonstrate that it is seeking to compete with a joint venture of which it is a member and free ride on the product created by the venture that would not exist but for the existence of the venture.

### SIXTH AFFIRMATIVE DEFENSE

MSG's claims are barred, in whole or in part, by the doctrine of waiver.

### SEVENTH AFFIRMATIVE DEFENSE

MSG's claims are barred, in whole or in part, by the doctrine of laches.

### EIGHTH AFFIRMATIVE DEFENSE

MSG's claims are barred, in whole or in part, by the doctrine of estoppel.

### NINTH AFFIRMATIVE DEFENSE

MSG's claims are barred, in whole or in part, by the Rangers' active and knowing acquiescence, equal involvement and participation in the creation and origination of the restraints of trade alleged in the Complaint.

### TENTH AFFIRMATIVE DEFENSE

MSG's claims against NHLE Canada fail for lack of personal jurisdiction.

### ELEVENTH AFFIRMATIVE DEFENSE

MSG's claims against NHLE Canada fail for lack of subject matter jurisdiction.

### TWELFTH AFFIRMATIVE DEFENSE

MSG's claims against NHLE International fail for lack of personal jurisdiction.

### THIRTEENTH AFFIRMATIVE DEFENSE

MSG's claims against NHLE International fail for lack of subject matter jurisdiction.

Dated: November 30, 2007                    Respectfully submitted,

                                                _s/ Shepard Goldfein_____
                                                Shepard Goldfein
                                                James A. Keyte
                                                Paul M. Eckles
                                                Peter S. Julian
                                                SKADDEN, ARPS, SLATE,
                                                   MEAGHER & FLOM LLP
                                                Four Times Square
                                                New York, New York 10036-6522
                                                Telephone: (212) 735-3000
                                                Facsimile: (212) 735-2000

                                                *Attorneys for Defendants*