# MANDATE

07-4927-cv
Madison Square Garden, L.P. v. National Hockey League

S.D.N.Y. *//NYNY*
Preska, J.
07 CV 8455 (LAP)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO SUMMARY ORDERS FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. IN A BRIEF OR OTHER PAPER IN WHICH A LITIGANT CITES A SUMMARY ORDER, IN EACH PARAGRAPH IN WHICH A CITATION APPEARS, AT LEAST ONE CITATION MUST EITHER BE TO THE FEDERAL APPENDIX OR BE ACCOMPANIED BY THE NOTATION: (SUMMARY ORDER). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF THAT SUMMARY ORDER TOGETHER WITH THE PAPER IN WHICH THE SUMMARY ORDER IS CITED ON ANY PARTY NOT REPRESENTED BY COUNSEL UNLESS THE SUMMARY ORDER IS AVAILABLE IN AN ELECTRONIC DATABASE WHICH IS PUBLICLY ACCESSIBLE WITHOUT PAYMENT OF FEE (SUCH AS THE DATABASE AVAILABLE AT HTTP://WWW.CA2.USCOURTS.GOV/). IF NO COPY IS SERVED BY REASON OF THE AVAILABILITY OF THE ORDER ON SUCH A DATABASE, THE CITATION MUST INCLUDE REFERENCE TO THAT DATABASE AND THE DOCKET NUMBER OF THE CASE IN WHICH THE ORDER WAS ENTERED.

1    At a stated term of the United States Court of Appeals for the Second Circuit, held at the
2    Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on
3    the 19th day of March, two thousand eight,
4
5    PRESENT:
6            HON. BARRINGTON D. PARKER,
7            HON. DEBRA ANN LIVINGSTON,
8                                    *Circuit Judges,*
9            HON. JANET C. HALL,[1]
10                                    *District Judge.*
11    _____
12
13    Madison Square Garden, L.P.,
14
15                    *Plaintiff-Appellant,*
16                                                            **No. 07-4927-cv**
17            -v.-                                            **SUMMARY ORDER**
18
19    National Hockey League, National Hockey
20    League Enterprises, L.P., NHL League Interactive
21    Cyberenterprises, LLC, NHL Enterprises Canada,
22    L.P. and NHL Enterprises, B.V.,
23
24                    *Defendants-Appellees.*
25    _____

UNITED STATES COURT OF APPEALS
FILED
MAR 19 2008
Catherine O'Hagan Wolfe, Clerk
SECOND CIRCUIT

---

[1] The Honorable Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

Issued as Mandate: APR 1 0 2008

FOR PLAINTIFF-APPELLANT: Glen D. Nager, Jones Day, Washington, DC, Meir Feder, Jones Day, New York, NY (Thomas F. Cullen, Jr., Joe Sims, Jones Day, Washington, DC *on the brief*)

FOR DEFENDANT-APPELLEE: Shepard Goldfein, James A. Keyte, Paul M. Eckles, Peter S. Julian, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the order of the district court is AFFIRMED.

We assume the parties' familiarity with the underlying facts and procedural history of this case, as well as the issues on appeal. Appellant Madison Square Garden, L.P. ("MSG") seeks review of a November 2, 2007 order of the United States District Court for the Southern District of New York (Preska, *J.*), denying its request for injunctive relief.

MSG owns an interest in and operates the New York Rangers hockey team, which is a member of the National Hockey League ("NHL"). Until 2007, each NHL member club, including the Rangers, maintained its own team website on the Internet. Beginning in 1996, the clubs agreed to subject these websites to certain format, advertising, sponsorship, merchandising, and other content restrictions imposed by the NHL. In 2000, the NHL Commissioner issued "Internet Regulations" that set forth further guidelines for the websites, including expressly reserving to the NHL the right to control up to 35% of each club's website advertising, and the requirement that each website include an "NHL Area" for league content.

