# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/21/08

RECEIVED
APR 16 2008
LORETTA A. PRESKA
U.S. DISTRICT JUDGE
S.D.N.Y.

Direct Number: (212) 326-7838
rwgaffey@jonesday.com

JP636767

April 15, 2008

BY HAND

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

Re:   Madison Square Garden, L.P. v. National Hockey League, et al., 07 Civ. 8455(LAP)

Dear Judge Preska:

We represent Madison Square Garden, L.P. ("MSG") in the above-referenced litigation against the National Hockey League and related entities (collectively, the "NHL"), and we write to seek the Court's assistance in resolving certain disagreements that have arisen in discovery. As discussed at our February 25 status conference with the Court, we have had extensive "meet and confer" discussions between counsel for all parties to try to resolve any disputes concerning our respective document discovery requests. While we have been largely successful in resolving disputes, a few issues remain that require the Court's intervention.

### The NHL's Refusal to Produce Documents In Response to Certain of MSG's Requests

1)   <u>Broadcasting documents</u>: MSG's Request No. 10 seeks documents concerning the territorial allocation of broadcasting areas between and among NHL Member Clubs, pursuant to which the clubs largely compete with each other in the broadcasting of NHL games, including documents relating to each Member Club's "sphere of influence," "outer market territory," and "Home Territory" (all as defined by the NHL), as well as any analyses of competitive issues relating to those territorial allocations. The NHL has agreed to produce only (i) documents relating to the Rangers' own territories, and (ii) policies and other materials that apply generally to all Member Clubs. The NHL has refused to produce documents regarding territorial restraints placed on, or allocations to, individual Member Clubs (including MSG).

The League's broadcasting restraints are squarely at issue in the complaint. Accordingly, MSG is entitled to discovery respecting the restraints the League imposes on each of the clubs outside its assigned territories, and not just what the Rangers can and cannot do in its assigned territory. The First Amended Complaint leaves no doubt that MSG is expressly challenging the horizontal restraints imposed by the Member Clubs through the NHL on the ability of each club to exploit games outside its assigned territory. Through these restraints, in fact, the clubs have allocated among themselves the geography of virtually all of North America, achieving a classic horizontal restraint on competition.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

**JONES DAY**

The Honorable Loretta A. Preska
April 15, 2008
Page 2

The requested material is inarguably relevant to MSG's claims, and therefore subject to discovery.

2) <u>NHL Member Club financial information</u>: Several of MSG's requests seek financial information concerning individual NHL Member Clubs, and in particular the performance of those clubs in the various business activities that are the subject of this lawsuit – *i.e.*, merchandising, broadcasting, sponsorship/advertising, and New Media. This information is necessary to (i) evaluate the extent to which different clubs have performed differently in those different business activities, as autonomous and separate entities and not as a single entity; (ii) assess the differences in the relative strengths of the individual clubs' marks and, therefore, the differences in their willingness to accept the challenged restraints; (iii) determine the impact of the NHL's restraints on individual clubs and the market; and (iv) respond to the League's argument that the challenged restraints are necessary to maintain competitive balance. The NHL has said that it only would be willing to produce financial data that (a) has been aggregated on a League-wide basis (from which it is impossible to isolate the performances of individual clubs) or (b) previously has been distributed to all of the Member Clubs (which, of course, is already in MSG's possession and, more importantly, is similarly insufficient in evaluating individual club performances). This is a far narrower approach than the standard for discovery under the Federal Rules; individual club information is discoverable and will be given appropriate confidentiality protection.

MSG is entitled to review this financial information, which is relevant to multiple issues in this case.

<u>The Confidentiality Agreement and (Proposed) Order</u>

One issue has arisen as to the terms of a Confidentiality Agreement and (Proposed) Order that both parties would like to have entered in this case. We have been successful in negotiating all but one provision of such an agreement, paragraph 14.e. The most recent draft (with annotations as to the disputed clause) is attached for the Court's review.

MSG has agreed to the NHL's insistence on three levels of confidentiality. The NHL insists that documents in the middle tier, *i.e.*, "Highly Confidential," may not be shown to any employee of a party except its in-house counsel. Given the complexity of the restraints and operations of the parties in this case (including myriad broadcasting contracts and subcontracts, often arcane NHL historic practices and policies, rapidly changing and continually developing new technologies, and technical jargon unique to these business areas), we will need to consult with business executives at MSG to understand and interpret many of the documents at issue. Hence, MSG proposed that paragraph 14.e include a provision allowing for such consultation, as needed, with appropriate protection for the confidentiality of such information. To ensure confidentiality protection, we agreed that such consultation would only take place at the offices of outside counsel (which would limit their frequency and prevent inadvertent disclosure of

JONES DAY

The Honorable Loretta A. Preska
April 15, 2008
Page 3

documents) and the employees in question will not be allowed to retain any of the documents. The ethical obligations that bind counsel, coupled with the Court's Confidentiality Order, will ensure compliance with this limitation.

     The NHL has rejected this proposed solution. Instead, it has insisted that only lawyers may view these business documents, which would hobble our ability to prepare the case with a full understanding of the facts. Requiring all such consultations to involve only in-house counsel is not only unduly cumbersome and unworkable in a case of this size, it unfairly would limit our ability to secure the technical information and business knowledge that we will need to elicit from our client.

     We ask the Court to approve MSG's version of the Proposed Order, including MSG's proposed language for paragraph 14.e.

     We respectfully request that a conference be held to discuss these outstanding discovery issues. We are, of course, available at the Court's convenience.

Respectfully submitted,

Robert W. Gaffey

Enclosure
cc: Shepard Goldfein, Esq.