# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
---
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
---
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(212) 735-3810
DIRECT FAX
(917) 777-3810
EMAIL ADDRESS
SGOLDFEI@SKADDEN.COM

April 17, 2008

**BY FACSIMILE**

The Honorable Loretta A. Preska, U.S.D.J.
United States District Court
Room 1320, 500 Pearl Street
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/21/08

Re: Madison Square Garden, L.P. v. National Hockey League et. al., No. 07 CIV 8455 (LAP)

Dear Judge Preska:

We represent the Defendants in the above-titled action. I write in response to the letter submitted on April 15, 2008 by Robert W. Gaffey, counsel for Madison Square Garden, L.P. ("MSG"), relating to discovery issues. Counsel for MSG did not inform us in advance that they intended to submit these issues for resolution. As explained in more detail below, we believe that many of the issues raised in Mr. Gaffey's letter are not ripe for the Court's consideration. We also believe that much of the discovery at issue, which is of questionable probative value in this action, is intended to burden and harass the NHL.

1) <u>Broadcasting documents</u>: MSG propounded its First Set of Document Requests on December 26, 2007. As MSG noted in its letter, the parties had "extensive 'meet and confer' discussions" prior to the February 25 status conference with the Court. The parties completed their "meet and confer" efforts on March 17, 2008, and those efforts were memorialized in two letters dated that same day.

Over two weeks later, on April 1, 2008, MSG filed its First Amended Complaint. In its Amended Complaint, MSG dramatically expanded the scope of its allegations. For the first time, MSG sought to challenge long-standing NHL rules and policies relating to the territorial rights of individual NHL Member Clubs, including rights relating to the broadcasting of NHL games. As MSG notes in its letter, "[t]he League's broadcasting restraints are squarely at issue in the [amended] complaint."

Since filing its Amended Complaint, MSG has not sought to revisit the scope of discovery relating to broadcasting (or any other) issue. The first communication that we received from MSG on this subject was Mr. Gaffey's letter to the Court. We respectfully submit that, in light of the Amended Complaint, further "meet and confer" efforts between the parties are appropriate before we burden the Court with this issue.

As a preliminary matter, however, we note that, even given the expanded allegations in the Amended Complaint, MSG's requests still appear to be overbroad. For example, Request No. 10 seeks the following documents:

> All documents concerning any interpretation, assessment or analysis by any or all of the Defendants of any or all of the Member Clubs' Home Territory or Local Territory rights, including but not limited to those concerning (i) the scope, extent and definition of each Member Club's sphere of influence, outermarket territory or Home Territory, including but not limited to any analysis of competitive issues in any such territories or spheres of influence; (ii) the demand for the broadcast of NHL games (a) within the Home Territory or Local Territory of any Member Club, and (b) beyond the Home Territory or Local Territory of any Member Club; or (iii) agreements between Defendants and MSG or any regional sports networks that carry NHL games regarding the licensing or use of feeds of games of the Member Clubs.

The NHL has already agreed to produce "rules or policies generally applicable to all NHL Member Clubs with respect to a Member Club broadcasting within its Home Territory, Sphere of Influence, or Outer Market, as well as generally applicable analyses, summaries, assessments, or evaluations respecting those rules or policies." The NHL has serious questions regarding MSG's motivations in seeking additional documents relating to other NHL Member Clubs' individual local broadcasting arrangements, including their local broadcast contracts with competitors of MSG and its parent company, Cablevision. While such documents would be of obvious interest to MSG's and Cablevision's business executives, MSG has failed to explain how such documents have any relevance to MSG's claims in this lawsuit, much less why it would need "all documents" relating to such arrangements as opposed to documents sufficient to provide a summary of the basic details.[1]

   2)   **NHL Member Club financial information**: Without citing to any specific document requests, MSG also notes that it has sought financial information concerning individual NHL Member Clubs. The NHL respectfully submits that MSG is overreaching and that its requests are, at best, premature.

First, the proffered rationale for needing the financial information of the other twenty-nine Member Clubs – to show that each Club has its own profits and losses and that there are differences in financial performance among the NHL's Member clubs in various business activities – is specious. MSG does not need the proprietary information it is seeking to prove that there are differences. The fact that there are differences is not in dispute. Whether the fact

---

[1] Further "meet and confer" efforts could also help clarify MSG's position regarding territorial restraints. The NHL initially objected to MSG's document request on relevance grounds because MSG was not challenging broadcast territories in its complaint. In response, MSG amended its complaint to "squarely" challenge local broadcasting policies. But the franchise granted to the Rangers by the NHL was for a specific geographic territory, and the Rangers' broadcast rights under that grant relate to that specific territory. Moreover, these policies have been in place since before MSG joined the League in 1994; MSG expressly agreed to these policies at the time it joined the League; and these are the very policies that protect MSG's own home territory. The NHL tends to doubt that MSG is really of the view that every other NHL Member Club has the legal right to broadcast all of its games into New York City, and that any attempt by the League to preclude such broadcasts would constitute an unlawful restraint of trade. Rather, the NHL believes that these allegations were added to the complaint to attempt to justify harassing and intrusive discovery, which appears to be part and parcel of MSG's "war" against the League office.

