Exhibit 21

## CONSENT AGREEMENT

THIS CONSENT AGREEMENT is made this 5<u>th</u> day of December, 2002, by and among the following parties:

       (i)    NATIONAL HOCKEY LEAGUE, a joint venture organized as an unincorporated association not-for-profit (the "NHL");

       (ii)    MADISON SQUARE GARDEN, L.P., a Delaware limited partnership ("MSG"), and its general partner, MSG EDEN CORPORATION, a Delaware corporation ("Eden");

       (iii)    CABLEVISION SYSTEMS CORPORATION, a Delaware corporation ("Cablevision"), and its direct wholly-owned subsidiary, CSC HOLDINGS, INC., a Delaware corporation ("CSC Holdings"), RAINBOW MEDIA HOLDINGS, INC., a Delaware corporation ("RMH"), RAINBOW MEDIA GROUP, LLC, a Delaware limited liability company, RRH I, L.L.C., a Delaware limited liability company, RRH II, L.L.C., a Delaware limited liability company, RAINBOW REGIONAL HOLDINGS, L.L.C., a Delaware limited liability company, REGIONAL PROGRAMMING PARTNERS, a New York general partnership, RAINBOW GARDEN CORP., a Delaware corporation, REGIONAL MSG HOLDINGS, L.L.C., a Delaware limited liability company (the parties listed in clause (iii) being referred to collectively as the "Rainbow Parties"); and

       (iv)    NATIONAL BROADCASTING COMPANY HOLDING, INC., a Delaware corporation ("NBCH"), NBCH's direct wholly-owned subsidiary, NATIONAL BROADCASTING COMPANY, INC., a Delaware corporation ("NBC"), NBC's direct wholly-owned subsidiary, NBC CABLE HOLDING, INC., a Delaware corporation ("NBCCH"), and NBCCH's direct wholly-owned subsidiary, NBC-RAINBOW HOLDING, INC., a Delaware corporation ("NBC-Rainbow," and collectively with NBCH, NBCCH, and NBC, the "NBC Parties").

Each of the parties listed above, other than the NHL, is sometimes referred to in this Consent Agreement individually as a "Transaction Party" and collectively with the parties other than the NHL as the "Transaction Parties."

### Background

       (a)    In connection with the transfer by Cablevision of all of its indirect interest in Bravo Company ("Bravo"), NBC Rainbow proposes to exchange: (i) 21,816,227 shares of Cablevision Class A common stock (the "Cablevision Shares"), which constitute approximately 7.2% of the outstanding equity of Cablevision and 100% of the shares of Cablevision owned directly or indirectly by NBC, for all of the issued and outstanding shares of Class A Common Stock, $0.01 par value per share, of Bravo Holding Corporation ("BHC"), and (ii) 1562.25 shares of RMH Class A common stock (the "Rainbow Shares"), which constitute approximately 17.2% of the outstanding equity of RMH and 100% of the shares of RMH owned directly or indirectly by NBC, for all of the issued and outstanding shares of Class B Common Stock, $0.01 par value per share, of BHC (collectively, the

-2-

"Proposed Transaction"). Combined, the Cablevision Shares and the Rainbow Shares represent an aggregate equity interest in MSG (which owns all of the assets comprising the New York Rangers Hockey Club (the "Rangers")) of approximately 13.9% and an aggregate voting interest in MSG (and the Rangers) of approximately 4.8%.

      (b)     The Proposed Transaction requires the approval of the NHL.

      (c)     The Transaction Parties have furnished to the NHL true, complete and correct copies of all material documents relating to the Proposed Transaction, a complete list of which is provided on Schedule 5(i) (the "Transaction Documents").

      (d)     The NHL has approved the Proposed Transaction, subject to the terms and conditions of this Consent Agreement.

      NOW, THEREFORE, in consideration of the foregoing premises and the representations, warranties, covenants and agreements set forth herein, and subject to the following terms and conditions, it is agreed as follows:

      1.     <u>NHL Consent</u>. Subject to the terms and conditions set forth in this Consent Agreement, the NHL hereby consents to the Proposed Transaction. The consent granted herein is limited to the Proposed Transaction as described in paragraph (a) of the Background section and does not extend to any other transfer, sale, foreclosure, liquidation, wind-up, dissolution, mortgage, hypothecation, pledge or other impairment or encumbrance of any assets of, or direct or indirect ownership interests in, MSG (including, but not limited to, the Cablevision Shares and the Rainbow Shares), whether or not the same may be contemplated by the Transaction Documents, and specifically does not extend to any public offering of interests in, or spin-off or reorganization of, MSG or RMH.

      2.     <u>Performance of Agreements, etc.</u>

      (a)     Subject to the terms of this Consent Agreement, each Transaction Party agrees to perform in all material respects all of the terms and conditions required of it under the Transaction Documents to which it is a party, true and complete copies of which have been delivered to the NHL.

      (b)     Pursuant to Article 3.5 of the NHL Constitution, each Transaction Party (except the NBC Parties) agrees and represents to the NHL that the transactions contemplated by the Transaction Documents shall not materially adversely affect the NHL franchise known as the New York Rangers (the "Franchise") or the operations or financial condition of the Rangers and shall not in any way impair or adversely affect any debts, liabilities or obligations of the Rangers or MSG to any other person, including, without limitation, to the NHL, its Member Clubs or any related or affiliated entity of the NHL or of any of its Member Clubs, including, without limitation, player contracts or deferred compensation to players and other personnel.

