UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
MADISON SQUARE GARDEN, L.P.,   )
                              )
        Plaintiff,   )
                              )
        v.   )   No. 07 CIV. 8455 (LAP)
                              )
NATIONAL HOCKEY LEAGUE, NATIONAL   )
HOCKEY LEAGUE ENTERPRISES, L.P.,   )
NATIONAL HOCKEY LEAGUE INTERACTIVE   )
CYBERENTERPRISES, L.L.C., NHL   )
ENTERPRISES CANADA, L.P., and NHL   )
ENTERPRISES, B.V.,   )
                              )
        Defendants.   )
------------------------------------------------------------------- x

### PLAINTIFF'S LOCAL RULE 56.1 COUNTERSTATEMENT
### OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York, plaintiff Madison Square Garden, L.P. ("MSG") respectfully submits this counterstatement of material facts as to which there is no genuine issue to be tried in response to the Local Rule 56.1 Statement of Undisputed Material Facts submitted by defendants National Hockey League, NHL Enterprises, L.P., NHL Interactive CyberEnterprises, L.L.C., NHL Enterprises Canada, L.P. and NHL Enterprises, B.V. (collectively, "Defendants").

1.    On or about March 10, 1995, the NHL, MSG Holdings, L.P. and other entities executed a Consent Agreement (the "March 1995 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 28 to the Declaration of Shepard Goldfein, dated June 2, 2008 ("Goldfein Declaration").

2.    The relevant and applicable terms of the March 1995 Consent Agreement, including paragraph 3(a)(i) thereto, are contained in that document (Goldfein Decl. Ex. 28),

NYI-4104723v2

which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto.

3. The relevant and applicable terms of the March 1995 Consent Agreement, including paragraph 13 thereto, are contained in that document (Goldfein Decl. Ex. 28), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto.

4. On or about June 17, 1997, the NHL, MSG and other entities executed a Consent Agreement (the "June 1997 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 27 to the Goldfein Declaration. The relevant and applicable terms of the June 1997 Consent Agreement, including paragraphs 3(a)(i), 13(a) and 13(b) thereto, are contained in that document (Goldfein Decl. Ex. 27), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto. Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

5. On or about December 18, 1997, the NHL, MSG and other entities executed a Consent Agreement (the "December 1997 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 26 to the Goldfein Declaration. The relevant and applicable terms of the December 1997 Consent Agreement, including paragraphs 13(a) and 13(b) thereto, are contained in that document (Goldfein Decl. Ex. 26), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto. Whether or not these specific provisions are identical in

NYI-4104723v2

"all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

6. On or about March 4, 1998, the NHL, MSG and other entities executed a Consent Agreement (the "March 1998 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 25 to the Goldfein Declaration. The relevant and applicable terms of the March 1998 Consent Agreement, including paragraphs 13(a) and 13(b) thereto, are contained in that document (Goldfein Decl. Ex. 25), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto. Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

7. On or about May 22, 1998, the NHL, MSG and other entities executed a Consent Agreement (the "May 1998 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 24 to the Goldfein Declaration. The relevant and applicable terms of the May 1998 Consent Agreement, including paragraphs 9(a) and 9(b) thereto, are contained in that document (Goldfein Decl. Ex. 24), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto. Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

8. On or about November 16, 1998, the NHL, MSG and other entities executed a Consent Agreement (the "November 1998 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 23 to the Goldfein Declaration. The relevant and applicable terms of the November 1998 Consent Agreement, including paragraphs 10(a) and 10(b) thereto, are contained in that document (Goldfein Decl. Ex. 23), which should be read and interpreted in

NYI-4104723v2

its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto.  Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

9. On or about July 15, 1999, the NHL, MSG and other entities executed a Consent Agreement (the "July 1999 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 22 to the Goldfein Declaration.  The relevant and applicable terms of the July 1999 Consent Agreement, including paragraphs 3(a)(i), 10(a) and 10(b) thereto, are contained in that document (Goldfein Decl. Ex. 22), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto.  Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

10. On or about December 5, 2002, the NHL, MSG and other entities executed a Consent Agreement (the "December 2002 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 21 to the Goldfein Declaration.  The relevant and applicable terms of the December 2002 Consent Agreement, including paragraphs 7(a) and 7(b) thereto, are contained in that document (Goldfein Decl. Ex. 21), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto.  Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

NYI-4104723v2


11.     On or about April 8, 2005, the NHL, MSG and other entities executed a Consent Agreement (the "April 2005 Consent Agreement"), a copy of which has been submitted to the Court as Exhibit 20 to the Goldfein Declaration. The relevant and applicable terms of the April 2005 Consent Agreement, including paragraphs 10(a) and 10(b) thereto, are contained in that document (Goldfein Decl. Ex. 20), which should be read and interpreted in its entirety (rather than in excerpts), giving effect to all terms and clauses therein and to the expressed intent of the parties thereto. Whether or not these specific provisions are identical in "all material respects" to paragraphs in the March 1995 Consent Agreement is a legal question, not a factual issue.

