UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
MADISON SQUARE GARDEN, L.P.,                )
                                            )
           Plaintiff,                       )    No. 07 CIV. 8455 (LAP)
                                            )
       v.                                   )    ECF Case
                                            )
NATIONAL HOCKEY LEAGUE, NATIONAL            )
HOCKEY LEAGUE ENTERPRISES, L.P., NHL        )
INTERACTIVE CYBERENTERPRISES, L.L.C.,       )
NHL ENTERPRISES CANADA, L.P., and NHL       )
ENTERPRISES, B.V.,                          )
                                            )
           Defendants.                      )
                                            )
                                            )
-----------------------------------------------------------------x
NATIONAL HOCKEY LEAGUE,                     )
                                            )
           Counter-claimant,                )
                                            )
       v.                                   )
                                            )
MADISON SQUARE GARDEN, L.P.,                )
                                            )
           Counter-defendant.               )
                                            )
                                            )
-----------------------------------------------------------------x

### REPLY IN SUPPORT OF PLAINTIFF'S
### MOTION TO DISMISS COUNTERCLAIMS

*JONES DAY*
**222 East 41st Street**
**New York, NY  10017-6702**
**(212) 326-3939**

*Attorneys for Plaintiff Madison Square Garden, L.P.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ............................................................................................ 1
ARGUMENT .......................................................................................................................... 2
I.  DECLARATORY JUDGMENT CLAIMS ARE NOT EXEMPT FROM SCRUTINY UNDER RULE 12(b)(6) ........................................................................ 2
II. THE COUNTERCLAIMS DEPEND UPON MSG'S ALLEGED VIOLATION OF AN UNENFORCEABLE PROSPECTIVE RELEASE .............................................. 3
III. THE COUNTERCLAIMS IMPERMISSIBLY SEEK THE COURT'S AID IN THE NHL'S ATTEMPTED RETALIATION AGAINST MSG FOR FILING AN ANTITRUST ACTION ................................................................................................ 8
IV. AT A MINIMUM, THE COUNTERCLAIMS ARE PREMATURE ABSENT A DECISION IN THE NHL'S FAVOR ON THE MERITS OF MSG'S CLAIM ............. 10
CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Choudhury v. Polytechnic Inst. of N.Y.*,
    735 F.2d 38 (2d Cir. 1984)..................................................................................................8

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991)..................................................................................................5

*Donahue v. Pendleton Woolen Mills, Inc.*,
    633 F. Supp. 1423 (S.D.N.Y. 1986)....................................................................................9

*Fox Midwest Theatres, Inc. v. Means*,
    221 F.2d 173 (8th Cir. 1955) ..........................................................................................6, 7

*Fresh Made, Inc. v. Lifeway Foods, Inc.*,
    2002 WL 31246922 (E.D. Pa. 2002) ..................................................................................7

*George W. Warner & Co. v. Black & Decker Mfg. Co.*,
    277 F.2d 787 (2d Cir. 1960)................................................................................................9

*Hammes v. AAMCO Transmissions, Inc.*,
    33 F.3d 774 (7th Cir. 1994) ................................................................................................9

*Harris v. Steinem*,
    571 F.2d 119 (2d Cir. 1978)..............................................................................................10

*Hunt v. Mobil Oil Corp.*,
    654 F. Supp. 1487 (S.D.N.Y. 1987)....................................................................................6

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
    335 F.3d 303 (4th Cir. 2003) ............................................................................................10

*Ingram Corp. v. J. Ray McDermott & Co.*,
    698 F.2d 1295 (5th Cir. 1983) ............................................................................................7

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72 (1982)..............................................................................................................3

*Kelly v. Kosuga*,
    358 U.S. 516 (1959).......................................................................................................3, 4

*Kensington Int'l Ltd. v. Republic of Congo*,
    2007 WL 1032269 (S.D.N.Y. 2007)...................................................................................2

# TABLE OF AUTHORITIES
## (continued)

Page

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ........................................................................................................... 6, 7

