UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| MADISON SQUARE GARDEN, L.P., ) | |
| ) | |
| Plaintiff, ) | No. 07 CIV. 8455 (LAP) |
| ) | |
| v. ) | <u>ELECTRONICALLY FILED</u> |
| ) | |
| NATIONAL HOCKEY LEAGUE, ) | |
| NATIONAL HOCKEY LEAGUE ) | |
| ENTERPRISES, L.P., NHL INTERACTIVE ) | |
| CYBERENTERPRISES, LLC, NHL ) | |
| ENTERPRISES CANADA, L.P., and NHL ) | |
| ENTERPRISES, B.V., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ------------------------------------------------------ ) | |
| NATIONAL HOCKEY LEAGUE, ) | |
| ) | |
| Counter-claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| MADISON SQUARE GARDEN, L.P., ) | |
| ) | |
| Counter-defendant. ) | |
| ) | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1 COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York, defendants National Hockey League, NHL Enterprises, L.P., NHL Interactive CyberEnterprises, L.L.C., NHL Enterprises Canada, L.P., and NHL Enterprises, B.V. (collectively, "Defendants") respectfully submit this response to Plaintiffs Madison Square Garden, L.P.'s ("MSG") Local Rule 56.1 Counterstatement of Undisputed Material Facts ("Counterstatement").

As discussed paragraph-by-paragraph below, MSG does not dispute any of the material assertions of fact made in Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, as to which there is no genuine issue to be tried.  MSG instead asserts that:

> [T]he complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement.

In support of that assertion, MSG cites only to evidence either relating to the continuation of policies that existed prior to April 2005 – as to which MSG cannot base its claims in light of the Releases it has executed as well as application of laches – or relating to new practices, including the website migration requirement, as to which new practices Defendants have **not** moved for summary judgment on the basis of the Releases signed by MSG.  Hence, by operation of Local Rule 56.1, MSG admits all of the material facts upon which Defendants base their partial summary judgment motion.  As discussed in Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss or in the Alternative for Partial Summary Judgment in Section I.A. ("Defendants' Reply"), MSG's "continuing violations" argument is incorrect, and any claim in existence at the time MSG executed the April 2005 Consent Agreement is barred as a matter of law.

## PARAGRAPH-BY-PARAGRAPH RESPONSE

1.  <u>Admitted by MSG</u>.  MSG's counter-paragraph does not dispute that MSG Holdings, L.P. executed the March 1995 Consent Agreement, a copy of which is attached as Exhibit 28 to the Goldfein Declaration.

2.  <u>Admitted by MSG</u>.  MSG's counter-paragraph does not dispute that Paragraph 3(a)(i) of the March 1995 Consent Agreement consists of a "NHL Constitution, Bylaws and Agreements" provision, which states, in relevant part:

> [E]ach Acquiring Party [including MSG] jointly and severally agrees to be bound by and comply with (A) the NHL Constitution, including, without limitation, Article 3.5

> (Transfer of Ownership), Articles 3.9 though 3.12 (concerning involuntary termination by the NHL and disposition of the Franchise, and Article 4 (concerning territorial rights), (B) the NHL Bylaws . . . (C) all other NHL rules, regulations, policies and resolutions, (D) the current and future Collective Bargaining Agreements between the NHL and the National Hockey League Players' Association and consent decrees and settlement agreements presently or hereafter in effect of entered into between or among the NHL and its Member Clubs or the NHL and other persons in furtherance of NHL business or interests or as otherwise authorized, directly or indirectly, by the NHL Board of Governors, the NHL Commissioner, the Constitution or the Bylaws, and (E) the NHL Commissioner's interpretation of any of the foregoing, all as may be amended from time to time . . . .

MSG's counter-paragraph does not otherwise contain any assertion of fact.

       3.    <u>Admitted by MSG</u>. MSG's counter-paragraph does not dispute that Paragraph 13 of the March 1995 Consent Agreement consists of a "Release and Limitation of Liability" provision, which states, in relevant part:

> (a) As partial consideration for the NHL providing the consents contained herein, each of the Acquiring Parties [including MSG] . . . hereby forever release and discharge the NHL, NHL Enterprises, Inc., all of the NHL's Member Clubs (except the Rangers) and each of their successors and assigns . . . from any and all claims, demands, causes of action, and liabilities of any kind whatsoever (upon any legal or equitable theory, whether contractual, common-law, statutory, decisional, Canadian, Unites States, state, provincial, local or otherwise), which, to the best knowledge of [MSG] exist as of the date of execution of this Consent Agreement by reason of any act, omission, transaction or occurrence taken or occurring at any time up to and including the date of the execution of this Consent Agreement, relating to, or arising from, any hockey operations or any NHL activity, including without limitation, the performance, presentation or exploitation of any hockey game or hockey exhibition . . . .
>
> (b) The Acquiring Parties [including MSG] hereby agree, based upon facts known to, or facts that reasonably should have been known to, the Acquiring Parties on the date hereof, not to initiate a judicial or other proceeding against the NHL challenging any provision of the NHL Constitution and Agreements as in effect and interpreted on the date hereof as they may apply to acts or omissions up to and including the date hereof.