In 2006, a "New Media Committee" convened by the Commissioner recommended that each team website be migrated to a common technology platform to be managed by the league. Each site would be linked to the NHL website and would contain certain common features, although the individual clubs would remain responsible for suppling artwork and local editorial content, providing other features and enhancements, and selling local advertising. The NHL would retain the same amount of space on each site for national advertising and other league

1    content.  In June 2006, a majority of NHL clubs voted to adopt and implement the New Media

2    Strategy.

3          MSG did not.  Over the next year, MSG and the NHL engaged in various negotiations

4    over the website issue, which were ultimately fruitless.  On September 28, 2007, under the threat

5    of league fines if it refused to migrate the Rangers site to the common platform, MSG filed suit,

6    alleging antitrust violations against Appellees (collectively, "the NHL") under Section 1 of the

7    Sherman Act, 15 U.S.C. § 1, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, as well

8    as under New York law.  MSG also moved for a preliminary injunction against the NHL's effort

9    to ban the Rangers from operating an independent website.  On November 2, 2007, the district

10    court denied the request, holding that MSG had failed to demonstrate a likelihood of success or a

11    sufficiently serious question going to the merits.  MSG appeals this determination.

12          We review the grant or denial of a preliminary injunction for abuse of discretion.  *Lusk v.*

13    *Vill. of Cold Spring*, 475 F.3d 480, 484 (2d Cir. 2007).  A district court abuses its discretion

14    "when (1) its decision rests on an error of law (such as application of the wrong legal principle)

15    or a clearly erroneous factual finding, or (2) its decision - though not necessarily the product of a

16    legal error or a clearly erroneous factual finding - cannot be located within the range of

17    permissible decisions." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 88 -89 (2d Cir. 2006)

18    (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir.2001)) (footnotes omitted).  "A

19    party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on

20    the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair

21    ground for litigation and a balance of hardships tipping decidedly in its favor, *and* (2) a

22    likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v.*

23    *DIRECTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007).  In this case, the district court found that

24    MSG did not demonstrate a likelihood of success or sufficiently serious questions going to the

merits under either a "quick look" or a "rule of reason" analysis.

The district court did not abuse its discretion in denying injunctive relief. First, it correctly determined that MSG failed to establish a likelihood of success or sufficiently serious questions under "quick look" analysis. "Quick look" is essentially an abbreviated form of rule of reason analysis, to be used in cases in which the likelihood of anticompetitive effects is so obvious that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999)); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 207 (2d Cir. 2001). A court must abandon "quick look" and proceed to a full-blown rule of reasons analysis, however, "once the defendant has shown a procompetitive justification for the conduct." *Bogan v. Hodgkins*, 166 F.3d 509, 514 n.6 (2d Cir. 1999).

We agree with the district court that "[i]t is far from obvious that [the NHL's ban on independent websites] has no redeeming value." Rather, the district court correctly cited "several procompetitive effects of the New Media Strategy." These procompetitive benefits preclude application of "quick look" analysis. *See Bogan*, 166 F.3d at 514 n.6 (briefly applying "quick look" but returning to Rule of Reason analysis, because the defendant offered "sound allegations of procompetitive benefit").

The district court also did not abuse its discretion in finding that MSG did not establish a likelihood of success or sufficiently serious questions under rule of reason analysis. Under rule of reason, a court must "determine whether [] restraints . . . are reasonable in light of their actual effect on the market and their pro-competitive justifications." *Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997). First, a plaintiff "bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Id.* (internal quotation marks and citation omitted). "If the plaintiff succeeds, the

1   burden shifts to the defendant to establish the pro-competitive redeeming virtues of the action.

2   Should the defendant carry this burden, the plaintiff must then show that the same pro-

3   competitive effect could be achieved through an alternative means that is less restrictive of

4   competition." *Id.* (internal quotation marks and citation omitted).

5        MSG did not show that the NHL's website ban has had an actual adverse effect on

6   competition in the relevant market.  Nor did MSG demonstrate that the many procompetitive

7   benefits of the NHL's restriction could be achieved through an alternative means that is less

8   restrictive of competition.  While there will certainly be substantive issues for the district court to

9   address on the merits - for example, how the antitrust laws apply to the NHL as a sports league,

10  and what the relevant market is in this case - the district court's conclusion that preliminary

11  injunctive relief was unwarranted falls well within the range of permissible decisions, and did not

12  constitute an abuse of discretion.

13       We have carefully considered MSG's remaining arguments and find them without merit.

14       For the foregoing reasons, the judgment of the district court is AFFIRMED.

15
16       For the Court:
17       Catherine O'Hagan Wolfe, Clerk
18

19       By:

20
21