2

that there are differences is actually meaningful or relevant to any of the four legal arguments Mr. Gaffey identified in his letter is another issue entirely, but there is no need to reach that issue to address MSG's requests.[2]

In any event, without conceding that the variation in financial performance has any relevance, the NHL will be producing reports that show the general range of financial performance across the thirty NHL Member Clubs. Specifically, the NHL's production will include a report prepared by the League that includes revenues and expenses of the thirty NHL Member Clubs on an aggregate basis. The report contains figures for several categories of financial results, such as "new media revenues," and for each category includes (i) the average for all thirty Clubs, (ii) the highest and lowest Club amounts, and (iii) the average for Clubs in the top third, middle third, and bottom third. The NHL will also produce documents indicating the Rangers' specific ranking in each category.

Second, MSG's request is premature. Because the NHL's document production is ongoing, MSG has not had a chance to review the NHL's actual production of documents responsive to this request to determine whether or not the production is adequate. The NHL respectfully submits that MSG should review the financial documents that the NHL produces, including the reports described above, before demanding the production of all proprietary information relating to every other individual Member Club. At that point, if MSG still believes further discovery is necessary, it should be required to articulate how the performance of specific teams in various categories is relevant to a legal issue in this case. For example, how does knowing how much the Phoenix Coyotes earned from the sale of t-shirts in 2004 affect a single issue in this case?

Third, the NHL has serious reservations that MSG is attempting to use this action as a vehicle to obtain access to detailed and highly confidential proprietary information relating to other individual NHL Member Clubs as to which it would never be entitled access in the ordinary course of business. MSG has not named the other individual NHL Member Clubs as defendants; the information it is seeking has, at best, a tangential relevance to any issue in this action for injunctive relief; and the information that it is seeking was provided to the League by each Member Club with an expectation of confidentiality. (Indeed, we highly doubt that MSG would consent to the League sharing the Rangers' own financial information with the twenty-nine other NHL Member Clubs.)

The NHL respectfully submits that if the Court is going to entertain MSG's request at all that this is not an issue that can or should be resolved on an informal basis without allowing each Member Club the opportunity to be heard as to the propriety of discovery of its own financial information.

3) <u>The Confidentiality Agreement and (Proposed) Order</u>: As MSG notes, it agreed to a confidentiality agreement containing three tiers. The middle tier, i.e., "Highly Confidential," allows access to MSG's counsel in the case (both outside and in-house). During

---

[2] The financial differences between Clubs do not necessarily relate to "the relative strengths of the individual clubs' marks" as MSG suggests in its letter. In any given year, the financial performance of individual Clubs may depend on the team's performance, individual performances of players on the Club, marketing and promotional initiatives at the local level, and/or the relative size and demographics of the market in which the team is authorized to play its home games – none of which has any bearing on the legal issues in this case.

3

the parties negotiations, MSG's counsel stated that they thought they may need to share certain types of Highly Confidential documents with MSG's internal business executives. MSG's counsel further indicated that they were concerned that the NHL would over-designate documents as Highly Confidential, which would impede MSG's ability to prepare its case.

The parties ultimately agreed that, rather than discuss the issue in the abstract, the parties would reserve their rights as to the appropriate treatment of Highly Confidential documents and that the parties would revisit the issue after the NHL had begun producing documents, at which point the parties would be in a better position to assess whether there was a dispute that would require judicial intervention. (3/10/08 Email from William Hine to Matthew Martino) ("We agreed to this approach so that we can have a chance to see the types of documents that the NHL is marking as Highly Confidential and can then better determine whether such designations present a problem for us in our analysis of such documents and whether we have to involve the Court in this question. This approach was suggested by Shep and we think it is very reasonable.").

The NHL made its first document production containing Highly Confidential documents last week. In designating documents, the NHL limited its use of the Highly Confidential designation to documents relating to individual NHL Clubs, including communications between the League Office and an individual Club or Clubs, where there appears to have been a reasonable expectation of confidentiality or privacy. Since the NHL made its production, MSG's counsel has not raised an issue with respect to the confidentiality designation of a single document. Nor has MSG's counsel sought to revisit the appropriate use of the Highly Confidential tier, or whether they should be allowed to show such documents to internal MSG business executives. As a result, the NHL respectfully submits that this issue is not ripe for the Court's consideration.

We also dispute whether MSG has made a showing that it actually needs the input of internal MSG business executives as to any documents the NHL has designated as Highly Confidential. MSG has not identified a single document designated as Highly Confidential that it purportedly needs to show to an internal business executive. MSG has also failed to explain why its in-house counsel – who has been with MSG for several years and has extensive experience in dealing with League matters as well as MSG's business – cannot provide the informed assistance that MSG's outside counsel purportedly needs. As a result, MSG's argument is entirely speculative. Of course, if there are specific Highly Confidential documents that MSG would like to show to its business people, MSG can seek permission from the NHL and, if necessary, seek appropriate relief from the Court. But the blanket order MSG is seeking that would allow it to show all Highly Confidential documents to its internal business executives is neither necessary nor appropriate. (We also find it telling that MSG raised the issue of allowing its business executives access to Highly Confidential documents in the same letter that it seeks discovery of financial information relating to other NHL Member Clubs.)

4

Thank you for your consideration. While we believe that many of these issues are not ripe for your consideration, we are, of course, ready to discuss any of these issues at the Court's convenience.

Respectfully submitted,

Shepard Goldfein

cc: Robert W. Gaffey, Esq. (counsel for plaintiff, via e-mail)

5