4297/54115-109 NYLIB2/957498 v3

-3-

3.     <u>Post Transaction Capital Structure and Other Conditions</u>.  The NHL's consent granted in Paragraph 1 hereof is subject to (a) consummation of the Proposed Transaction in all material respects in accordance with the Transaction Documents, (b) the ownership structure of the Transaction Parties upon consummation of the Proposed Transaction conforming to Schedule 5(k), and (c) upon consummation of the Proposed Transaction, none of the NBC Parties nor any of their affiliates owning a direct or indirect interest in MSG or the Franchise.  Except as permitted under (x) the Prior Consent Agreements (as defined in Paragraph 6), (y) the agreement with the NHL dated June 17, 1997 with respect to the facilities provided pursuant to the Credit Agreement dated as of June 6, 1997 among MSG, The Chase Manhattan Bank, as agent, and the lending institutions that are parties thereto (the "Lender Letter Agreement"), and (z) the agreement with the NHL dated March 10, 1995 with respect to facilities provided to RMH by Toronto-Dominion (Texas) Inc., as administrative agent and as co-agent, and Canadian Imperial Bank of Commerce, as co-agent (the "Toronto-Dominion Pledge Letter"), none of the Transaction Parties has pledged the Franchise, its direct or indirect interest therein or any other hockey-related assets to secure any debt obligation, nor shall any of them grant such a pledge without the NHL's prior written consent.

4.     <u>Ownership, Control, Change in Documents</u>.

(a)     Each Transaction Party acknowledges and agrees that:

(i)     The ownership of the Franchise, any proposed transfer of the location of the Franchise and any proposed sale, pledge or other transfer of the assets comprising the Rangers, or any direct or indirect ownership interest in MSG (including, but not limited to, any of the Cablevision Shares or Rainbow Shares), are subject to the NHL Constitution and Agreements, this Consent Agreement and, as applicable, the Prior Consent Agreements, the Lender Letter Agreement and the Toronto-Dominion Pledge Letter.  Without limiting the foregoing, any sale, pledge, or other transfer of the assets comprising the Rangers or a direct or indirect ownership interest in any of the Transaction Parties (including, but not limited to, any of the Cablevision Shares or Rainbow Shares) shall be subject to and conditioned upon approval of the NHL pursuant to Article 3.5 of the NHL Constitution, unless otherwise provided in the NHL Constitution and Agreements (i.e., except for sales, pledges and other transfers that would result from a transaction involving the stock of any Public Owner that represents a direct or indirect interest, whether equity or otherwise, of less than five percent (5%) of the Rangers) or the Prior Consent Agreements.

(ii)     No Transaction Document shall be rescinded, canceled, terminated or amended in any respect which may or will change the terms of the Proposed Transaction, materially affect the conditions, obligations or duties set forth in this Consent Agreement or under the NHL Constitution and Agreements, or adversely affect the interests of the NHL, without the prior written approval of the NHL.  The NHL shall be promptly notified in writing, pursuant to Paragraph 8(c) hereof, of any proposed change, whether or not the NHL has consent rights with respect to the change.

4297/54115-109  NYLIB2/957498 v3

-4-

(b)    The Transaction Parties acknowledge and agree that any transfer of a direct ownership interest in Cablevision (including, but not limited to, the Cablevision Shares) is subject to compliance with the NHL Constitution and Agreements and that to the extent required by the NHL Constitution and Agreements they shall use reasonable efforts to obtain the NHL's prior approval of such transactions whenever practicable, subject to the Prior Consent Agreements.

5.    <u>Representations and Warranties</u>. Each Transaction Party hereby severally represents and warrants as of the date hereof to the NHL as follows:

(a)    If it is a corporation, it is a corporation duly organized, validly existing and in good standing under the laws of the state of its formation, and has the power and authority to own, operate and lease its properties and to carry on its business. If it is a limited partnership or limited liability company, it is a limited partnership or limited liability company validly existing and in good standing under the laws of the state of its formation, and has the power and authority to own, operate and lease its properties and to carry on its business.

(b)    Such Transaction Party has the power and authority to execute and deliver this Consent Agreement and to perform its obligations hereunder.

(c)    The execution, delivery and performance of this Consent Agreement constitutes a valid and binding obligation of such Transaction Party enforceable against it in accordance with its terms.

(d)    Except for any liens, security interests, pledges, charges, encumbrances or claims of liability to which the Lender Letter Agreement and the Toronto- Dominion Pledge Letter apply, and except as set forth on Schedule 5(d) hereto, the ownership interests in such Transaction Party described on Schedule 5(k) hereto are validly issued and fully paid and are held free and clear of any liens, security interests, pledges, charges, encumbrances or claims of liability. Except as otherwise permitted hereunder or in the Prior Consent Agreements, such Transaction Party presently has no intention of selling directly any part of its interest in the Rangers, or any of the assets of the Rangers. Except (i) as provided in the Prior Consent Agreements, and (ii) for options to purchase shares of capital stock of any Public Owner that represents a direct or indirect interest, whether equity or otherwise, of less than five percent (5%) of the Rangers, there are no options, warrants, put or call rights or any other rights of acquisition or conversion that would entitle any person or entity to acquire any of its direct or indirect interest, whether equity or otherwise, in the Rangers. Cablevision and RMH each represents and warrants to the NHL that such Transaction Party is not a party to, or presently negotiating, any agreement to transfer any of the Cablevision Shares or the Rainbow Shares, respectively, to any other party. The ownership structure of such Transaction Party conforms to the description set forth on Schedule 5(k) hereto.