12.     Contrary to the NHL's assertion in its Local Rule 56.1 Statement, the complained-of-NHL policies, regulations, and restrictions regarding broadcasting and other video and audio distribution of games and game content, including through use of exclusive broadcast territories, were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement. (*See* MSG Opp. Mem. § III.A; *e.g.* October 11, 2007 Declaration of William L. Daly Ex. H (NHL's June 2006 Media Strategy & Recommendations Report w/ appendices), Ex. I (June 19, 2006 letter from William Daly to MSG, refusing to postpone consideration of New Media Strategy), Ex. J (Minutes of June 21, 2006 NHL Board of Governors meeting), Ex. M (NHL's April 2007 fining of MSG for, *inter alia*, streaming video); October 11, 2007 Declaration of Keith Ritter Exs. D, E, F; October 11, 2007 Declaration of Robert O. Naegele, Jr. ¶ 3 *et seq.* (NHL's 2006 New Media Strategy affecting all media); October 10, 2007 Declaration of Ted Leonsis ¶ 4 *et seq.* (NHL's 2006 New Media Strategy responding to and affecting other media, including traditional broadcasting and television

sponsorships); October 11, 2007 Declaration of John Collins ¶ 8-9, Ex. A at 16-23, 27-30, Ex. B (describing NHL's new strategy relating to internet and television); October 18, 2007 Reply Declaration of Steve Mills ¶ 13 *et seq.* (continuing encroachment of NHL on team rights))

13. Contrary to the NHL's assertion in its Local Rule 56.1 Statement, the complained-of-NHL policies, regulations, and restrictions regarding licensing of team marks and other intellectual property were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement. (*See* MSG Opp. Mem. § III.A; *e.g.* October 11, 2007 Declaration of William L. Daly Ex. H (NHL's June 2006 Media Strategy & Recommendations Report w/ appendices), Ex. I (June 19, 2006 letter from William Daly to MSG, refusing to postpone consideration of New Media Strategy), Ex. J (Minutes of June 21, 2006 NHL Board of Governors meeting, re: extension of NHL License Agreements), Ex. M (NHL's April 2007 fining of MSG for use of, *inter alia*, on-line catalogue); October 11, 2007 Declaration of Keith Ritter Exs. D, E, F); October 18, 2007 Reply Declaration of Steve Mills ¶ 13 *et seq.* (continuing encroachment of NHL on team rights))

14. Contrary to the NHL's assertion in its Local Rule 56.1 Statement, the complained-of-NHL policies, regulations, and restrictions regarding merchandizing of goods bearing team marks and other intellectual property, including through use of exclusive territories and restrictions on internet sales, were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement. (*See* MSG Opp. Mem. §

III.A; *e.g.* October 11, 2007 Declaration of William L. Daly Ex. H (NHL's June 2006 Media Strategy & Recommendations Report w/ appendices), Ex. I (June 19, 2006 letter from William Daly to MSG, refusing to postpone consideration of New Media Strategy), Ex. J (Minutes of June 21, 2006 NHL Board of Governors meeting), Ex. M (NHL's April 2007 fining of MSG for, *inter alia*, on-line catalogue); October 11, 2007 Declaration of Keith Ritter Exs. D, E, F); October 18, 2007 Reply Declaration of Steve Mills ¶ 13 *et seq.* (continuing encroachment of NHL on team rights))

15. Contrary to the NHL's assertion in its Local Rule 56.1 Statement, the complained-of-NHL policies, regulations, and restrictions regarding advertising and sponsorships, including in-arena, virtual, and internet advertising were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement. (*See* MSG Opp. Mem. § III.A; *e.g.* October 11, 2007 Declaration of William L. Daly Ex. H (NHL's June 2006 Media Strategy & Recommendations Report w/ appendices), Ex. I (June 19, 2006 letter from William Daly to MSG, refusing to postpone consideration of New Media Strategy), Ex. J (Minutes of June 21, 2006 NHL Board of Governors meeting), Ex. M (NHL's April 2007 fining of MSG for, *inter alia*, use of on-line catalogue and virtual signage); October 11, 2007 Declaration of Keith Ritter Exs. D, E, F; Goldfein Decl. Ex. 15 (September 14, 2006 dashboard regulations); October 10, 2007 Declaration of Ted Leonsis ¶ 4 *et seq.* (NHL's 2006 New Media Strategy affects internet sponsorship and advertising); October 18, 2007 Reply Declaration of Steve Mills ¶ 13 *et seq.* (continuing encroachment of NHL on team rights); October 17, 2007 Reply Declaration of Scott Richman ¶ 5)

NYI-4104723v2

July 17, 2008                               JONES DAY

                                            By: s/ Robert W. Gaffey
                                                Meir Feder  (MF-2574)
                                                Thomas F. Cullen, Jr. (*pro hac vice*)
                                                Robert W. Gaffey (RG-4004)
                                                222 East 41st Street
                                                New York, NY  10017
                                                Telephone:  (212) 326-3939
                                                Facsimile:  (212) 755-7306

OF COUNSEL:

Joe Sims
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Thomas Demitrack
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212