*Lawlor v. Nat'l Screen Serv. Corp.*,
    349 U.S. 322 (1955) ................................................................................................................ 6

*Legion Ins. Co. v. Wis.-Cal. Forest Prods.*,
    2001 WL 35809244 (E.D. Cal. 2001) ..................................................................................... 2

*Mktg. Assistance Plan, Inc. v. Associated Milk Producers, Inc.*,
    338 F. Supp. 1019 (S.D. Tex. 1972) ....................................................................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................................................ 6

*NBA v. SDC Basketball Club, Inc.*,
    815 F.2d 562 (9th Cir. 1987) ................................................................................................... 2

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*,
    568 F. Supp. 1096 (N.D. Ill. 1983) ......................................................................................... 6

*Oregon v. Heavy Vehicle Elec. License Plate, Inc.*,
    157 F. Supp. 2d 1158 (D. Or. 2001) ....................................................................................... 2

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
    392 U.S. 134 (1968) ......................................................................................................... 4, 5, 8

*Phillips v. Crown Cent. Petroleum Corp.*,
    602 F.2d 616 (4th Cir. 1979) ................................................................................................... 9

*Redel's Inc. v. Gen. Elec. Co.*,
    498 F.2d 95 (5th Cir. 1974) ............................................................................................ 4, 5, 6, 7

*SPGGC, LLC v. Blumenthal*,
    505 F.3d 183 (2d Cir. 2007) .................................................................................................... 2

*Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*,
    40 F.3d 247 (7th Cir. 1994) ................................................................................................. 5, 9

*Storey v. Cello Holdings LLC*,
    347 F.3d 370 (2d Cir. 2003) .................................................................................................... 6

*United States v. Alex. Brown & Sons, Inc.*,
    169 F.R.D. 532 (S.D.N.Y. 1996), *aff'd*, 153 F.3d 16 (2d Cir. 1998) .................................... 8

# TABLE OF AUTHORITIES
### (continued)

Page

*VKK Corp. v. NFL*,
  244 F.3d 114 (2d Cir. 2001)......................................................................................1, 4, 7

*Westmoreland Asbestos Co. v. Johns-Manville Corp.*,
  39 F. Supp. 117 (S.D.N.Y. 1941)......................................................................................6

## RULES

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2

## PRELIMINARY STATEMENT

NHL officials have long understood that the League's numerous restrictions on off-ice competition among teams are vulnerable to antitrust attack. For that reason, among others, the NHL routinely conditions its approval of certain types of transactions on a team's execution of broad releases. The releases are intended to serve as a form of antitrust insurance: a first line of defense against any team's attempt to subject the League's practices to antitrust scrutiny, and a basis for punishing the offending team to ensure that such attempts will be rare.

As MSG's opening brief demonstrated, the NHL's retaliatory counterclaims are themselves evidence of the anticompetitive nature of the NHL's current operation. MSG's brief further established that the NHL's counterclaims fail as a matter of law and should be dismissed. Public policy renders unenforceable any agreement to release—or not to file—antitrust claims based on future conduct, Opening Br. 5-9; several well-established doctrines prohibit retaliation for filing legitimate antitrust claims, *id.* 9-18; and, at a minimum, the NHL's claims are premature absent a final determination on MSG's underlying antitrust claims, *id.* 18-20.

In response, the NHL concedes that a prospective release of antitrust claims cannot be enforced. Opp. 12. The NHL's opposition—notwithstanding its lengthy digressions into doctrines like "part and parcel" that are irrelevant to prospective releases—therefore rests entirely on two unsustainable propositions: (1) that a release *can* permanently immunize any future antitrust violations relating to a practice that began before a release was executed; and (2) that the NHL may freely penalize a team solely for seeking to enforce the antitrust laws. The NHL offers no support for the second proposition, and supports the first only by fundamentally mischaracterizing *VKK Corp. v. NFL*, 244 F.3d 114 (2d Cir. 2001)—which involved a release that applied to purely *retrospective* conduct—as a case challenging *continuing* conduct.