MSG's counter-paragraph does not otherwise contain any assertion of fact.

       4.    <u>Admitted by MSG</u>. MSG's counter-paragraph does not dispute that MSG executed the June 1997 Consent Agreement, a copy of which is attached as Exhibit 27 to the Goldfein

Declaration. MSG's counter-paragraph also does not dispute that Paragraphs 3(a)(i), 13(a), and 13(b) of the June 1997 Consent Agreement are substantively identical to Paragraphs 3(a)(i), 13(a), and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraphs 2 and 3 above. MSG's counter-paragraph does not otherwise contain any assertion of fact.

5.  <u>Admitted by MSG</u>. MSG's counter-paragraph does not dispute that MSG executed the December 1997 Consent Agreement, a copy of which is attached as Exhibit 28 to the Goldfein Declaration. MSG's counter-paragraph also does not dispute that Paragraphs 13(a) and 13(b) of the December 1997 Consent Agreement are substantively identical to Paragraphs 13(a) and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraph 3 above. MSG's counter-paragraph does not otherwise contain any assertion of fact.

6.  <u>Admitted by MSG</u>. MSG's counter-paragraph does not dispute that MSG executed the March 1998 Consent Agreement, a copy of which is attached as Exhibit 25 to the Goldfein Declaration. MSG's counter-paragraph also does not dispute that Paragraphs 13(a) and 13(b) of the March 1998 Consent Agreement are substantively identical to Paragraphs 13(a) and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraph 3 above. MSG's counter-paragraph does not otherwise contain any assertion of fact.

7.  <u>Admitted by MSG</u>. MSG's counter-paragraph does not dispute that MSG executed the May 1998 Consent Agreement, a copy of which is attached as Exhibit 24 to the Goldfein Declaration. MSG's counter-paragraph also does not dispute that Paragraphs 9(a) and 9(b) of the May 1998 Consent Agreement are substantively identical to Paragraphs 13(a) and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraph 3 above. MSG's counter-paragraph does not otherwise contain any assertion of fact.

      8.     <u>Admitted by MSG</u>.  MSG's counter-paragraph does not dispute that MSG executed the November 1998 Consent Agreement, a copy of which is attached as Exhibit 23 to the Goldfein Declaration.  MSG's counter-paragraph does not dispute that Paragraphs 10(a) and 10(b) of the November 1998 Consent Agreement are substantively identical to Paragraphs 13(a) and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraph 3 above.  MSG's counter-paragraph does not otherwise contain any assertion of fact.

      9.     <u>Admitted by MSG</u>.  MSG's counter-paragraph does not dispute that MSG executed the July 1999 Consent Agreement, a copy of which is attached to as Exhibit 22 to the Goldfein Declaration.  MSG's counter-paragraph also does not dispute that Paragraphs 3(a)(i), 10(a), and 10(b) of the July 1999 Consent Agreement are substantively identical to Paragraphs 3(a)(i), 13(a), and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraphs 2 and 3 above.  MSG's counter-paragraph does not otherwise contain any assertion of fact.

      10.     <u>Admitted by MSG</u>.  MSG's counter-paragraph does not dispute that MSG executed the December 2002 Consent Agreement, a copy of which is attached as Exhibit 21 to the Goldfein Declaration.  MSG's counter-paragraph also does not dispute that Paragraphs 7(a), and 7(b) of the December 2002 Consent Agreement are substantively identical to Paragraphs 13(a) and 13(b) of the March 1995 Consent Agreement, as set forth in Paragraph 3 above.  MSG's counter-paragraph does not otherwise contain any assertion of fact.

      11.     <u>Admitted by MSG</u>.  MSG's counter-paragraph does not dispute that MSG executed the April 2005 Consent Agreement, a copy of which is attached as Exhibit 20 to the Goldfein Declaration.  MSG's counter-paragraph also does not dispute that Paragraphs 10(a) and 10(b) of the April 2005 Consent Agreement are substantively identical to Paragraphs 13(a) and 13(b) of the

March 1995 Consent Agreement, as set forth in Paragraph and 3 above. MSG's counter-paragraph does not otherwise contain any assertion of fact.