(e)    [Intentionally Omitted.]

-5-

(f)     There is no action, suit, or proceeding pending against the Rangers or such Transaction Party which involves the likelihood of any adverse judgment or liability not fully covered by insurance or with respect to which adequate reserves have not been established in accordance with GAAP and which is reasonably likely to result in a material adverse change in the business, properties or assets or in the condition, financial or otherwise (a "Material Adverse Change"), of such Transaction Party or which may prevent or impede the consummation of the transactions contemplated by this Consent Agreement. There is no order, writ, injunction or decree that has been issued by, or, to the knowledge of such Transaction Party, requested by, any court or governmental agency which has resulted or is reasonably likely to result in a Material Adverse Change with respect to such Transaction Party or which may prevent or impede the consummation of this Consent Agreement.

(g)     To the best of the knowledge and belief of MSG and Eden, and except as provided in the Prior Consent Agreements, MSG and Eden each has complied in all material respects with all laws, regulations and orders, federal or otherwise, except where the failure to be in compliance (individually or collectively) would not be likely to result in a Material Adverse Change with respect to MSG or Eden or have a material adverse effect on the ability of MSG or Eden to conduct its business as currently conducted.

(h)     All material consents, waivers, approvals, orders and authorizations of any persons or entities or governmental or regulatory authorities (or registrations, declarations, filings or recordings with any such authorities) that are required in connection with the Proposed Transaction have been obtained or made and are in full force and effect.

(i)     Such Transaction Party has performed in all material respects all obligations required to be performed by such Transaction Party to date with respect to the Proposed Transaction and, except as disclosed in any schedules hereto, such Transaction Party is not in default under any material contract, agreement, lease, or other instrument relating to the Proposed Transaction to which such Transaction Party is a party or by which such Transaction Party is bound. Schedule 5(i) contains a complete list of all Transaction Documents, true and correct copies of which have heretofore been delivered or made available to the NHL or will be made available upon request and will be signed by an officer of Eden for identification upon request of the NHL. The Transaction Documents constitute all of the material documents relating to the Proposed Transaction.

(j)     The execution and delivery of this Consent Agreement, and compliance with the terms hereof by such Transaction Party, will not conflict with, or result in the breach of, any of the terms, conditions or provisions of, or constitute a default under, or result in the creation of any lien, charge or encumbrance upon any of such Transaction Party's properties or assets (except as contemplated or disclosed herein or the Schedules hereto) pursuant to any indenture, mortgage, lease, agreement or other instrument to which such Transaction Party is a party or by which such Transaction Party is bound, except for conflicts, breaches, terminations or defaults that individually or collectively

-6-

would not be reasonably likely to result in a Material Adverse Change with respect to such Transaction Party.

(k)     Schedule 5(k) contains a true and complete list, after giving effect to the Proposed Transaction, of each person or entity (other than shareholders of Cablevision, News Corp., Fox Entertainment Group, Inc., and AT&T Comcast Corporation) that directly or indirectly owns an interest in MSG or the Rangers, and the direct or indirect percentage interest of such person or entity in MSG or the Rangers and each intermediate entity (it being understood and agreed that with respect to direct and indirect subsidiaries of News Corp., such list is based on the best knowledge of MSG, Eden and the Rainbow Parties).

(l)     Schedule 5(l) contains a true and complete list of each person or entity that, to the best knowledge of the Transaction Parties, and as of the date or dates indicated after giving effect to the Proposed Transaction, directly or indirectly owns of record or beneficially five percent (5%) or more of the outstanding shares or voting power of Cablevision, and the percentage interest of such person or entity in Cablevision. None of the NBC Parties nor any of their affiliates owns any direct or indirect interest in MSG or the Rangers, other than holdings of less than five percent (5%) of the outstanding shares of Cablevision.

6.     Confirmation of Agreements. The Transaction Parties and the NHL confirm that the Consent Agreement dated as of June 17, 1997 (the "1997 Agreement"), the Consent Agreement dated as of March 29, 2001 (the "2001 Agreement") and any other Consent Agreements at any time executed by any of the Transaction Parties with the NHL (collectively, including the 1997 Agreement and the 2001 Agreement, the "Prior Consent Agreements"), have not been amended or modified by this Consent Agreement and remain in full force and effect. Nothing in this Consent Agreement shall be construed to amend or modify the Lender Letter Agreement or the Toronto-Dominion Pledge Letter, or any agreements in favor of the NHL given by Charles F. Dolan, James Dolan or trusts for the benefit of members of their families, including the agreement of Charles F. Dolan dated June 17, 1997 and the agreement of such trusts dated March 10, 1995. Each of the Rainbow Parties that is not a party to each of the Prior Consent Agreements executed by RMH agrees to be bound by all of the terms and provisions of each of those agreements applicable to RMH.