Both propositions are untenable. A cartel cannot insulate ongoing anticompetitive practices from judicial review simply by having its members sign prophylactic releases. And it cannot squelch antitrust challenges by penalizing good-faith litigation, let alone by having a federal court endorse such retaliation.

**ARGUMENT**

**I.   DECLARATORY JUDGMENT CLAIMS ARE NOT EXEMPT FROM SCRUTINY UNDER RULE 12(b)(6).**

The NHL argues that the failure of a declaratory judgment claim as a matter of law "cannot form a basis for dismissal." Opp. 3. Rather, the NHL asserts, "the only issue" is whether it has adequately alleged "a substantial dispute between the parties." *Id.* This is plainly wrong: Rule 12(b)(6) contains no exception for declaratory judgment claims, and such claims are routinely challenged, and dismissed, for failure to state a claim on the merits. *See*, *e.g.*, *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 191 (2d Cir. 2007). Accordingly, a declaratory claim, like any other claim, is subject to dismissal when it can be rejected as a matter of law.

The NHL's cases do not remotely suggest the contrary. *NBA v. SDC Basketball Club, Inc.*, 815 F.2d 562, 565 (9th Cir. 1987), reviewed a summary judgment ruling on justiciability; it neither addressed motions to dismiss nor limited the grounds for such motions. *Kensington Int'l Ltd. v. Republic of Congo*, 2007 WL 1032269, at *17-18 (S.D.N.Y. 2007), simply rejected an argument that "there [wa]s no active controversy." And *Oregon v. Heavy Vehicle Elec. License Plate, Inc.*, 157 F. Supp. 2d 1158 (D. Or. 2001), acknowledged that dismissal *is* appropriate if "no set of facts . . . could support a judgment for the nonmoving party," but found that standard was not met. *Id.* at 1168; *see also Legion Ins. Co. v. Wis.–Cal. Forest Prods.*, 2001 WL 35809244, at *3 (E.D. Cal. 2001) (rejecting unique argument that defendant should be dismissed

because plaintiff's allegations *did* have merit).  Accordingly, the NHL's procedural argument is meritless, and dismissal is required because the counterclaims fail as a matter of law.

**II.    THE COUNTERCLAIMS DEPEND UPON MSG'S ALLEGED VIOLATION OF AN UNENFORCEABLE PROSPECTIVE RELEASE.**

The NHL requests judicial authorization to punish MSG for violating its purported agreement, in 2005, never to challenge the application of NHL rules or policies then in effect. As MSG demonstrated in its opening brief, however, agreements immunizing future conduct from antitrust challenge are unenforceable.  (Opening Br. 5-7.)  Moreover, the prohibition against immunizing future conduct applies regardless of whether the practices at issue began before execution of a release.  (*Id.* 7-8.)  Thus, a purported 2005 agreement not to sue to enjoin violations ongoing in 2008 cannot be enforced.  (*Id.* 8-9.)

Most of the NHL's response—a lengthy two-part argument that certain agreements can be enforced in the face of antitrust defenses, Opp. 6-12—is irrelevant to prospective releases, which the NHL concedes cannot be enforced.  *Id.* 12.  The NHL's only relevant argument—that ongoing conduct *can* be immunized by a release, notwithstanding the rule against immunizing future conduct—is contrary to applicable law.

1.  The NHL erroneously accuses MSG of "ignor[ing]" *Kelly v. Kosuga*, 358 U.S. 516 (1959), which the NHL depicts as broadly establishing "under what circumstances defendants may rely upon the antitrust laws as a defense to a contract action."  Opp. 6.  In the first place, the Supreme Court long ago held that *Kelly* means only that a party "may not avoid performing a perfectly legal promise because he has also made a separate, illegal undertaking."  *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 81 n.7 (1982).  And the NHL concedes (Opp. 12) that a release of future antitrust claims is *not* a "perfectly legal promise."