12. <u>Admitted by MSG or otherwise non-responsive</u>. MSG's counter-paragraph states that:

> [T]he complained-of-NHL policies, regulations, and restrictions regarding broadcasting and other video and audio distribution of games and game content, including through use of exclusive broadcast territories, were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement.

But MSG cites only to evidence either relating to policies that existed prior to April 2005 or relating to new practices arising out of the 2006 New Media Strategy, including the website migration requirement, as to which new practices Defendants have <u>not</u> moved for summary judgment on the basis of the Releases signed by MSG. Hence, by operation of Local Rule 56.1, MSG admits that all but the website migration and certain other new media issues were in effect prior to MSG's execution of the April 2005 Consent Agreement. Further, as discussed in Defendants' Reply, MSG's "continuing violations" theory misstates the law. Any claim in existence at the time MSG executed the April 2005 Consent Agreement is barred as a matter of law.

13. <u>Admitted by MSG or otherwise non-responsive</u>. MSG's counter-paragraph states that:

> [T]he complained-of-NHL policies, regulations, and restrictions regarding licensing of team marks and other intellectual property were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement.

But MSG cites only to evidence either relating to policies that existed prior to April 2005 or relating to new practices arising out of the 2006 New Media Strategy, including the website migration requirement, as to which new practices Defendants have <u>not</u> moved for summary judgment on the basis of the Releases signed by MSG.  Hence, by operation of Local Rule 56.1, MSG admits that all but the website migration and certain other new media issues were in effect prior to MSG's execution of the April 2005 Consent Agreement.  Further, as discussed in Defendants' Reply, MSG's "continuing violations" theory misstates the law.  Any claim in existence at the time MSG executed the April 2005 Consent Agreement is barred as a matter of law.

      14.     <u>Admitted by MSG or otherwise non-responsive</u>.  MSG's counter-paragraph states that:

> [T]he complained-of-NHL policies, regulations, and restrictions regarding merchandizing of goods bearing team marks and other intellectual property, including through use of exclusive territories and restrictions on internet sales, were not all in effect prior to MSG's execution of the April 2005 Consent Agreement.  Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement.

But MSG cites only to evidence either relating to policies that existed prior to April 2005 or relating to new practices arising out of the 2006 New Media Strategy, including the website migration requirement, as to which new practices Defendants have <u>not</u> moved for summary judgment on the basis of the Releases signed by MSG.  Hence, by operation of Local Rule 56.1, MSG admits that all but the website migration and certain other new media issues were in effect prior to MSG's execution of the April 2005 Consent Agreement.  Further, as discussed in Defendants' Reply, MSG's "continuing violations" theory misstates the law.  Any claim in existence at the time MSG executed the April 2005 Consent Agreement is barred as a matter of law.

      15.     <u>Admitted by MSG or otherwise non-responsive</u>.  MSG's counter-paragraph states that:

> [T]he complained-of-NHL policies, regulations, and restrictions regarding advertising and sponsorships, including in-arena, virtual, and internet advertising were not all in effect prior to MSG's execution of the April 2005 Consent Agreement. Rather, the complained-of-NHL policies on which MSG bases its claim for prospective injunctive relief constitute ongoing, continuing anti-competitive conduct and violations of the law that post-date the April 2005 Consent Agreement.

But MSG cites only to evidence either relating to policies that existed prior to April 2005 or relating to new practices arising out of the 2006 New Media Strategy, including the website migration requirement, as to which new practices Defendants have <u>not</u> moved for summary judgment on the basis of the Releases signed by MSG.  Hence, by operation of Local Rule 56.1, MSG admits that all but the website migration and certain other new media issues were in effect prior to MSG's execution of the April 2005 Consent Agreement.  Further, as discussed in Defendants' Reply, MSG's "continuing violations" theory misstates the law.  Any claim in existence at the time MSG executed the April 2005 Consent Agreement is barred as a matter of law.

Dated: August 6, 2008                                                    Respectfully submitted,

                                                                                 _s/ Shepard Goldfein_____
                                                                                 Shepard Goldfein
                                                                                 James A. Keyte
                                                                                 Paul M. Eckles
                                                                                 Matthew M. Martino
                                                                                 SKADDEN, ARPS, SLATE,
                                                                                     MEAGHER & FLOM LLP
                                                                                Four Times Square
                                                                                New York, New York 10036-6522
                                                                                Telephone:  (212) 735-3000
                                                                                Facsimile:  (212) 735-2000

                                                                                *Attorneys for Defendants National Hockey*
                                                                                      *League et al.*