7.     Release and Limitation of Liability.

(a)     As partial consideration for the NHL providing the consents contained herein, each of the Transaction Parties, on their own behalf and on behalf of their successors and assigns (and, in the case of the NBC Parties, on behalf of General Electric Company ("GE") and each of its controlled affiliates and controlled subsidiaries (collectively, the "GE Entities")), but not on behalf of any other affiliate or subsidiary or in its capacity as a partner, shareholder or agent of any such affiliate or subsidiary, hereby forever releases and discharges the NHL, NHL Enterprises, L.P., NHL Enterprises Canada, L.P., NHL Enterprises, Inc., National Hockey League Enterprises Canada, Inc. (collectively, but excluding the NHL, "NHL Enterprises"), all of the NHL's Member Clubs (except the Rangers, but

-7-

including all future member clubs of the NHL) and each of their respective predecessors, affiliates, successors and assigns and each of their respective past, present or future, direct or indirect, owners, directors, officers, agents, trustees, partners, members, managers, shareholders, governors and employees in their respective capacities as such (collectively, "Affiliated NHL Parties") from any and all claims, demands, causes of action, and liabilities of any kind whatsoever (upon any legal or equitable theory, whether contractual, common-law, statutory, decisional, Canadian, United States, state, provincial, local or otherwise) (collectively, "Claims"), which, to the best knowledge of such Transaction Party and MSG, exist as of the date of execution of this Consent Agreement by reason of any act, omission, transaction or occurrence taken or occurring at any time up to and including the date of the execution of this Consent Agreement, relating to, or arising from, any hockey operations or any NHL activity, including without limitation, the performance, presentation or exploitation of any hockey game or hockey exhibition or in respect of the Proposed Transaction; provided that nothing in this Paragraph 7(a) shall be construed or interpreted as a release and discharge by any of the Transaction Parties or of the GE Entities of (i) any Claims relating to the matters described on Schedule 7(a), or (ii) any amounts due to any of the Transaction Parties (or of the GE Entities) from any Affiliated NHL Parties in the ordinary course, or any amounts due or claims under agreements executed prior to the date hereof (including, but not limited to, in respect of player transactions); provided, however, that in the case of the release by the NBC Parties on behalf of the GE Entities (but not on behalf of themselves), the release also shall not apply to claims in the ordinary course.  To the extent any Affiliated NHL Party asserts a claim against any Transaction Party (or any of the GE Entities), the release contained in this Paragraph 7(a) shall not prohibit such Transaction Party (or such GE Entity) from asserting a defense or counterclaim to that claim.

        (b)     The Transaction Parties hereby agree, based upon facts known to, or facts that reasonably should have been known to, the Transaction Parties on the date hereof, not to initiate a judicial or other proceeding against the NHL challenging any provision of the NHL Constitution and Agreements as in effect and interpreted on the date hereof as they may apply to acts or omissions up to and including the date hereof.

        (c)     Without limiting any other rights the NHL may have, and without limiting any party's affirmative obligation to pay the amounts referenced in this Consent Agreement, the Transaction Parties (other than the NBC Parties) hereby jointly and severally agree to indemnify and hold harmless the Affiliated NHL Parties from and against any and all losses, obligations, claims, liabilities, fines, penalties, damages, costs and expenses (including without limitation, reasonable costs of investigation and settlement and attorneys' fees, including in actions with Affiliated NHL Parties) incurred or required to be paid by an Affiliated NHL Party (collectively, "Losses") arising out of, attributable to or relating to legal actions against any Affiliated NHL Party (other than any action by any Transaction Party against any Affiliated NHL Party) with respect to (i) any liability or obligation of the Transaction Parties (other than the NBC Parties) under this Consent Agreement, and (ii) any wrongful act or omission of the Transaction Parties (other than the NBC Parties), or any liability or obligation to the Affiliated NHL Parties of MSG (or any of its direct or indirect owners, partners, shareholders, directors, officers, employees, representatives or agents in their respective capacities as such); provided

-8-

that no Affiliated NHL Party other than the NHL or NHL Enterprises shall be entitled to indemnification under clause (ii) unless the Commissioner determines that such indemnification is reasonable and appropriate. The NHL agrees that it will give the indemnifying parties under this Paragraph 7(c) notice of any claim as to which it reasonably expects to seek indemnification under this Paragraph 7(c), and that those indemnifying parties will be consulted on a reasonable basis concerning the defense, settlement, or other response to any claim for which indemnification is sought. The indemnifying parties under this Paragraph 7(c) agree that they shall have no right to control the defense or other response to such a claim and that they will fully cooperate with the NHL, its designated counsel and other representatives. No claim against either an individual Member Club or which is based primarily on an act or omission of the Rangers for which indemnification is sought under this Paragraph 7(c) will be settled without the consent of the indemnifying parties, such consent not to be unreasonably withheld.

(d)     Without limiting any other rights the NHL may have, and without limiting any party's affirmative obligation to pay the amounts referenced in this Consent Agreement:

(i)     the Transaction Parties jointly and severally agree to indemnify and hold harmless the Affiliated NHL Parties from and against any and all Losses arising out of, attributable to or relating to the Proposed Transaction and any transactions or occurrences related to the Proposed Transaction; and

(ii)     subject to the provisions of this Consent Agreement, the NBC Parties jointly and severally agree to indemnify and hold harmless the Affiliated NHL Parties from and against any and all Losses arising out of, attributable to or relating to (A) any liability or obligation to the Affiliated NHL Parties (including, without limitation, all obligations set forth in this Consent Agreement), (B) any wrongful act or omission, of any of the NBC Parties, or any of their respective subsidiaries or controlled affiliates, and any of their respective direct shareholders, officers, directors, employees, agents and representatives, in their respective capacities as such, provided that no Affiliated NHL Party other than the NHL or NHL Enterprises shall be entitled to indemnification under clause (B) unless the Commissioner determines that such indemnification is reasonable and appropriate, or (C) any claims brought by any of the GE Entities in violation of the releases contained in Paragraph 7(a).