-3-

More fundamentally, the NHL's discussion of *Kelly* and related cases is irrelevant. This motion turns not on a defense of substantive antitrust illegality, but on the separate antitrust rule that prospective releases cannot be enforced. The NHL makes no claim that *Kelly* affects that rule, which the NHL concedes is correct. Opp. 12. In short, *Kelly* is a red herring.[1]

2. The NHL also errs in advancing arguments about the so-called "part and parcel" doctrine. Opp. 9-12. MSG has not raised that doctrine, because the doctrine concerns attempts to escape *retrospective* releases on the ground that "the release itself was an integral part of a scheme to violate the antitrust laws." *Redel's Inc. v. Gen. Elec. Co.*, 498 F.2d 95, 100-01 & n.9 (5th Cir. 1974). MSG's argument is about *prospective* releases; and, as *Redel's* confirms, the "part and parcel" doctrine involves only "retroactive" releases, whereas "[r]eleases may not . . . absolve a party from liability for future violations of our antitrust laws." *Id.* at 99-101.

Accordingly, the NHL's claim that the Second Circuit decision in *VKK Corp. v. NFL*, 244 F.3d 114 (2d Cir. 2001), is "similar to this case," Opp. 10, is erroneous. The "part and parcel" doctrine governed in *VKK* because the release was purely retrospective—it was executed by an owner as part of his sale of a team, *after* the conduct underlying his lawsuit. 244 F.3d at 119-20. It has no relevance to the NHL's attempt here to give its 2005 release *prospective* effect. The NHL's other "part and parcel" cases are irrelevant for the same reason.

3. Finally, the NHL argues that the ongoing practices challenged by MSG began prior to 2005 and, as such, it is not seeking prospective application of the release. In essence, the NHL

---

[1] It is also worth noting that *Kelly*—which involved a purchaser of goods who sought to avoid paying for them—relied heavily on the goal "of preventing people from getting other people's property for nothing when they purport to be buying it." 358 U.S. at 520-21 (internal quotation marks omitted). MSG is deriving no such inequitable windfall here: MSG received no one's property in exchange for its release, and it has fulfilled (and will continue to fulfill) the obligations of NHL membership. Allowing MSG to pursue an antitrust action will neither provide a windfall for MSG nor unfairly prejudice the NHL in any way.

Moreover, to the extent the NHL complains about MSG's filing an antitrust suit after consenting to and "accept[ing] the benefits" of the NHL's practices, Opp. 2, 8, the Supreme Court long ago held that such consent and acceptance cannot bar a plaintiff's antitrust suit. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138-40 (1968). Indeed, even when the plaintiff's participation makes him "no less morally reprehensible than the defendant," the law "encourages his suit to further the overriding public policy in favor of competition." *Id.* at 139.

argues that an anticompetitive practice, once begun, can be permanently immunized through a release. If this were the law, cartels could easily use such releases to preclude antitrust attacks by dissident members—eviscerating the important enforcement mechanism of "turning producers against one another." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 250 (7th Cir. 1994) (citing *Perma Life*, 392 U.S. 134). But it is not the law, and the NHL's contrary arguments are unpersuasive.

First, the NHL errs in demanding acceptance of its inaccurate description of MSG's complaint as merely challenging "practices that were adopted prior to" 2005. Opp. 12. MSG's complaint clearly challenges ongoing post-2005 conduct, as well as entirely new conduct, such as the NHL's extension of exclusive licensing agreements over MSG's objection, its New Media Plan, and the imposition of fines on MSG. MSG's actual complaint is necessarily integral to counterclaims seeking to discipline MSG for filing that complaint, and it is therefore properly considered on this motion. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (document integral to claim properly considered on motion to dismiss).

Second, the NHL wrongly asserts that no cases apply the rule against prospective releases to "practices that were put in place *before* but continued after execution of a release." Opp. 13 (emphasis in original). Multiple cases in MSG's brief and elsewhere contradict this claim.