(e)     Nothing contained in this Consent Agreement shall be, or be construed or deemed to be, a subordination by the NHL of the NHL's rights (i) to receive payments on account of indebtedness or liabilities now or hereafter owing to it by the Rangers or any other entity or (ii) to defer or off-set any distribution to the Rangers. Nothing in this Consent Agreement shall be construed in any respect as a guaranty or indemnity by the NHL, or any of its Member Clubs, of any debts, liabilities or obligations whatsoever of the Rangers, any Transaction Party or any other party.

(f)     Notwithstanding anything to the contrary contained in this Paragraph 7, no Member Club shall be entitled to indemnification pursuant to clause (ii) of Paragraph 7(c) unless the Commissioner determines that it would be reasonable and appropriate for the Member Club to be indemnified under the circumstances.

4297/54115-109 NYLIB2/957498 v3

-9-

(g)    Any NHL Affiliated Party claiming a right of indemnity hereunder shall give the indemnifying party prompt notice of the claim, action, suit, proceeding or circumstance giving rise to the potential Losses and shall afford the indemnifying party the opportunity to participate in the defense of such claim, action, suit or proceeding; provided, however, that the failure of any NHL Affiliated Party to give such prompt notice shall not affect its right to receive indemnification under the Consent Agreement except to the extent that indemnifying party is materially and adversely affected by the failure.

8.    Additional Provisions.

(a)    The Transaction Parties agree, in accordance with the third paragraph of Article 3.5 of the NHL Constitution, that all legal fees and costs incurred by the NHL with respect to the transactions contemplated by this Consent Agreement shall be charged to the Franchise and shall be the obligation thereof.

(b)    This Consent Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, including but not limited to, any corporation or other business entity into which any party shall be merged, consolidated or amalgamated or to which substantially all of the assets of a party shall be transferred.  This Consent Agreement may not be assigned except as set forth herein or with the written consent of the NHL.  The parties herein agree that the NHL Constitution and Agreements shall be applicable to each Transaction Party and to each Transaction Party's affiliates and subsidiaries, as appropriate, and, in the case of the NBC Parties, subject to the Prior Consent Agreements.  Any dispute between the parties hereunder relating to the subject matter hereof (but, with respect to the NBC Parties, excluding any future television rights agreement) which is subject to Section 6.3 of the NHL Constitution shall be resolved in accordance with Section 6.3 of the NHL Constitution and the Commissioner shall have full and exclusive jurisdiction and authority to arbitrate and resolve such dispute unless the NHL shall have waived the application of Section 6.3 of the NHL Constitution to any future agreement or relationship in a writing that refers to that provision.  Notwithstanding anything to the contrary contained in any Transaction Document, MSG shall have the right (i) to amend, modify, rescind or restate all governing, constitutive, operating and other agreements or documents relating to the NHL or NHL Enterprises and any of their subsidiaries or affiliates, whether now existing or formed in the future, and to liquidate, dissolve or merge any of those entities, (ii) to vote in favor of any of the actions set forth in clause (i), and (iii) to invest or acquire an interest in any entity in which NHL Member Clubs generally are investing or acquiring interests.

(c)    All notices, consents, requests, instruments, approvals and other communications provided for herein shall be validly given, made or served effective on the date of dispatch thereof, if in writing and delivered personally or sent by registered or certified mail, postage prepaid, return receipt requested, or by overnight courier service, as follows:

-10-

| If to the NHL: | National Hockey League<br>1251 Avenue of the Americas<br>New York, New York  10020-1198<br>Attention:  General Counsel |
| --- | --- |
| with a copy to: | Proskauer Rose LLP<br>1585 Broadway<br>New York, New York 10036<br>Attention:  Wayne D. Katz, Esq. |
| If to MSG or Eden: | Madison Square Garden<br>Two Penn Plaza, 14th Floor<br>New York, New York 10121<br>Attention:  General Counsel |
| If to any of the Rainbow<br>Parties (other than Cablevision<br>or CSC Holdings): | c/o Rainbow Media Group<br>200 Jericho Quadrangle<br>Jericho, New York 11753<br>Attention:  General Counsel |
| If to Cablevision or<br>CSC Holdings: | c/o Cablevision Systems Corporation<br>1111 Stewart Avenue<br>Bethpage, New York 11714<br>Attention:  General Counsel |
| If to any of the NBC Parties: | c/o National Broadcasting Company, Inc.<br>30 Rockefeller Plaza<br>New York, New York 10112<br>Attention:  Vice President, Corporate and<br>Transactions Law |

or to such other persons or to such other addresses as the parties hereto shall designate from time to time by like notice.

        (d)      This Consent Agreement and the exhibits and schedules annexed hereto and made a part hereof contain the entire agreement among the parties hereto with respect to the Proposed Transaction and, subject to Paragraph 6, supersede all prior agreements or understandings among the parties hereto relating to the subject matter hereof.  This Consent Agreement shall not be modified, supplemented, or terminated orally, and shall be governed by the laws of the State of New York, without reference to the conflicts of law provisions thereof.  It is acknowledged and agreed that the NHL will suffer immediate and irreparable harm in the event of a breach of this agreement by any

-11-

other party hereto of any of its or his obligations hereunder and will not have an adequate remedy at law, and therefore, the NHL shall in addition to any other remedy available to it at law or in equity, except as otherwise provided herein, be entitled to temporary, preliminary and permanent injunctive relief and a decree for specific performance in the event of a breach or threatened or attempted breach, without the necessity of showing any actual damage or irreparable harm or the posting of any bond or furnishing of any other security. The Transaction Parties also acknowledge and agree that to the extent permitted by the NHL Constitution and Agreements and this Consent Agreement, certain actions of only one or more of the Transaction Parties or their respective affiliates or subsidiaries may result in the exercise of rights and remedies against MSG or the Franchise, including, but not limited to, the involuntary termination of the Franchise. This agreement shall be interpreted neutrally and without regard to the party that drafted it and, in particular, no rule or construction shall be applied as against any party hereto that would result in the resolution of an ambiguity contained herein against the drafting party solely by reason of such party being the drafting party.