In *Sanjuan*, the Seventh Circuit refused to enforce a release against an antitrust challenge to procedures that existed at the time of the release. 40 F.3d at 249-50. The NHL dismisses *Sanjuan* as a suit challenging a "future decision," Opp. 13 n.6, but the claim there actually challenged "examination practices" that were in place at the time of the release. *See* 40 F.3d at 248. Similarly, *Redel's* held, in a case challenging continuing conduct from 1965 to 1971, that a 1969 release could not be applied to post-release conduct. 498 F.2d at 98-99. And *Fox Midwest*

*Theatres, Inc. v. Means*, 221 F.2d 173 (8th Cir. 1955), held that "continued" antitrust violations cannot be "the subject of any possible release or discharge as to the future." *Id.* at 179-80.[2]

Likewise, in *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 568 F. Supp. 1096 (N.D. Ill. 1983), the plaintiff executed a release that purported to "immunize [the defendant] from antitrust liability to [the plaintiff] for activities both before and after" the release. *Id.* at 1101. In a subsequent lawsuit based on the same activities, the court held the release unenforceable with respect to the post-release portion of the continuing conduct, stating:

> public policy considerations save [plaintiff] from what must now be regarded as its folly—even though at the time of its execution the Release implemented a business and legal deal [plaintiff] consciously and freely cut. For the same reasons stated in *Fox Midwest Theatres* and the numerous other cases . . . the Release cannot be enforced . . . . *Id.*[3]

Moreover, in the analogous context of *res judicata*, continuation of an unlawful practice after resolution of an initial suit gives rise to new claims. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955) (ongoing violations "frequently give rise to more than a single cause of action"); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). So long as the continued conduct, considered alone, states a claim, "the new facts clearly constitute a new 'claim.'" *Storey v. Cello Holdings LLC*, 347 F.3d 370, 384 (2d Cir. 2003). As *Lawlor* made clear, barring claims based on a continued practice would wrongly confer "a partial immunity from civil liability for future violations." 349 U.S. at 329. The same reasoning applies here.

---

[2] *Redel's* and *Fox Midwest* are cited with approval in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985), for the proposition that prospective antitrust waivers are unenforceable.

[3] *See also Westmoreland Asbestos Co. v. Johns-Manville Corp.*, 39 F. Supp. 117, 119 (S.D.N.Y. 1941) (rejecting argument that "since but one conspiracy is alleged," release may discharge liability "both before and after the date of the instrument"); *Mktg. Assistance Plan, Inc. v. Associated Milk Producers, Inc.*, 338 F. Supp. 1019, 1023 (S.D. Tex. 1972) (release could not be applied to "renewed monopolistic activities").

Similarly, *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487 (S.D.N.Y. 1987), involved ongoing conduct and distinguished between "claims that arose after" a covenant not to sue—which are "future antitrust claims and hence not subject to the covenant"—and those arising prior to the covenant. *Id*. at 1516 (emphases omitted). The NHL's attempt to edit *Hunt* to its liking—altering "claims that arose" to "claims [as to new practices] that arose," Opp. 13—has no basis in *Hunt*.

Third, the NHL misleadingly claims that *VKK Corp.* rejected "the same 'continuing violation' argument that MSG makes in this case." Opp. 14. But the quoted language from *VKK* rejects an attempt to avoid a *retrospective* release; the court merely held that the validity of such a retrospective release—in a suit challenging only pre-release conduct—was not affected by the continuation of similar conduct against third parties. 244 F.3d at 126. The court addressed no claim involving post-release conduct, let alone upheld a release of such claims. The contention that *VKK* addressed "th[e] precise issue" presented here, Opp. 13, misrepresents *VKK*.[4]