(e)     This Consent Agreement may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute one and the same instrument.

(f)     No failure on the part of any party to exercise, and no delay of exercising, any right, power or remedy shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof or of any other right, power or remedy.

(g)     Except as expressly provided in this Consent Agreement, the representations, covenants and agreements contained in this Consent Agreement shall be construed as several covenants between, as applicable, each of the parties hereto other than the NHL, on the one hand, and the NHL, on the other hand, and not as covenants between any of such parties other than the NHL. Accordingly, except as expressly provided in this Consent Agreement, any of such representations, covenants and agreements, and any of the transactions referred to in such representations, covenants and agreements, may be waived, amended, consented to or otherwise approved by the NHL, on the one hand, and the particular party other than the NHL to which such representations, covenants, agreements or transactions apply, on the other hand, without the consent or approval of any other party. By way of illustration and not limitation, changes in any party's direct or indirect ownership of the Rangers or in the ownership of any party may, for all purposes of this Consent Agreement, be consented to by such party and the NHL without the consent of any other party.

(h)     The parties hereto acknowledge and agree that the failure by any of the Transaction Parties to comply in a material respect with any of the provisions of this Consent Agreement shall constitute a material breach of this Consent Agreement which entitles the NHL to take action permitted by the NHL Constitution and/or this Consent Agreement (subject to the terms of this Consent Agreement). Said action includes, in addition to any and all other rights to which the NHL shall be entitled to under this Consent Agreement or otherwise, the right of the NHL to commence termination

-12-

proceedings under Article III of the NHL Constitution and, except as provided in the Prior Consent Agreements, such other remedies as may be provided by law or in equity for the breach of a material obligation; provided that, if in the judgment of the NHL, which shall not be exercised in an arbitrary or capricious way, a breach that occurs is one which may be cured by a Transaction Party, the NHL shall not commence termination proceedings under Article III of the NHL Constitution, or permit any such termination proceedings commenced by any other person to be concluded, unless it shall have first given to such Transaction Party notice of and such opportunity to cure the default as the NHL deems appropriate under the circumstances in its judgment, which shall not be exercised in an arbitrary or capricious manner. No party hereto shall attempt to prevent the NHL's exercise of such rights on the basis that the NHL cannot exercise dominion or control over its allocable share of the rights or assets that are the subject of the NHL's actions because it was not the breaching party.

(i)    All of the parties to this Consent Agreement acknowledge and agree that the NHL has reviewed the Transaction Documents that have been supplied to it for certain limited purposes only and that the NHL is not charged with knowledge of, or deemed to have any independent obligations under, any of the Transaction Documents. For greater certainty and clarity, notwithstanding anything contained in any Transaction Document, whether to the contrary or otherwise, in the event of any conflict or ambiguity between any term or provision contained in this Consent Agreement and any Transaction Document, the terms of this Consent Agreement shall control.

(j)    The headings in the paragraphs of this Consent Agreement are inserted for convenience of reference only and shall not constitute a part thereof.

-13-

        IN WITNESS WHEREOF, this Consent Agreement has been executed as of the date first written above.

NATIONAL HOCKEY LEAGUE


By: _David Z_____
    David Zimmerman
    Senior Vice President, General Counsel


                MADISON SQUARE GARDEN, L.P.

                By:  MSG Eden Corporation,
                    its General Partner


                By:_____


                MSG EDEN CORPORATION


                By:_____


                <u>RAINBOW PARTIES</u>

                CABLEVISION SYSTEMS CORPORATION


                By:_____
                    Name:
                    Title:

212-465-6466  LEGAL/NETWORK                    523 P02    DEC 04 '02  14:08

-13-

        IN WITNESS WHEREOF, this Consent Agreement has been executed as of the date
first written above.


NATIONAL HOCKEY LEAGUE



By:_____
      David Zimmerman
      Senior Vice President, General Counsel



                              MADISON SQUARE GARDEN, L.P.

                              By:  MSG Eden Corporation,
                                   its General Partner

                              By:_____


                              MSG EDEN CORPORATION

                              By:_____



                              RAINBOW PARTIES

                              CABLEVISION SYSTEMS CORPORATION

                              By:_____
                                   Name:
                                   Title:



4297/54115-109 NYLIB2/957498 v3

-14-

CSC HOLDINGS, INC.

By:_____
   Name:
   Title:


RAINBOW MEDIA HOLDINGS, INC.

By:_____
   Name:
   Title:


RRH I, L.L.C.

By:_____
   Name:
   Title:


RRH II, L.L.C.

By:_____
   Name:
   Title:


RAINBOW MEDIA GROUP, LLC

By:_____
   Name:
   Title:

4297/54115-109 NYLIB2/957488 v3

212-465-6466  LEGAL/NETWORK                  523 P04   DEC 04 '02  14:08

-14-

CSC HOLDINGS, INC.

By:_____
      Name:
      Title:

RAINBOW MEDIA HOLDINGS, INC.

By:_____
      Name:
      Title:

RRH I, L.L.C.

By:_____
      Name:
      Title:

RRH II, L.L.C.