Fourth, the NHL errs in suggesting that its release must be enforced to avoid deterring settlements involving ongoing conduct. Opp. 15. To begin with, the release at issue here—a general release obtained prophylactically, not a release executed to settle a specific dispute—does not even involve this concern. More fundamentally, courts have repeatedly recognized that, with respect to releases immunizing future violations, the public policy of antitrust enforcement outweighs the interest in encouraging settlement. *See, e.g.*, *Fox Midwest Theatres*, 221 F.2d at 180 (public policy invalidates any provision in settlement agreement "which could be argued to absolve one party from liability for future violations of the antitrust statutes against another"); *Redel's*, 498 F.2d at 99 (parties may not agree to "absolve a party from liability for future violations of our antitrust laws"). Indeed, the very case the NHL cites on this point emphasized that its promotion of settlement had "nothing whatsoever to do with future violations," and noted that *Redel's* upheld a release only in its "retrospective application" to a portion of a multi-year period. *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1316, 1310 (5th Cir. 1983).

---

[4] Likewise, none of the three cases the NHL cites in a footnote to its discussion of *VKK*, Opp. 14 n.9, holds that future claims arising from continuing conduct can be released. *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922 (E.D. Pa. 2002), expressly states that a release cannot "immunize future antitrust violations" and holds that "to the extent [plaintiff] alleges claims that post-date the release, such claims survive [the] motion to dismiss based on the release." *Id.* at *3 & n.5. And the other two cases in the footnote, *Hunter Douglas* and *MCM Partners*, held only that no antitrust claims arose from post-release conduct. Here, new claims arose both from the NHL's continued application of anticompetitive restraints and from its various post-2005 expansions of those restraints. *See, e.g.*, *Klehr*, 521 U.S. at 189. Indeed, MSG's injunctive relief claims necessarily arise from ongoing *current* conduct.

Moreover, prohibiting a cartel from enforcing releases that provide it with permanent prospective immunity will hardly deter lawful settlements: Claims for past violations *can* be released, and parties concerned about enforceability with respect to ongoing conduct can seek to incorporate settlement terms into a judicial consent decree. *See, e.g.*, *United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 541 (S.D.N.Y. 1996) (discussing "encourag[ing] settlement by consent decrees as part of the legal policies expressed in the antitrust laws") (internal quotation marks omitted), *aff'd*, 153 F.3d 16 (2d Cir. 1998). The NHL's settlement argument simply slights the recognized importance of "insuring that the private action will be an ever-present threat to deter" antitrust violations. *Perma Life*, 392 U.S. at 139. Settled public policy precludes enforcement of the 2005 release against conduct ongoing in 2008.

## III.   THE COUNTERCLAIMS IMPERMISSIBLY SEEK THE COURT'S AID IN THE NHL'S ATTEMPTED RETALIATION AGAINST MSG FOR FILING AN ANTITRUST ACTION.

The NHL's opposition also depends on a second untenable proposition: That the NHL may enlist this Court's assistance in penalizing a team for filing a legitimate antitrust lawsuit. Courts have consistently construed federal statutes to bar retaliation against attempts to enforce them, Opening Br. 9-11; and claims seeking to penalize the filing of a lawsuit generally are not cognizable unless the initial suit was a "sham." *Id.* 11-12. The importance of private antitrust actions to the statutory enforcement scheme, moreover, gives these principles heightened force here. *Id.* 12-16. The NHL's token responses to these points should be rejected.

First, the NHL wrongly claims that the anti-retaliation principle is limited to "anti-discrimination statutes" based on "fundamental rights to be free from . . . discrimination." Opp. 16. That is incorrect: the anti-retaliation principle is based on the broader need to guarantee "available and effective remed[ies]" under federal statutes. *Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 43 (2d Cir. 1984). Moreover, as MSG has shown (Opening Br. 12-16), this

principle has been applied in antitrust cases, including in cases recognizing a cause of action for retaliation. *See, e.g., Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 783 (7th Cir. 1994).