By:_____
      Name:
      Title:

RAINBOW MEDIA GROUP, LLC

By:_____
      Name:
      Title:

4297/54115-109 NYLIB2/957498 v3

-15-

RAINBOW REGIONAL HOLDINGS, L.L.C.

By:_____
    Name:
    Title:

REGIONAL PROGRAMMING PARTNERS

By:

By:_____

RAINBOW GARDEN CORP.

By:_____
    Name:
    Title:

REGIONAL MSG HOLDINGS, L.L.C.

By:_____
    Name:
    Title:

NBC PARTIES

NATIONAL BROADCASTING COMPANY
       HOLDING, INC.

By:_____
    Name:
    Title:

-15-

RAINBOW REGIONAL HOLDINGS, L.L.C.

By:_____
        Name:
        Title:


REGIONAL PROGRAMMING PARTNERS

By:


By:_____


RAINBOW GARDEN CORP.


By:_____
        Name:
        Title:


REGIONAL MSG HOLDINGS, L.L.C.

By:_____
        Name:
        Title:


<u>NBC PARTIES</u>

NATIONAL BROADCASTING COMPANY
        HOLDING, INC.

By:_____
        Name:
        Title:

4297/54115-109 NYLIB2/957498 v3

-16-

NATIONAL BROADCASTING COMPANY, INC.

By: _____
    Name:
    Title:


NBC CABLE HOLDING, INC.

By: _____
    Name:
    Title:


NBC-RAINBOW HOLDING, INC.

By: _____
    Name:
    Title:

<u>SCHEDULES</u>

The schedules attached hereto are furnished (and have been accepted) subject to the express understanding that no consent has been given to any transaction or right described herein, except as expressly set forth in the consent agreement to which they are appended.

| | |
|---|---|
| Schedule 5(d) | Permitted Liens |
| Schedule 5(i) | Transaction Documents |
| Schedule 5(k) | Ownership of Rangers |
| Schedule 5(l) | 5% Owners of Cablevision |
| Schedule 7(a) | Unreleased Claims |

NHL Consent Agreement
Schedule 5(d)

**Permitted Liens**

(in addition to those authorized under the Lender Letter Agreement and Toronto-Dominion Pledge Letter)

None.

NHL Consent Agreement
Schedule 5(i)

## Transaction Documents

1.  Agreement and Plan of Merger and Exchange among Cablevision Systems
    Corporation ("CSC"), Bravo Holding Corporation ("BHC"), Bravo II Holding
    Corporation ("B2HC"), Rainbow Media Group, LLC ("RMG"), National
    Broadcasting Company, Inc. ("NBC"), NBC-Rainbow Holding, Inc. ("NBC-R"), and
    Applause Acquisition Corporation ("Applause"), dated as of November 4, 2002.

2.  Assignment and Assumption of Lease between Sterling Digital LLC and NBC, dated
    as of the Closing Date.

3.  Registration Rights Agreement between CSC and General Electric Company, dated
    as of the Closing Date.

4.  Film Exhibition Agreement among Bravo Company ("Bravo"), Rainbow Media
    Holdings, Inc. ("RMHI") and various RMHI programming services, dated as of the
    Closing Date.

5.  Transition Services Agreement between Bravo and CSC, dated as of the Closing
    Date.

6.  Letter Agreement between Rainbow Network Communications and Bravo, dated as
    of the Closing Date.

7.  Assignment and Assumption Agreement between Rainbow Network
    Communications and Bravo Company, dated as of the Closing Date.

8.  Tax Matters Agreement among CSC, RMHI, CSC Holdings, Inc., RMG, NBC-R,
    NBC, BHC, B2HC and Applause, dated as of November 4, 2002.

9.  Agreement among CSC, RMHI, American Movie Classics Holding Corporation,
    BHC, B2HC, Metro-Goldwyn-Mayer Inc. ("MGM") and MGM Networks U.S. Inc.
    ("MGM Holdings"), dated as of November 4, 2002.

10. Purchase Agreement among NBC-R, NBC, MGM and MGM Holdings, dated as of
    November 4, 2002.

NHL Consent Agreement
Schedule 5(k)

## OWNERSHIP OF MADISON SQUARE GARDEN, L.P.

MSG Eden Corporation (g.p.) (0.3%)
    Rainbow Garden Corp. (100%)
        Regional Programming Partners (100%)
            Rainbow Regional Holdings, LLC (60%)
            Fox Sports RPP Holdings, LLC (40%)

Regional MSG Holdings LLC (l.p.) (99.7%)
    Regional Programming Partners (100%)
        Rainbow Regional Holdings, LLC (60%)
        Fox Sports RPP Holdings, LLC (40%)

Rainbow Regional Holdings, LLC
    RRH I, LLC/RRH II, LLC/Rainbow Media Group, LLC[1]
        Rainbow Media Holdings, Inc. (100%)
            CSC Holdings, Inc. (100%)
                Cablevision Systems Corporation (100%)

---

[1] RRH II, LLC owns interests in Rainbow Regional Holdings, LLC that provide RRH II, LLC with an entitlement to receive any and all distributions on, and a liquidation preference with respect to, the businesses and interests of Regional Programming Partners that were included in the prior Rainbow Media Group tracking stock. RRH II, LLC is wholly-owned by Rainbow Media Group, LLC. RRH I, LLC owns interests in Rainbow Regional Holdings, LLC that provide RRH I, LLC with an entitlement to receive any and all distributions on, and a liquidation preference with respect to, the businesses and interests of Regional Programming Partners. that were not included in the prior Rainbow Media Group tracking stock. Both RRH I, LLC and Rainbow Media Group, LLC are wholly-owned by Rainbow Media Holdings, Inc.