Second, the NHL erroneously argues that the antitrust retaliation cases occur "primarily" in the context of "preliminary injunction[s] to preserve the status quo." Opp. 18. To the contrary, the cases preclude retaliation not only in the context of permanent injunctions, *e.g.*, *Phillips v. Crown Cent. Petroleum Corp.*, 602 F.2d 616, 629 (4th Cir. 1979), but also in various other contexts ranging from damages awards, *e.g.*, *George W. Warner & Co. v. Black & Decker Mfg. Co.*, 277 F.2d 787, 790 (2d Cir. 1960), to recognition of implied rights of action, *e.g.*, *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1430-39 (S.D.N.Y. 1986). Here, denying the NHL this Court's assistance in retaliating against MSG would not even require affirmative relief.

Third, the NHL speciously asserts that its counterclaims involve only "the NHL's contractual right to conduct disciplinary proceedings," and that failure to allow discipline will undermine the NHL's internal procedures. Opp. 19. Antitrust violations are hardly an internal NHL matter: The antitrust laws are a pillar of the free-market economy, and their enforcement scheme depends heavily on private suits. Moreover, it is settled that a defendant's internal procedures cannot be relied upon to vindicate the goals of the antitrust laws. *Sanjuan*, 40 F.3d at 250 ("A contract transferring antitrust disputes not to a disinterested umpire, but to the board of directors of a producers' association, is antithetical to consumers' welfare."). Rejecting an improper use of internal discipline to penalize a legitimate antitrust suit will hardly undermine any legitimate use of the NHL's disciplinary procedures.

Finally, the NHL wrongly dismisses the *Noerr-Pennington* case law as applicable only if the NHL were itself asserting antitrust claims. Opp. 20. As MSG demonstrated (Opening Br. at

12), this doctrine is not so limited.  Rather, it broadly "grants First Amendment immunity to those who engage in petitioning activity," including "the pursuit of litigation."  *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003).  Accordingly, "although originally developed in the antitrust context, the doctrine has now universally been applied" more broadly, including, for example, to "malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition."  *Id.*  This First Amendment immunity applies with full force to invalidate the NHL's request for this Court's assistance in sanctioning MSG for filing a good-faith antitrust suit.

### IV.    AT A MINIMUM, THE COUNTERCLAIMS ARE PREMATURE ABSENT A DECISION IN THE NHL'S FAVOR ON THE MERITS OF MSG'S CLAIMS.

MSG showed that Second Circuit law forecloses counterclaims that depend upon the merits of the main claims but are filed before the latter claims are resolved (Opening Br. at 18-20).  The NHL's only response is a footnote that does not even cite, let alone attempt to refute the application of, the cases upon which MSG relies.  Opp. 4-5 n.3.  Indeed, the NHL concedes that discipline "could be impacted by how this litigation unfolds and what determinations the Court makes" regarding MSG's claims.  *Id.*   It is precisely such contingencies that make the counterclaims premature and require their dismissal.  *See, e.g.*, *Harris v. Steinem*, 571 F.2d 119, 125 (2d Cir. 1978) (courts should not entertain counterclaims "that will ordinarily not arise if plaintiff wins the main action," where dismissal will "avoid[] . . . the dangerous potentialities of counterclaims in the nature of malicious prosecutions as a defensive strat[a]gem") (internal quotation marks omitted).

### CONCLUSION

For the reasons stated above and in MSG's opening brief, MSG respectfully requests that this Court dismiss the counterclaims with prejudice.

August 6, 2008                                    JONES DAY


                                                  By:   /s/ Meir Feder
                                                        Meir Feder  (MF-2574)
                                                        Thomas F. Cullen, Jr. (pro hac vice)
                                                        Glen D. Nager (pro hac vice)
                                                        Robert W. Gaffey  (RG-4004)
                                                        222 East 41st Street
                                                        New York, NY  10017-6702
                                                        Telephone:  (212) 326-3939
                                                        Facsimile:  (212) 755-7306

OF COUNSEL:

Joe Sims
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Thomas Demitrack
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212