## OWNERSHIP OF FOX SPORTS RPP HOLDINGS, LLC

Fox Sports Networks, LLC (99.5%)
Fox Regional Sports Member II, Inc. (0.5%)

Fox Sports Networks, LLC
    Fox Sports Net Financing, LLC (38.32%)
    Fox Regional Sports Holdings, Inc. (30.84%)
    Fox Regional Sports Holdings II, Inc. (30.84%)

    Fox Sports Net Financing, LLC
        Fox Regional Sports Holdings, Inc. (50%)
        Fox Regional Sports Holdings II, Inc. (50%)

    Fox Regional Sports Holdings, Inc.
        Fox Movie Channel, Inc. (100%)

    Fox Regional Sports Holdings II, Inc.
        Fox Entertainment Group, Inc. (100%)

        Fox Movie Channel, Inc.
            Fox Entertainment Group, Inc.(100%)

        Fox Entertainment Group, Inc.
            FEG Holdings, Inc. (80.58% equity, 97% voting)

        FEG Holdings, Inc.
            News America Incorporated (100%)

        News America Incorporated
            News Publishing Australia Limited (approx. 85%)
            News International plc (approx. 15%)

        News Publishing Australia Limited
            The News Corporation Limited (approx. 87.0406%)
            Newscorp Investments Limited (approx. 8.0906%)
            Sky Global Holdings, Inc. (approx. 4.0344%)
            News International plc (approx. 0.6575%)
            News Limited (approx. 0.1715%)

        The News Corporation Limited
            Murdoch Entities[2] (approx. 29% voting, 17% combined equity)

---

[2] Murdoch Entities are: (i) K. Rupert Murdoch, (ii) Cruden Investments Pty. Limited, a private Australian investment company owned by Mr. Murdoch, members of his family and various corporations and trusts, the beneficiaries of which include Mr. Murdoch, members of his family and certain charities, and (iii)

Liberty Media Corporation (approx. 16% non-voting)

News Limited
      The News Corporation Limited (100%)

Sky Global Holdings, Inc.
      News International plc (89.65%)
      News Publishing Australia Limited (10.3%)
      News America Incorporated (.05%)

News International plc
Newscorp Investments Limited (95.84%)
World Printing Company, Inc. (4.16%)

Newscorp Investments Limited
      The News Corporation Limited (100%)

World Printing Company, Inc.
      News America Incorporated (100%)

Fox Regional Sports Member II, Inc.
      Fox Sports Networks, LLC (100%)

---

corporations, which are controlled by trustees of settlements and trusts set up for the benefit of the Murdoch family, certain charities and other persons.

## DIRECT AND INDIRECT OWNERSHIP
## INTERESTS IN MADISON SQUARE GARDEN, L.P.

(after giving effect to Bravo sale transaction) (not including shareholders of Cablevision, Entertainment Group, Inc., or News Corporation)

| | |
|---|---|
| Regional Programming Partners | 100% |
| Regional MSG Holdings LLC | 99.7% |
| MSG Eden Corporation | 0.3% |
| Rainbow Garden Corp. | 0.3% |
| RRH I, LLC/RRH II, LLC/Rainbow Media Group, LLC | 100% [3] |
| Rainbow Regional Holdings, LLC | 60% |
| Rainbow Media Holdings, Inc. | 60% |
| CSC Holdings, Inc. | 60% |
| Cablevision Systems Corporation | 60% |
| Fox Sports RPP Holdings, LLC | 40% |
| Fox Sports Networks, LLC | 40% |
| Fox Regional Sports Member II, Inc. | 0.2% |
| Fox Sports Financing, LLC | 15.33% |
| Fox Regional Sports Holdings, Inc. | 20% |
| Fox Regional Sports Holdings II, Inc. | 20% |
| Fox Movie Channel, Inc. | 20% |
| Fox Entertainment Group, Inc. | 40% |
| FEG Holdings, Inc. | 32.2% |
| News America Incorporated | 32.2% |
| News Publishing Australia Limited | 26.4% |
| News International plc | 6.06% |
| Newscorp Investments Limited | 5.54% |
| The News Corporation Limited | 32.11% |
| News Limited | 0.07% |
| World Printing Company, Inc. | 0.25% |
| | |
| | |
| | |
| | |

---

[3] See Note 1.

NHL Consent Agreement
Schedule 5(l)

**Five Percent Owners of Cablevision Systems Corporation Stock**

(giving effect to Bravo sale transaction) (based on shareholder information known to
Cablevision as of the date indicated)

Charles Dolan
(including affiliates,
family members, and trusts)

Equity interest -- 26%
Overall Voting Power -- 76%

AT&T Comcast Corporation and affiliates (December 31, 2001)

Equity interest -- 14.8%
Overall Voting Power -- 4.7%

Gabelli Funds, Inc. and affiliates (August 27, 2002)

Equity interest -- 10.3%
Overall Voting Power -- 3.3%

Citigroup, Inc. and affiliates (September 10, 2002)

Equity interest -- 10.4%
Overall Voting Power -- 3.3%

Capital Group International, Inc. and affiliates (December 31, 2001)

Equity interest -- 7.2%
Overall Voting Power -- 2.5%

Janus Capital Corporation and affiliates (December 31, 2001)

Equity interest --6.5%
Overall Voting Power -- 2.2%

NHL Consent Agreement
Schedule 7(a)

**<u>Unreleased Claims</u>**

None.